MAKER'S MARK DISTILLERY, INC.                                    PLAINTIFF

v.

SPALDING GROUP, INC.
d/b/a ENGLISH EMPRISE and TED'S CIGARS; and
THEODORE JACKSON, JR.                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Strike Defendants' Affirmative

Defenses (DN 24) and Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim (DN

25). For the reasons that follow, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

### A.      Statement of Facts

On May 1, 1997, Plaintiff Maker's Mark Distillery, Inc. ("Maker's Mark") entered into a

Licensing Agreement (the "1997 Agreement") with Defendant Spalding Group d/b/a English

Emprise and Ted's Cigars ("Spalding Group") and Defendant Theodore Jackson Jr. ("Jackson"),

Spalding Group's owner and director (collectively, "Defendants"). (Compl. ¶ 41, DN 1). The

1997 Agreement granted Spalding Group an exclusive license to use the trademarks of Maker's

Mark (the "Marks") in connection with the creation and sale of cigars seasoned with Maker's

Mark bourbon (the "Licensed Cigars"). (Compl. ¶ 41). The license agreement was renewed, as amended

in 2003 (the "2003 Agreement") and in 2010 (the "2010 Agreement"). (Compl. ¶¶ 42-43). On

December 4, 2013, Maker's Mark notified Defendants that it was terminating the license under the

terms of the 2010 Agreement effective December 31, 2015.  (Compl. ¶ 49).  Spalding Group then had until June 28, 2016, to dispose of its remaining inventory of the Licensed Cigars.  (Compl. ¶ 51).

Following the termination of the license, Spalding Group began to sell a different cigar also seasoned with Maker's Mark bourbon (the "Bourbon Cigar"), the packaging of which Maker's Mark alleges was intentionally designed to "evoke an association by customers between [t]he Bourbon Cigar on the one hand and Maker's Mark and the prior Licensed Cigars on the other." (Compl. ¶ 52).  Maker's Mark further claims that Spalding Group advertised the Bourbon Cigar in a variety of ways to associate it with Maker's Mark and the Licensed Cigars, despite Maker's Mark demand that Spalding Group cease and desist from such conduct.  (Compl. ¶¶ 55-66). Maker's Mark asserts that Spalding Group's actions have "caused actual confusion" among retailers, wholesale purchasers, and consumers "as to the relationship between Maker's Mark and [t]he Bourbon Cigar."  (Compl.¶¶ 75, 82).[1]  Defendants contest whether any such consumer confusion has occurred.  (Defs.' Answer & Am. Countercl. 74, ¶ 108, DN 21).

Defendants contend they requested in 2002 that Maker's Mark prevent a competing manufacturer, Gurkha Cigars, from selling a cigar product featuring a dripping wax design, but that "Maker's Mark's advised [] that it did not have any rights to dripping wax on cigars so there was nothing it could do" (the "2002 Statement").  (Defs.' Answer & Am. Countercl. 60-61, ¶¶ 34-36).  Further, Defendants allege that Rob Samuels ("Samuels"), when terminating the 2010 Agreement on behalf of Maker's Mark, informed Jackson that "Ted's Cigars could continue

---

[1] Maker's Mark provides several examples of retailers advertising the Bourbon Cigar as still being associated with Maker's Mark and consumers referring to the Bourbon Cigar as a "Maker's Mark cigar."  (Compl. ¶¶ 76-81, 83-84).

making a bourbon cigar so long as it did not use dripping wax" (the "2013 Statement").  (Defs.'
Answer & Am. Countercl. 63, ¶¶ 48-50).

### B.     Procedural History

On January 8, 2019, Maker's Mark filed this action against Spalding Group and Jackson
alleging trademark infringement, false designations, trademark dilution, breach of contract,
common law trademark infringement, common law false designation, and unfair competition.
(Compl. ¶¶ 88-130).  That same day, Defendants filed a Counterclaim against Maker's Mark.[2]
(Countercl., DN 8).  On March 8, 2019, Defendants filed an answer to the Complaint and an
Amended Counterclaim alleging fraudulent misrepresentation, breach of the implied duty of good
faith and fair dealing, promissory estoppel, and collateral estoppel, and seeking cancellation of
three of Maker's Mark trademark registrations dealing with wax designs.  (Defs.' Answer & Am.
Countercl. 75-78, ¶¶ 110-28, 136-42).  On April 15, 2019, Maker's Mark moved to strike
Defendants' affirmative defenses and to dismiss Spalding Group's Counterclaim.  (Pl.'s Mot.
Strike Affirmative Defenses, DN 24; Pl.'s Mot. Dismiss Countercl., DN 25).  Defendants
responded to both motions, and Maker's Mark replied.  (Defs.' Resp. Pl.'s Mot. Dismiss
Countercl., DN 31; Defs.' Resp. Pl.'s Mot. Strike Affirmative Defenses, DN 32; Pl.'s Reply Mot.
Strike Affirmative Defenses, DN 35; Pl.'s Reply Mot. Dismiss Countercl., DN 36).  These matters
are now ripe.

## II.     JURISDICTION

The Court has subject matter jurisdiction over this action via federal question, 28 U.S.C. §
1331, because the Complaint alleges violations of the Lanham Act, 15 U.S.C. §§ 1051-1141.

---

[2] The Counterclaim and Amended Counterclaim are actually raised by Spalding Group, not by
Jackson individually.  Even so, Defendants are represented by the same counsel and filed their
Answer, Counterclaim, and Amended Counterclaim jointly.

(Compl. ¶¶ 8-9). The Court has supplemental jurisdiction over the remaining state law claims because they arise from the same case and controversy as the federal claims. 28 U.S.C. § 1367(a). (Compl. ¶ 9).

## III.    DISCUSSION

### A.    Motion to Strike Affirmative Defenses

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Rule 12(f) allows the court to correct a defect in the pleadings "when the defect 'may affect the merits of the litigation or prejudice one of the parties.'" *Tinsley v. Conn. Gen. Life Ins. Co.*, 744 F. Supp. 2d 637, 639 (W.D. Ky. 2010) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2009)).  The court has considerable discretion when deciding whether to strike pursuant to Rule 12(f). *Thompson v. Hartford Life & Accident Ins. Co.*, 270 F.R.D. 277, 279 (W.D. Ky. 2010).  In the Sixth Circuit, an affirmative defense need only be "pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 Wright & Miller, *supra*, § 1274).

Maker's Mark asserts that Defendants' affirmative defenses as pleaded do not provide it with "fair notice." (Pl.'s Mot. Strike Affirmative Defenses, 2).  Plaintiff further posits that, rather than applying the fair notice standard, this Court should instead apply to the affirmative defenses the heightened pleading standard promulgated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  (Pl.'s Mot. Strike Affirmative Defenses 4).  This question has been the subject of much judicial and academic

debate.[3]  However, the Sixth Circuit has not yet addressed what impact, if any, *Twombly* and *Iqbal* have on the proper pleading of affirmative defenses.  *See Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012) (declining to address the question).  In the absence of controlling guidance, this Court has previously continued to apply the fair notice standard to the pleading of defenses.  *See, e.g.*, *Holley Performance Prods., Inc. v. Quick Fuel Tech., Inc.*, No. 1:07-CV-00185-JHM, 2011 WL 3159177, at *2 (W.D. Ky. July 26, 2011) (declining to adopt the heightened *Twombly* and *Iqbal* pleading standard for the pleading of defenses).  Since that time, the Second Circuit has concluded "that the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task."  *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (citation omitted).  Without guidance from the Sixth Circuit, this Court sees no reason to disrupt the established standard nor to subject Defendants to a heightened standard not previously applicable in this Circuit to their affirmative defenses.  *See also McNational*, 2011 WL 5525938, at *3 ("There is no basis to depart from the sound reasoning in *Holley Performance*.  The decision bears all the hallmarks of a ruling written through the lens of judicial discretion.  Thus, the Court agrees with Judge McKinley's ruling and the previously stated rationale by other courts in

---

[3] *See Paducah River Painting, Inc. v. McNational Inc.*, No. 5:11-CV-00135-R, 2011 WL 5525938, at *2 (W.D. Ky. Nov. 14, 2011) ("In their wake, *Twombly* and *Iqbal* have provoked a frenzy of district court opinions reexamining . . . the pleading standard by which a court should judge a defendant's affirmative defenses: *Twombly* and *Iqbal*'s heightened pleading standard or the 'fair notice' standard of *Lawrence*.").  *See also* Justin Rand, *Tightening Twiqbal:  Why Plausibility Must Be Confined to the Complaint*, 9 Fed. Cts. L. Rev. 79 (2016); Joseph A. Seiner, *Plausibility Beyond the Complaint*, 53 Wm. & Mary L. Rev. 987 (2012); Nathan Pysno, *Should Twombly and Iqbal Apply to Affirmative Defenses?*, 64 Vand. L. Rev. 1633, 1670 (2011).

upholding the fair notice standard.").  As such, the fair notice standard will be used to analyze Defendants' affirmative defenses.

Defendants' Answer includes 29 affirmative defenses.  (Defs.' Answer & Am. Countercl. 37-39, ¶¶ 1-29).  The first "three affirmative defenses" are simply general denials to the Complaint and are, therefore, improperly characterized as defenses.  (Defs.' Answer & Am. Countercl. 37, ¶¶ 1-3).  The twenty-ninth affirmative defense purports to reserve the right for Defendant to plead additional defenses "as they become known."  (Defs.' Answer & Am. Countercl. 39, ¶ 29).  This right to amend, however, is not a defense at all nor is it appropriate because the pleading of additional defenses must comply with Fed. R. Civ. P. 15(a).  *See Palmer v. Oakland Farms, Inc*., No. 5:10-CV-00029, 2010 WL 2605179, at *6 (W.D. Va. June 24, 2010) ("If a new affirmative defense is revealed during the pretrial discovery process Rule 15(a) permits the defendants to seek leave to amend their answer to assert the defense . . . ." (citation omitted)).  These "defenses" will not be stricken because they are meaningless and will neither affect the merits of the case, nor result in any prejudice.

Maker's Mark contends that the remaining affirmative defenses are "conclusory and provide no notice to Maker's Mark . . . ."  (Pl.'s Mot. Strike Affirmative Defenses 3).  The fair notice standard, however, is a lenient one, requiring only "fair notice of the nature of the defense."  *Lawrence*, 182 F. App'x at 456.  In *Lawrence*, the court upheld a magistrate judge's refusal to strike an admittedly conclusory affirmative defense:  "[f]or the federal claims, defendants are entitled to qualified immunity for all activities complained of in this complaint."  *Id*.  While vague and a "bare one-liner," the court nevertheless held that the plaintiff was provided notice of the nature of the defense.  *Id*. at 457.  Similarly, in *Davis v. Sun Oil Co*., 148 F.3d 606 (6th Cir. 1998), the Sixth Circuit found that the statement, "Plaintiff's claims are barred by the doctrine of *res*

*judicata*," provided sufficient notice of the defense. *Id*. at 612-13. Finally, in *Montgomery v. Wyeth*, 580 F.3d 455 (6th Cir. 2009), the Sixth Circuit held that the defense, "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose," provided fair notice. *Id*. at 467. With these cases in mind, Defendants' remaining affirmative defenses, 4-28, provide Maker's Mark with fair notice of the nature of those defenses for which Defendants bear the ultimate burden of proving. *See Burden v. Evansville Materials, Inc.*, 550 F. Supp. 41, 46-47 (W.D. Ky. 1982). Plaintiff's motion to strike, therefore, is denied.

### B.  <u>Motion to Dismiss</u>

Maker's Mark has moved to dismiss Defendants' Amended Counterclaim for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Pl.'s Mot. Dismiss Countercl. 1).

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). Even so, the Court need not accept a party's "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Maker's Mark contends that each of Defendants' five counterclaims—fraudulent misrepresentation (Count I), breach of the implied duty of good faith and fair dealing and breach of contract (Count II), promissory estoppel (Count III), collateral estoppel (Count IV), and

trademark cancellation (Count V)—fails to state a plausible claim under this well-established standard and must be dismissed.  (Pl.'s Mot. Dismiss Countercl. 1).

### 1.   *Fraudulent Misrepresentation*

Maker's Mark argues that Defendants' claim for fraudulent misrepresentation, first, is barred by the statute of repose, and, second, is not pleaded with particularity as required by Fed. R. Civ. P. 9(b).  (Pl.'s Mem. Supp. Mot. Dismiss 9, DN 25-1).

In Kentucky, two statutes primarily govern when a claim for fraud must be initiated.  KRS 413.120(11) provides that "[a]n action for relief or damages on the ground of fraud or mistake" must be commenced within five years after the cause of action accrued.  Further, KRS 413.130(3) provides that a claim for fraud "shall not be deemed to have accrued until the discovery of the fraud or mistake.  However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud."  Plaintiff contends that the 2002 Statement— that Maker's Mark had no rights to dripping wax on cigars—is the sole basis for Defendants fraudulent misrepresentation claim and occurred outside of the 10-year statute of repose under KRS 413.130(3).  (Pl.'s Mem. Supp. Mot. Dismiss 9-10).  Defendants clarify, however, that they pleaded that Maker's Mark repeated the 2002 Statement in "2010 and 2013 and further made affirmative statements in 2013 that Maker's Mark *did not own* rights as to tobacco products . . . ." (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 6-7 (emphasis in original)).  As such, these statements would fall within the limitations periods of KRS 413.120(11) and KRS 413.130(3).

Next, Maker's Mark claims that Defendants failed to plead their fraud claim with particularity, as required under Fed. R. Civ. P. 9(b).  (Pl.'s Mem. Supp. Mot. Dismiss 10).  When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Therefore, the party must at least provide "the time, place and

contents of the misrepresentation(s) upon which he relied." *Rautu v. U.S. Bank*, 557 F. App'x 411, 414 (6th Cir. 2014) (citing *Bender v. Southland Corp*., 749 F.2d 1205, 1216 (6th Cir. 1984)). Moreover, the party must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp*., 547 F.3d 564, 570 (6th Cir. 2008) (internal quotation marks omitted) (citation omitted). Finally, "inferences and implications are not what Civil Rule 9(b) requires. It demands specifics—at least if the claimant wishes to raise allegations of fraud against someone." *United States v. Walgreen Co*., 846 F.3d 879, 881 (6th Cir. 2017).

A claim for fraudulent misrepresentation under Kentucky law must include a showing that:

(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (citations omitted). A claimant's reliance on any misrepresentation must be reasonable or justifiable. *Flegles, Inc. v. TruServ Corp*., 289 S.W.3d 544, 549 (Ky. 2009).

Defendants' Amended Counterclaim offers little detail about the nature of the alleged fraudulent misrepresentation. In fact, rather than explain how Defendants have pleaded with particularity all of the requisite elements for fraud, Defendants argue instead that this Court should ignore the Rule 9(b) standard and focus instead on whether Maker's Mark is placed on notice of the misrepresentation claim. (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 4-5). Simply put, that is not the standard for assessing a claim for fraudulent misrepresentation. Rather, to properly plead fraud, the offended party must provide some indication of the time, place, and contents of the alleged misrepresentation; who made the representation; and why the statement was fraudulent.

Defendants have not offered any details regarding the 2002 Statement, beyond that it was made to Jackson "[i]n approximately 2002." (Defs.' Answer & Am. Countercl. 60, ¶ 34). As highlighted by Maker's Mark, "Ted's Cigars does not identify the person at Maker's Mark who allegedly made the 2002 Statement, when in 2002 this statement was made, where the statement was made, whether the statement was oral or written, or in what context this statement was made." (Pl.'s Mem. Supp. Mot. Dismiss 11). Importantly, without an identification of *who* made the allegedly false statement, it is impossible to assess whether the speaker knew that the statement was false or intended to induce Defendants to act on that representation. As a Defendant in the present action, Jackson ostensibly is available to describe this encounter with particularity; yet, no details are provided in the Counterclaim or Amended Counterclaim. Defendants also assert that the 2002 Statement was repeated in 2010 and 2013, but this allegation is similarly unadorned with any specifics. (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 6).

Further, Defendants have not explained how the 2002 Statement was false. Gurkha Cigars was a competitor of Ted's Cigars that appears to have had no relation to Maker's Mark. As such, there would seem to be no likelihood that Gurkha Cigars' use of a non-red wax seal would create consumer confusion that its cigars were somehow affiliated with Maker's Mark, whose bourbon was not implicated and whose name was not on the product. That fact does not mean, however, that Maker's Mark's decision not to sue Gurkha Cigars for using a wax seal design in 2002 should be construed as a statement that Maker's Mark would never bring a trademark infringement claim for use of a wax seal in conjunction with the Maker's Mark name. As such, Defendants have not pleaded facts sufficient to state a claim that Maker's Mark's 2002 Statement was false. Similarly, since it is unclear how the statement was false, Defendants have also not properly pleaded that the

unnamed Maker's Mark representative *knew* the statement was false or intended to induce any *reliance* on the part of Defendants.

Defendants further contend that the 2013 Statement—Samuels's statement to Jackson that Ted's Cigars could continue making a bourbon cigar so long as it did not use dripping wax—can serve as a basis for their fraudulent misrepresentation claim. (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 7). Defendants have provided no facts suggesting this statement was false. That statement and Maker's Mark's allegations in the present lawsuit are not incompatible. The contention in the current lawsuit is not that Defendants have packaged a bourbon cigar with a wax design; rather, Marker's Mark claims that Defendants have created the Bourbon Cigar characterized by a red wax design and the prominent display of Plaintiff's Mark. Defendants then allegedly advertised the Bourbon Cigar as celebrating 20 years of manufacture even though it was recently created, which allegedly further contributes to the alleged consumer confusion that the Bourbon Cigar is, in fact, the Licensed Cigar. Defendants likely could have marketed a bourbon cigar utilizing wax as allegedly stated by Samuels in 2013; what Plaintiff now asserts, however, that *this* particular design utilized by Defendants improperly invokes an association with the Marks.

As a final note, it is entirely unclear what purpose Maker's Mark could possibly have for terminating the 2010 Agreement and then inducing Defendants into designing the Bourbon Cigar just so that Maker's Mark could then initiate this lawsuit in an attempt to stop Defendants from doing so. The only possible motive presented is that Maker's Mark "did not want to make any efforts to become 'involved' with tobacco," what Defendants characterize as a "tobacco bias" dating back at least to the 2002 Statement. (Defs.' Answer & Am. Countercl. 61, ¶¶ 37-39). This "tobacco bias" might plausibly explain why Maker's Mark terminated the 2010 Agreement, but it

does not explain why Samuels would intentionally deceive Defendants into designing the Bourbon Cigar in such a way that Maker's Mark could subsequently challenge. As such, Defendants have failed to plead plausible facts that Maker's Mark intended to induce any reliance by Defendants.[4]

In conclusion, Defendants have not pleaded sufficient facts to plausibly state that the 2013 Agreement was false or otherwise intentionally crafted to deceive or induce reliance on the part of Defendants. Because neither the 2002 Statement nor the 2013 Statement as pleaded support a plausible claim for fraudulent misrepresentation, Count I of Defendants' Amended Counterclaim is dismissed.[5]

### 2. *Implied Duty of Good Faith and Fair Dealing*

Maker's Mark next asserts that Defendants' claim for breach of the implied duty of good faith and fair dealing is not a cognizable claim, is time-barred, and does not plead that Maker's Mark acted in bad faith. (Pl.'s Mem. Supp. Mot. Dismiss 17).

First, Maker's Mark argues that there is no independent tort for breach of the implied duty of good faith and fair dealing. (Pl.'s Mem. Supp. Mot. Dismiss 17). Under well-established Kentucky law, an independent tort claim based on breach of the implied covenant of good faith and fair dealing is actionable where a special relationship exists between the parties, namely in the context of insurance contracts. *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.,*

---

[4] Maker's Mark also argues that Defendants failed to plead any actual injury as a result of the alleged misrepresentation. (Pl.'s Mem. Supp. Mot. Dismiss 9). Defendants, however, clearly pleaded that they spent hundreds of thousands of dollars to rebrand the design of the Bourbon Cigar in reliance on the 2013 Statement. (Defs.' Answer & Am. Countercl. 64, ¶ 58).

[5] It is also unclear whether the forward-looking 2013 Statement can serve as the basis of a fraudulent misrepresentation claim at all. *See Flegles*, 289 S.W.3d at 549 ("The misrepresentation, moreover, must relate to a past or present material fact. A mere statement of opinion or prediction may not be the basis of an action. This means, as the Court of Appeals held, that forward-looking opinions about investment prospects or future sales performance such as those involved in this case generally cannot be the basis for a fraud claim." (internal citation omitted) (quotation omitted)).

*LLC*, 941 F. Supp. 2d 807, 816 (E.D. Ky. 2013) (citing *Ennes v. H & R Block E. Tax Servs., Inc.*, No. 3:01CV-447-H, 2002 WL 226345, at *3 (W.D. Ky. Jan. 11, 2002)).  Clearly then, because the agreements between Maker's Mark and Defendants were not insurance contracts, Defendants cannot assert a freestanding tort claim for breach of the implied covenant of good faith and fair dealing.  A claim for breach of the implied covenant of good faith and fair dealing can, however, be the basis for a viable breach of contract claim.  *Scatuorchio*, 941 F. Supp. 2d at 817 (citations omitted).  As such, Defendants claim is interpreted as one under contract law, not tort law, and can proceed.  *See Babbs v. Equity Grp. Ky. Div. LLC*, No. 1:19-CV-00064-GNS, 2019 WL 5225471, at *2 (W.D. Ky. Oct. 16, 2019) (interpreting a breach of the implied covenant of good faith and fair dealing claim as a contract claim rather than as a tort claim).

Next, Maker's Mark contends that Defendants' claim for breach of the implied duty of good faith and fair dealing is time-barred.  (Pl.'s Mem. Supp. Mot. Dismiss 18).  Kentucky has a 15-year statute of limitations period for contract claims made under contracts executed before July 15, 2014.  KRS 413.090; KRS 413.160.  As such, Maker's Mark correctly argues that the 2002 Statement regarding Gurkha Cigars cannot be the basis for a breach of contract claim.  (Pl.'s Mem. Supp. Mot. Dismiss 18).  Defendants clarify, however, that their claim of bad faith actually arises from the 2013 Statement and the resultant hundreds of thousands of dollars that Defendants spent to change the design and marketing for the new Bourbon Cigar.  (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 9-10).  As such, this claim would not be time-barred.

Finally, Maker's Mark arrives at the substance of Defendants' claim and argues that Defendants have failed to allege any facts showing that Maker's Mark acted in bad faith.  (Pl.'s Mem. Supp. Mot. Dismiss 18).  Under Kentucky law, it is undisputed that every contract includes an implied covenant of good faith and fair dealing.  *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147

F. App'x 451, 457 (6th Cir. 2005); *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). To succeed on an implied covenant of good faith and fair dealing claim, the plaintiff must show "that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *O'Kentucky*, 147 F. App'x at 458 (citing 23 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 63:22 (4th ed. 2004)).

Defendants in this instance have not pleaded facts showing Maker's Mark breached or otherwise frustrated the purpose of 1997 Agreement, the 2003 Agreement, or the 2010 Agreement. Samuels notified Jackson of Maker's Mark's decision to terminate the 2010 Agreement in December 2013, effective on December 31, 2015, giving Defendants time to dispose of remaining inventory. (Compl. ¶¶ 49-50). While Defendants claim that Samuels said that the decision was motivated by concern of the impact of selling cigars on Maker's Mark's liability insurance, there is no allegation that any reason was necessary. (Defs.' Answer & Am. Countercl. 63, ¶ 48). Regardless of Maker's Mark's motivation, the 2010 Agreement gave either party the right to terminate the agreement with proper notice. (2010 Agreement Ex. 10, § 2(b), DN 21-10). The mere termination of a contract in accordance with its terms does not constitute a breach of the implied duty of good faith and fair dealing. Furthermore, Defendants did not plead the 2013 Statement and other actions after the termination of the 2010 Agreement violated the terms of that contract.

Rather than demonstrating how the pleaded facts show a plausible claim for bad faith, Defendants cite to two cases they claim have "similar facts," namely *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992), and *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159 (3d Cir. 2001). (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 8-9). Both of these cases, however,

deal with claims brought by a *licensor* against an *exclusive licensee* which allegedly failed to develop or effectively market the licensed product. *Beraha*, 956 F.2d at 1445; *Emerson*, 253 F.3d at 171. The situation here is reversed—i.e., a licensee suing a licensor—so the relevance of this case law is unclear. Moreover, those cases dealt with situations where a licensor was left at the mercy of a licensee who had unique discretion when developing or marketing the product in question. The unexplained failure of the licensee to take steps to sell the product and the inability of the licensor to license the product to another party is an example of a plausible claim for breach of the implied duty of good faith and fair dealing. Defendants here, however, have failed to plead any bad faith on the part of Maker's Mark that kept Defendants from enjoying the benefit of their bargain.

Because Defendants have not pleaded any facts showing that Maker's Mark acted in bad faith or otherwise frustrated the purpose of any contract, Defendants have failed to state a plausible claim for breach of the implied duty of good faith and fair dealing. Count II of Defendants' Amended Counterclaim is dismissed.

### 3. *Promissory Estoppel*

Maker's Mark next posits that Defendants' claim for promissory estoppel must be dismissed because there was no enforceable promise and Defendants' reliance on any alleged promise was unreasonable. (Pl.'s Mem. Supp. Mot. Dismiss 20). The elements for a promissory estoppel claim under Kentucky Law include: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Schlenk v. Goodwill Indus. of Ky., Inc.*, No. 3:16-CV-00601-JHM, 2016 WL 6836945,

at *3 (W.D. Ky. Nov. 18, 2016) (citations omitted). "Reliance on the promise must be justified." *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (citations omitted).

Maker's Mark asserts that Defendants failed "to allege the existence of an enforceable promise." (Pl.'s Mem. Supp. Mot. Dismiss 20). Defendants identify two promises as the basis for their promissory estoppel claims: "(a) Maker's Mark's [2002] representations that it did not have legal rights to a dripping wax design for cigars . . . and (b) Maker's Mark's [2013] representations that upon termination of the 2010 License Agreement, Ted's Cigars could continue to sell its Bourbon Cigar as long as it did not incorporate a dripping wax design." (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 11).

The 2002 Statement was not an enforceable promise and therefore cannot serve as the basis for a promissory estoppel claim. The 2002 Statement—that Maker's Mark did not have any rights to dripping wax on cigars—was contradicted by the express terms of the subsequent 2003 Agreement, in which Maker's Mark licensed to Defendants the right to use a "wax overlay" on its cigars. (2003 Agreement Ex. A, at 1, DN 1-4). An oral promise that is contradicted by a written agreement cannot serve as the basis for a promissory estoppel claim. *See Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 WL 2903231, at *5 (E.D. Ky. Sept. 27, 2007) ("[A]n oral promise made prior to the execution of a written agreement that is inconsistent with the unambiguous terms of the written agreement cannot form the basis of a promissory estoppel claim."); *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 799 (W.D. Ky. 2005), *aff'd*, 279 F. App'x 378 (6th Cir. 2008) ("Accordingly this Court finds that an oral promise made prior to the execution of a written agreement that is inconsistent with the unambiguous terms of the written agreement cannot form the basis of a promissory estoppel claim.").

Defendants agree with this statement of law but contend instead that the 2002 Statement is not inconsistent with the 2003 Agreement or the 2010 Agreement. (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 11). Specifically, Defendants argue that the 2003 Agreement mentions the wax design as it relates to bourbon bottles but "does not does not identify a dripping wax design used in connection with *cigars*." (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 11) (emphasis in original). While it is true that Schedule A of the 2003 Agreement shows the wax design on a bourbon bottle, Defendants argument completely ignores the purpose of the 2003 Agreement— i.e., to license to Defendants the right to use Maker's Mark's signature wax on *cigars*. As such, Maker's Mark's licensing of its dripping wax to Defendants for use on their cigars clearly contradicts the notion that Maker's Mark had no rights to dripping wax on cigars.

Maker's Mark argues that the same fate should befall the 2013 Statement—Samuels allegedly informing Jackson that Defendants could continue to make a bourbon cigar so long as they did not use dripping wax. (Pl.'s Mem. Supp. Mot. Dismiss 20). This statement, or promise, however, went to the conduct of Defendants *after* the termination and effective date of 2010 Agreement. As such, it cannot be said that claims from Samuels's forward-looking statement in 2013 could be barred by the terms of the 2010 Agreement.

Maker's Mark next proposes that the alleged 2013 Statement "does not give rise to a plausible inference that Maker's Mark made a promise not to sue Ted's Cigars for infringement of its intellectual property rights . . . [or] that it could continue using the Maker's Mark name in conjunction with a red wax design on its packaging . . . ." (Pl.'s Mem. Supp. Mot. Dismiss 22). Thus, even if there was an enforceable promise, it was not reasonable or justifiable for Defendants to rely on it to the extent that they did. Just how reasonable Defendants were in their reliance is not the question at the motion to dismiss stage of litigation; rather, the issue is whether Defendants

have *stated a plausible claim* of promissory estoppel.  Insofar as Defendants have pleaded facts that there was a promise, that Maker's Mark should have known it would reasonably induce action on the part of Defendants, such action was in fact induced, and the enforcement of that promise is necessary to avoid injustice, Defendants have stated a claim for promissory estoppel.  Count III of Defendants' Amended Counterclaim is not dismissed.

### 4. *Collateral Estoppel*

Maker's Mark argues that Defendants' claim for collateral estoppel must be dismissed because it is an affirmative defense, not a standalone claim.  (Pl.'s Mem. Supp. Mot. Dismiss 23). "[C]ollateral estoppel is an affirmative defense which is ordinarily deemed waived if not raised in the pleadings."  *Gilbert v. Ferry*, 413 F.3d 578, 579 (6th Cir. 2005).  Defendants argue that they are using collateral estoppel as an offensive action for declaratory relief, but they also state that they assert collateral estoppel as an affirmative defense and invite the Court to re-designate it as such.  *See* Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.").  Accordingly, Count IV of Defendants' Amended Counterclaim is dismissed, and Defendants' claim of collateral estoppel will be redesignated an asserted affirmative defense.

### 5. *Trademark Cancellation*

Finally, Maker's Mark argues that Defendants' claim for trademark cancellation is blocked by the doctrine of licensee estoppel and by the terms of the 2010 Agreement.  (Pl.'s Mem. Supp. Mot. Dismiss 23).  Specifically, the 2010 Agreement include a "no challenge" clause which states: "During the term of this Agreement and thereafter, LICENSEE shall not take any action which may prejudice the validity of, or MAKER'S MARK's title to, the Property and shall not assert the

invalidity or contest the ownership by Maker's Mark of the Property in any country . . . ." (2010 Agreement Ex. 10, § 6). This provision in the 2010 Agreement appears to embody the common law doctrine of licensee estoppel. *See John C. Flood of Va., Inc. v. John C. Flood, Inc*., 642 F.3d 1105, 1111 (D.C. Cir. 2011) ("The theory underlying the licensee estoppel doctrine is that a licensee should not be permitted to enjoy the benefits afforded by the license agreement while simultaneously urging that the trademark which forms the basis of the agreement is void." (citation omitted)). Under this doctrine, "a licensee should be, in many cases, 'estopped from claiming any rights against the licensor which are inconsistent with the terms of the license.'" *Kebab Gyros, Inc. v. Riyad*, No. 3:09-0061, 2009 WL 5170194, at *6 (M.D. Tenn. Dec. 17, 2009) (quoting *Westco Grp., Inc. v. K.B. & Assocs., Inc*., 128 F. Supp. 2d 1082, 1086 (N.D. Ohio 2001)).

Defendants point out, however, that the 2010 Agreement licenses the use of "the MAKER'S MARK word and logo trademark and *does not include* a wax design of any kind." (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 18 (emphasis in original)). While the 2010 Agreement is unclear on this point, this contention appears to be correct and was not disputed by Maker's Mark in its reply. The doctrine of licensee estoppel does not bar attacks against trademarks owned by the licensor that were not licensed to the licensee. *See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc*., 908 F.3d 313, 322 (8th Cir. 2018) ("The rule of licensee estoppel, however, generally covers only the mark that the licensee has agreed 'to use' since by agreeing to pay to use it 'the licensee effectively recognizes [its] validity.'" (citation omitted)); *World Trade Ctrs. Ass'n v. Port Auth. of N.Y. & N.J.*, No. 15-CV-7411, 2018 WL 6628840, at *10 n.12 (S.D.N.Y. Dec. 18, 2018) ("[T]he doctrine of licensee estoppel does not equitably bar Defendant from challenging Plaintiff's rights in marks that are not within the scope of the license.").

Notably though, the trademark for the wax design was included as part of the 2003 Agreement. (2003 Agreement Ex. 4, at 1). This fact cuts both ways, however. On one hand, it would seem that the omission of any mention of a wax overlay in the 2010 Agreement was intentional on the part of the parties and should inform this Court's interpretation of whether Maker's Mark licensed its trademarked dripping wax to Defendants in the 2010 Agreement. On the other hand, the 2003 Agreement explicitly licensed the trademarked design, so the doctrine of licensee estoppel could potentially apply under the former licensing agreement.[6]

The Sixth Circuit has not definitively established the elements or factors that should guide the district court when assessing a defense of licensee estoppel. Many of our sister courts, however, have highlighted that licensee estoppel is an equitable doctrine that requires a weighing of the equities on both sides of the dispute. *See Kebab Gyros*, 2009 WL 5170194, at *6 (describing licensee estoppel as "not a hard-and-fast rule that bars all potential challenges that a licensee might offer against a licensor's trademark."); *Pride Publ'g Grp. Inc. v. Edwards*, No. 1:08-CV-94, 2008 WL 2201516, at *4 (E.D. Tenn. May 23, 2008) ("[L]icensee estoppel is an equitable doctrine, and a court remains free to consider the particular circumstances of the case, including the nature of the licensee's claim and the terms of the license." (quoting Restatement (Third) of Unfair Competition § 33 cmt. d (1995))).[7] As such, this Court needs more information about the scope

---

[6] The 2003 Agreement does not contain a "no challenge" clause comparable to the one in the 2010 Agreement. Licensee estoppel, however, is an equitable doctrine born out of common law. *See* 2 Anne Gilson Lalonde & Jerome Gilson, *Gilson on Trademarks* § 6.07(7) (2019). As such, the doctrine can still apply to the 2003 Agreement regardless of any embodiment in the contract itself.
[7] Moreover, the rules governing the applicability of licensee estoppel are distinct throughout the circuits and are largely undeveloped in the Sixth Circuit. *See, e.g.*, *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130, 137 (2d Cir. 2003) (finding that licensee estoppel should only be applied after balancing the public interest in valid marks against the private interest of enforcing a contract); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000) (holding that a licensee could challenge the validity of a previously licensed trademark based on events that occurred after the license agreement expired).

of the 2010 Agreement and the countervailing equities at play in this situation. Given the need for additional information, it would be inappropriate to dismiss Defendants' counterclaim at the pleadings stage. Count V of Defendants' Amended Counterclaim is not dismissed.

### 6.      *Terms of Dismissal*

Pursuant to this Order, Counts I, II, and IV of Defendants' Amended Counterclaim are dismissed. Defendants requested leave to amend any counterclaims that are dismissed by the Court. (Defs.' Resp. Pl.'s Mot. Dismiss Countercl. 25). Maker's Mark counters that Defendants have already amended their counterclaim once, that such a request must be made as a separate motion, and that Defendants do not explain how they can rectify the shortcomings of their pleadings. (Pl.'s Reply Mot. Dismiss Countercl. 15).

"When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (quoting *PR Diamonds, Inc., v. Chandler*, 364 F.3d 671, 698 (6th Cir.2004). Leave to amend can be denied, within the court's discretion, when such an amendment would be futile to correct the pleading deficiencies. *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017). Moreover, "a district court does not abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2018) (citations omitted).

Defendants have no pending motion to amend their counterclaims. *See La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)."

(citation omitted)).  Nor, for that matter, have Defendants attempted to explain what additional facts could be pleaded to save their claims.  Regardless, without the benefit of an actual motion seeking leave to amend, the Court is unable to assess whether such an amendment would be futile. The dismissed counterclaims are dismissed without prejudice.  If Defendants wish to further amend their counterclaims, they can request leave of to amend pursuant to Fed. R. Civ. P. 15(a)(2).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.  Plaintiff/Counterclaim Defendant's Motion to Strike Affirmative Defenses (DN 24) is **GRANTED IN PART** and **DENIED IN PART**.  Defenses 1, 2, 3, and 29 are **DISMISSED**.

2.  Plaintiff/Counterclaim Defendant's Motion to Dismiss Defendants' Amended Counterclaim (DN 25) is **GRANTED IN PART** and **DENIED IN PART**.  Counts I, II, and IV are **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

March 20, 2020

cc:  counsel of record