UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
No. 3:19-cv-00014-GNS-LLK

MAKER'S MARK DISTILLERY, INC.                                                         PLAINTIFF

v.

SPALDING GROUP, INC. d/b/a                                                            DEFENDANTS
ENGLISH EMPRISE and TED'S CIGARS,
and THEODORE JACKSON, JR.

### MEMORANDUM OPINION AND ORDER

District Judge Joseph McKinley referred this matter to Magistrate Judge Lanny King for a determination of non-dispositive matters and to conduct any hearings necessary for their resolution. (DN 5). Chief Judge Greg N. Stivers is now the district judge presiding over this case. (DN 48). Before the Court is the Motion of Plaintiff Maker's Mark, seeking to amend the scheduling order. (DN 106). Defendants Spalding Company and Theodore Jackson filed a response in opposition. (DN 109). This matter is ripe for adjudication. For the following reasons, Plaintiff's Motion to Amend is **GRANTED.**

### BACKGROUND

This case arises out of a dispute between Maker's Mark and Defendants Spalding Group and Theodore Jackson. (DN 1). The parties previously engaged in a business relationship; Marker's Mark granted Defendants license to use certain elements of Maker's Mark trademarks and trade dress in connection with a line of Maker's Mark bourbon-seasoned cigars. (DN 1). In December 2015, Maker's Mark terminated the license, but, according to Maker's Mark, the products in question remained on the market in violation of the parties' agreement. (DN 1).

Maker's Mark filed a complaint, alleging that Defendants infringed on Maker's Mark

trademarks; provided false designation of origin; and engaged in trademark dilution, breach of contract, common law trademark infringement, common law false designation, and unfair competition. (DN 1). According to Maker's Mark, "rather than selling off their remaining inventory of licensed cigars . . . , Defendants chose to continue selling their Maker's Mark-seasoned cigars as 'The Bourbon Cigar,' utilizing not only the Maker's Mark name, but also an irregular red wax design that is strikingly similar to the wax design Maker's Mark has used . . . since its founding in the late 1950s." *Id.*

The parties met and conferred with the undersigned and determined an initial discovery schedule for the proceedings. (DN 40, 65, 68, 83, 85). That schedule was amended several times, thereafter, resulting in the current scheduling order. (DN 87). The final agreed scheduling order included the following dates:

> 1. No later than **December 22, 2021**, the Party who has the initial burden of proof on the subject matter shall disclose the identity of any person who may be used at trial to provide expert testimony under Fed. R. Civ. P. 26(a)(2)(A) and shall submit written reports from any expert witnesses who are retained or specially employed as required by Fed. R. Civ. P. 26(a)(2)(B).
>
> 2. No later than **February 21, 2022**, the Party seeking to rebut or contradict evidence presented by an expert shall disclose the identity of any person who may be used at trial to provide expert testimony under Fed. R. Civ. P. 26(a)(2)(A) and shall submit written reports from any expert witnesses who are retained or specially employed as required by Fed. R. Civ. P. 26(a)(2)(B).
>
> 3. No later than **April 22, 2022**, the Parties shall complete all expert discovery, including any expert depositions.
>
> 4. No later than **June 21, 2022**, counsel for the Parties shall file all dispositive motions and motions objecting to the admissibility of expert witness testimony under Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), and *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137 (1999). (DN 87).

Plaintiff Maker's Mark produced written reports from its experts on December 22, 2021. (DN 106). Those reports included a report with a survey on "the likelihood that consumers would be

2

confused into believing that 'Ted's Cigars' Bourbon Cigars had a business affiliation with or used with permission from Maker's Mark" ("Confusion Survey"). *Id.*

On February 21, 2022, the deadline for "the Party seeking to rebut or contradict evidence presented by an expert" to disclose its expert and submit its written report, Defendants produced their reports. (DN 88). Defense expert Hal Poret drafted one of the experts' rebuttal reports. (DN 88-3). The Poret rebuttal report can be divided into two parts: one part focuses on the "Confusion Survey" that Plaintiff's expert produced on December 22, 2021. (DN 88-3). The other part of the report discusses a study Poret conducted in November of 2020 on whether the Maker's Mark dripped red wax design was "famous" as defined by the trademark dilution portion of the Lanham Act, 28 U.S.C. 1114, ("Poret Fame Survey"). (DN 88-3). On March 14, 2022, Plaintiff Maker's Mark moved the Court to strike the "Poret Fame Survey" portion of the Poret rebuttal report as improper opinions. (DN 88). That motion is still pending before the Court.

After a May 9, 2022, telephonic status conference about the Poret Fame Survey and Plaintiff's Motion to Strike, the Court granted Plaintiff leave to file the motion now before the Court. (DN 105). On May 16, 2022, Maker's Mark moved the Court for an extension of time to complete expert discovery and to file dispositive motions. (DN 106). In the Motion to Strike and the motion before the Court, Plaintiff claims the Poret Fame Survey portion of Defendants' expert's report, which was submitted on the February 21, 2022, deadline for rebuttal reports, contained an affirmative expert opinion mischaracterized as a rebuttal expert opinion. *Id.* Plaintiff argues that the Perot Fame Survey portion qualifies as an affirmative expert, making Defendants' filing the report on the rebuttal deadline untimely. *Id.* Plaintiff seeks a deadline extension "until after the Court rules on the Motion to Strike, [because] Maker's Mark would suffer considerable prejudice and be forced the bear the economic burden of responding to

3

Defendants' untimely and improper fame opinions." (DN 106). Plaintiff asks the Court to extend three deadlines—a rebuttal expert opinion in response to Defendants' "fame" expert report; the April 22, 2022, deadline to complete discovery; and the June 21, 2022, deadline to file dispositive and *Daubert* motions—to 25 days, 45 days, and 60 days, respectively, from the date the Court rules on Plaintiff's Motion to Strike. (DN 106). Extending the deadlines until after the Court rules on Plaintiff's Motion to Strike is effectively a stay of discovery.

Defendants filed a response to Plaintiff's motion for an extension of time on May 23, 2022. (DN 109). Defendants argue that the Perot Fame Survey is a rebuttal report because "Plaintiff has the burden of proof on the issue of trademark fame for purposes of dilution and it made the conscious decision to not present survey evidence addressing the issue on the initial deadline." (DN 109). Additionally, Defendants argue, "Plaintiff theoretically had the opportunity to offer some rebuttal to Mr. Poret within 30-days of the disclosure pursuant to [Federal Rule of Civil Procedure] Rule 26(a)(2)(D)(ii) but it again failed to do so – again at its own peril." (DN 109). Defendants dispute the expense estimate Plaintiff suggests and argue that an extension could cause increased monetary damages and, thus, prejudice Defendants. (DN 109).

## LEGAL STANDARD

Modifications to a scheduling order are governed by Rule 16(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 16(b). Pursuant to subsection (b)(4) of the Rule, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The decision to grant a motion to modify a scheduling order under Rule 16(b) is within the Court's discretion. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). According to the Sixth Circuit, "[t]he primary measure of Rule 16's good cause standard is the moving party's

4

diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Grp.*, 281 F.3d 613, 625 (6th Cir. 2002). Good cause exists when a party "cannot reasonably [meet the scheduling deadline] despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b), cmt. subdiv. Sched. & Planning (4). The good cause analysis also includes a determination of "whether the opposing party will suffer prejudice by virtue of the amendment." *Id.*

    I.       **The Good Cause Requirement**

A general overview of the elements of Plaintiff's claims are relevant for the good cause analysis. Plaintiff alleges, *inter alia,* trademark infringement under 25 U.S.C. § 1114, which makes "any person who . . . uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . with which such use is *likely to cause confusion*, or to cause mistake, or to deceive liable in a civil action by the registrant." 25 U.S.C. 1114(1)(a)-(b) (emphasis added). Plaintiff's expert report that includes the Confusion Survey, which was filed on December 22, 2021, seems to relate to the trademark infringement claim, and thus is relevant to the discovery deadline in light of the scheduling order's requirement that "the Party who has the initial burden of proof on the subject matter shall disclose the identity of any person [or report]" requirement. (DN 87).

Plaintiff also alleges trademark dilution under 25 U.S.C. § 1125(c)(1). (DN 1). In 25 U.S.C. § 1125(c)(1), "the owner of a *famous* mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become *famous*, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the *famous* mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic

5

injury." 25 U.S.C. § 1125(c)(1)(emphasis added). Plaintiff's expert report focused on confusion and did not present evidence on fame. (DN 106).

Plaintiff argues that "defendants improperly attempted to introduce new and undisclosed opinions [under the guise of] 'rebuttal opinions' at the February 2022 deadline." (DN 106). Defendants argue that because Plaintiff has the initial burden of proof for trademark dilution, Plaintiff must show that the red dripping wax on Maker's Mark bottles is "famous" under 25 U.S.C. 1125(c)(1). (DN 109). According to Defendants, because Plaintiff has the burden to show the red dripping wax is famous, Defendants' expert may rebut that element, regardless of whether Plaintiff's expert addressed the issue of fame. (DN 109).

This Court looks to the Federal Rules of Civil Procedure and precedent when determining whether Plaintiff has shown good cause to seek to amend the scheduling order. According to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), "[a] party must make these disclosures at the times and in the sequence that the court orders . . . . (ii) [I]f the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), [the disclosures must be made] within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Bentley v. Highlands Hospital Corp*., 2016 WL 5867496 (E.D. Ky. 2016). The Court finds the inclusion of "solely" and "to contradict or rebut evidence" relevant here.

Plaintiff's expert report did not include evidence on whether the dripping red wax is famous. Instead, the report focused on the Confusion Survey. (DN 106). The report of Defendants' rebuttal expert, Hal Perot, discussed the Confusion Survey, but also introduced the evidence on fame in the Perot Fame Survey. (DN 88-3) (According to Defendants' expert, Hal Perot, "Through its counsel, Defendants initially retained me to design and conduct two surveys on the

6

topic of fame . . . . I was subsequently asked to review and provide my opinions regarding [Plaintiff's expert report] (dated December 22, 2021), which discloses a likelihood of confusion survey.") (DN 88-3).

Because Plaintiff's disclosures were timely and Defendants presented new evidence in their rebuttal report, the Court finds that Plaintiff has shown good cause for an amendment to the scheduling order.

II.     **Prejudice to Defendant**

In addition to the good cause determination, the Court also considers whether the non-moving party will be prejudiced by an amendment to the scheduling order. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). Defendants argue that "Defendants' damages tab is open and increasing dramatically with the passage of time." (DN 109). Defendants, however, have apparently anticipated the "famous" showing under trademark dilution, 25 U.S.C. § 1125(c)(1) and have prepared for it. (DN 88-3). Furthermore, Plaintiff seeks two extensions (a 35-day extension to prepare a rebuttal expert opinion and a 45-day extension to complete expert discovery) beginning after resolution of Plaintiff's Motion to Strike. (DN 106). A stay of the remaining deadlines until resolution of Motion to Strike is not unduly prejudicial as both parties submitted multiple joint proposed scheduling changes for multiple reasons, (DN 65, 68, 72, 83, 87), and the 35-days and 45-days request is neither unreasonable nor indefinite.

## CONCLUSION

For the reasons explained above, the Court finds good cause to grant Plaintiff's Motion to Amend the Scheduling Order (DN 106).

For the foregoing reasons, **IT IS SO ORDERED:**

The Court **GRANTS** Plaintiff's Motion to Amend the Scheduling Order (DN 106).

The following deadlines are stayed pending resolution of Plaintiff's Motion to Strike. (DN 88).

>The deadline to prepare a rebuttal expert opinion in response to Mr. Poret's "fame" opinions has been extended, if necessary, to 35 days after resolution of Plaintiff's Motion to Strike. (DN 88).
>
>The deadline for expert discovery has been extended, if necessary, to 45 days after resolution of Plaintiff's Motion to Strike (DN 88).
>
>The deadline for all dispositive and *Daubert* motions is vacated to be reestablished by the Court after resolution of Plaintiff's Motion to Strike (DN 88).

September 28, 2022

Lanny King, Magistrate Judge
United States District Court