UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00014-GNS-LLK

MAKER'S MARK DISTILLERY, INC.                                                PLAINTIFF

v.

SPALDING GROUP, INC.
d/b/a ENGLISH EMPRISE and TED'S CIGARS; and
THEODORE JACKSON, JR.                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Strike Improper Opinions from the Rebuttal Reports of Defendants' Experts (DN 88); Plaintiff's Motion for Leave to Seal (DN 89); Plaintiff's Notice of Name Change and Motion to Amend Case Caption (DN 92); Plaintiff's Motion for Leave to Serve a Limited Reply Report (DN 93); Defendants' Motion for Leave to Seal (DN 94); and Defendants' Motion for Leave to File an Amended Answer (DN 99). The motions are ripe for adjudication. For the reasons outlined below, Plaintiff's Motion to Strike Improper Opinions from the Rebuttal Reports of Defendants' Experts is **GRANTED IN PART** and **DENIED IN PART**; Plaintiff's Motion for Leave to Seal is **DENIED**; Plaintiff's Motion to Amend the Case Caption is **GRANTED**; Plaintiff's Motion for Leave to Serve a Limited Reply Expert Report is **GRANTED**; Defendants' Motion for Leave to Seal is **DENIED**; and Defendants' Motion for Leave to File an Amended Answer is **DENIED**.

# I. BACKGROUND

## A. Statement of Facts

On May 1, 1997, Plaintiff Maker's Mark Distillery, Inc.[1] ("Maker's Mark") entered into a Licensing Agreement (the "1997 Agreement") with Defendant Spalding Group d/b/a English Emprise and Ted's Cigars ("Spalding Group") and Defendant Theodore Jackson Jr. ("Jackson"), Spalding Group's owner and director, (collectively "Defendants"). (Compl. ¶ 41, DN 1). The 1997 Agreement granted Spalding Group an exclusive license to use the trademarks of Maker's Mark (the "trademarks") in connection with the creation and sale of cigars seasoned with Maker's Mark bourbon (the "Licensed Cigars"). (Compl. ¶ 41). The licensing agreement was renewed as amended in 2003 and renewed again as amended in 2010 (the "2010 Agreement"). (Compl. ¶¶ 42-43). On December 4, 2013, Maker's Mark notified Defendants that it was terminating the license under the 2010 Agreement's terms, effective December 31, 2015. (Compl. ¶ 49). Under the 2010 Agreement, Spalding Group then had until June 28, 2016, to dispose of its remaining inventory of Licensed Cigars. (Compl. ¶ 51).

Following the termination of the license, Spalding Group began selling a different cigar also seasoned with Maker's Mark bourbon (the "Bourbon Cigar"). Maker's Mark alleges the packaging of the Bourbon Cigar was intentionally designed to "evoke an association by customers between [t]he Bourbon Cigar on the one hand and Maker's Mark and the prior Licensed Cigars on the other." (Compl. ¶ 52). Maker's Mark further claims Spalding Group advertised the Bourbon Cigar in a variety of ways to associate it with Maker's Mark and the Licensed Cigars, despite Maker's Mark's demand that Spalding Group cease and desist from such conduct. (Compl. ¶¶ 55-

---

[1] During the pendency of this case, Maker's Mark Distillery, Inc. changed its corporate designation to a public benefit corporation and its name to Maker's Mark Distillery, PBC. (Pl.'s Notice Name Change & Mot. Amend Case Caption 1, DN 92). The effects of this change are discussed *infra*.

66).  Maker's Mark asserts that Spalding Group's actions have caused actual confusion among retailers, wholesale purchasers, and consumers as to the relationship between Maker's Mark and the Bourbon Cigar.  (Compl. ¶¶ 75, 82).[2]  Defendants contest whether any such consumer confusion has occurred.  (Answer & Am. Countercl. 74 ¶ 108, DN 21).

Defendants contend that in 2002 they requested Maker's Mark to prevent a competing manufacturer from selling a cigar product featuring a dripping wax design, but "Maker's Mark's [sic] advised Jackson that it did not have any rights to dripping wax on cigars so there was nothing it could do."  (Answer & Am. Countercl. 60-61 ¶¶ 34-36).  Further, Defendants allege that Rob Samuels ("Samuels"), when terminating the 2010 Agreement on behalf of Maker's Mark in 2013, informed Jackson that "Ted's Cigars could continue making a bourbon cigar so long as it did not use dripping wax."  (Answer & Am. Countercl. 63 ¶¶ 48-50).

## B.  <u>Procedural History</u>

In January 2019, Maker's Mark filed this action against Defendants, alleging trademark infringement, false designations, and trademark dilution pursuant to the Lanham Act, 15 U.S.C. §§ 1051-1141, along with breach of contract, common law trademark infringement, common law false designation, and unfair competition.  (Compl. ¶¶ 88-130).  Defendants filed a Counterclaim against Maker's Mark.[3]  (Countercl., DN 8).  Thereafter, Defendants filed an Answer to the Complaint and an Amended Counterclaim alleging fraudulent misrepresentation, breach of the implied duty of good faith and fair dealing, promissory estoppel, and collateral estoppel, and

---

[2] Maker's Mark provides several examples of retailers advertising the Bourbon Cigar as still being associated with Maker's Mark and consumers referring to the Bourbon Cigar as a "Maker's Mark cigar."  (Compl. ¶¶ 76-81, 83-84).

[3] The Counterclaim and Amended Counterclaim are raised by Spalding Group, not by Jackson individually.  Even so, Defendants are represented by the same counsel and filed their Answer, Counterclaim, and Amended Counterclaim jointly.

seeking cancellation of three of Maker's Mark trademark registrations dealing with wax designs. (Answer & Am. Countercl. 75-78 ¶¶ 110-42).  Upon motion by Maker's Mark, the Court dismissed Defendants' fraudulent misrepresentation, breach of the implied duty of good faith and fair dealing, and collateral estoppel counterclaims.  (Mem. Op. & Order 21, DN 56).

Maker's Mark has filed a motion to strike improper opinions from the rebuttal report of Defendants' experts, a motion to amend the case caption following notice of its change of name and corporate designation, and a motion for leave to serve a limited reply report.  (Pl.'s Mot. Strike Improper Ops. Rebuttal Reports, DN 88; Pl.'s Notice Name Change & Mot. Amend Case Caption 1; Pl.'s Mot. Leave Serve Limited Reply Expert Report, DN 93).  Additionally, Defendants filed a motion for leave to file an Amended Answer.  (Defs.' Mot. Leave File Am. Answer, DN 99).  Each motion elicited responses and replies from the respective parties.  Lastly, Maker's Mark and Defendants each filed separate motions for leave to seal certain documents, both of which went without any response.  (Pl.'s Mot. Leave Seal, DN 89; Defs.' Mot. Leave Seal, DN 94).

## II.      JURISDICTION

The Court has subject matter jurisdiction over this matter based upon federal question jurisdiction.  *See* 28 U.S.C. § 1331.  Supplemental jurisdiction exists over the remaining state law claims, as they arise from the same case and controversy.  *See* 28 U.S.C. § 1367(a).

## III.      DISCUSSION

### A.      Plaintiff's Motion to Amend the Case Caption

Maker's Mark notified the Court and Defendants that the corporation changed its business structure from a corporation to a public benefit corporation under Kentucky law.  (Pl.'s Notice Name Change & Mot. Amend Case Caption 1).  This change prompted Maker's Mark's motion to amend the case caption to reflect its new name, "Maker's Mark Distillery, PBC," rather than its

previous name, "Maker's Mark Distillery, Inc."  (Pl.'s Notice Name Change & Mot. Amend Case Caption 1).  Maker's Mark's business organization remains a corporation under Kentucky law. *See* KRS 271B.1-400(5).

Defendants object to Maker's Mark's motion on the grounds that "the substantive allegations of the Complaint should likewise change given the change in name and status."  (Defs.' Resp. Pl.'s Mot. Amend Case Caption 2, DN 97).  Defendants argue the allegations in the Complaint are affected because they claim Maker's Mark Distillery, Inc. owns the trademarks at issue in this case.  (Defs.' Resp. Pl.'s Mot. Amend Case Caption 2).  Furthermore, they note that at the time of the motion, the United States Patent and Trademark Office ("USPTO") website listed Maker's Mark Distillery, Inc. as the owner of the trademarks at issue.  (Defs.' Resp. Pl.'s Mot. Amend Case Caption 2).  Maker's Mark remarked that its name change was pending with the USPTO at that time.  (Pl.'s Reply Notice Name Change & Mot. Amend Case Caption 1-2, DN 102).  The USPTO website currently reflects that Maker's Mark Distillery, PBC is the owner of U.S. Trademark Reg. 678,192 and U.S. Trademark Reg. 1,370,465.  *Trademark Electronic Search System (TESS)*, U.S. Pat. & Trademark Off., https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4801:761uqj.2.1 (last accessed Dec. 5, 2022) ("Maker's Mark" word mark); *Trademark Electronic Search System (TESS)*, U.S. Pat. & Trademark Off., https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4801:761uqj.3.1 (last accessed Dec. 5, 2022) (dripping wax cap design mark).  This information renders Defendants' concerns regarding true ownership of the trademarks moot.  Plaintiff's motion to amend the case caption is granted.

B.    **Defendants' Motion for Leave to File an Amended Answer**

Defendants seek leave to file an amended answer to include an affirmative defense of "fair use" almost eighteen months past the amendment deadline in the scheduling order ("2020 Scheduling Order").[4]   (Defs.' Mot. Leave File Am. Answer; *see* Agreed Second Am. Scheduling Order 1, DN 68 [hereinafter 2020 Scheduling Order] (prescribing the deadline for amendments to pleadings as November 26, 2020)).   Amendments to pleadings are typically governed by Fed. R. Civ. P. 15; however, a different analysis precedes the Rule 15 determination when a party seeks leave to amend a pleading after the deadline set by the court for amendments has passed.   "Once the scheduling order's deadline passes, a [party] first must show good cause under [Fed. R. Civ. P.] 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15[]."   *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).   Thus, Defendants must show good cause under Rule 16 before proceeding to the Rule 15 analysis.   *See id.*; (2020 Scheduling Order 1).   Courts consider two factors when determining whether good cause exists: (1) whether the movant acted with diligence to meet the scheduling order deadlines and (2) whether the nonmovant would be prejudiced by granting the movant's leave to amend.   *Leary*, 349 F.3d at 906, 909 (citations omitted). Defendants have not demonstrated good cause to justify amending their Answer because they have not acted with diligence and allowing for amendment would prejudice Maker's Mark.

---

[4] The Scheduling Order was later amended three more times. (Agreed Am. Scheduling Order, DN 83; Agreed Am. Scheduling Order, DN 85; Agreed Am. Scheduling Order, DN 87).   The later two amendments, however, occurred after the deadline for amendments to pleadings elapsed and that deadline was not extended.

1. *Diligence*

A movant acts with diligence in filing a motion to amend a pleading when it seeks leave from the court quickly after learning of the information giving rise to the amendment. *Id.* at 908 (citing *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)). Good cause is not present where the movant is "aware of the 'underlying facts'" supporting the proposed amendment before the deadline. *Id.*; *see Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014).

The deadline to amend pleadings lapsed in November 2020, eighteen months before Defendants filed their present motion to amend. (2020 Scheduling Order 1; Defs.' Mot. Leave File Am. Answer). Further, Defendants were aware of the basis for their fair use defense before this case commenced. Thus, they were certainly aware of the underlying facts to support such a defense prior to the expiration of the deadline for amending pleadings. (*See* Defs.' Reply Mot. Leave File Am. Answer 4, DN 108 ("The parties began arguing back and forth over that defense back in 2017 through their [previous] correspondence.")). Despite knowing the facts supporting fair use in 2017, Defendants now seek to add this affirmative defense five years later. This clearly demonstrates an absence of diligence.

Defendants argue they were diligent in filing their motion because they did so promptly after discovering that Maker's Mark was taking the position that Defendants waived the fair use defense. (Defs.' Reply Mot. Leave File Am. Answer 4). It does not matter when Defendants learned of Maker's Mark's arguments regarding the defense; rather the operative timing is when the Defendants learned of the facts to support the defense. *See Leary*, 349 F.3d at 908. The fact that the waiver dispute was brought to the attention of Defendants in Maker's Mark's motion to strike does not excuse Defendants from their responsibility to plead the defense when they were aware of the facts to support it. *See id.* (noting that diligence is not exhibited by a movant who is

"'obviously aware of the basis of the claim for many months,' but nonetheless failed to pursue the claim until after it was brought to their attention by [the nonmoving party]." (quoting *Duggins*, 195 F.3d at 834)).

Defendants aver that "the parties have extensively litigated the fair use defense in discovery," but this is immaterial to whether Defendants were diligent in seeking leave to amend their Answer.  (Defs.' Reply Mot. Leave File Am. Answer 4).  This assertion pertains to whether Defendants waived the defense, not whether they were diligent in seeking amendment.  Moreover, Defendants' stated impression that they have been litigating this defense through discovery further demonstrates they had the information regarding their fair use defense much earlier in the proceeding and could have sought leave to amend prior to the deadline, again reflecting a lack of diligence.

### 2.     *Prejudice*

The Sixth Circuit has held that even when a movant has not exhibited diligence in seeking leave to amend after the deadline for amendments to pleadings "a district court [must] find 'at least some significant showing of prejudice to the opponent,' before it [may] deny a motion for leave to amend." *Leary*, 349 F.3d at 907 (internal quotation marks omitted) (quoting *Duggins*, 195 F.3d at 834).  Maker's Mark argues it would be prejudiced by allowing Defendants to amend their Answer to include a fair use defense because Defendants waived it. Moreover, fact discovery concluded on July 14, 2021, so Maker's Mark cannot conduct fact discovery on the issue.  (Pl.'s Resp. Defs.' Mot. Leave File Am. Answer 11-12, DN 104; *see* Agreed Am. Scheduling Order 1, DN 83).

Granting Defendants leave to amend to include a fair use defense would unfairly prejudice Maker's Mark because it could not investigate and prepare to rebut an unasserted defense.[5]

### a.    Defendants Waived Fair Use Defense

"When [a] defendant is unable to offer any reasonable explanation for its tardiness in presenting a defense, finding waiver is not an abuse of discretion." *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 751 (6th Cir. 2015); *see id.* ("A district court does not abuse its discretion when, even without a showing of prejudice, it finds that a defendant who has failed to show 'that it even made a good faith effort to comply with the standard procedure for raising affirmative defenses' has waived its defense." (other citation omitted) (quoting *U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 491 (6th Cir. 2003))); *see also Desai v. Charter Commc'ns, LLC*, 381 F. Supp. 3d 774, 791 (W.D. Ky. 2019).

Defendants offer no reasonable explanation for their failure to plead a fair use defense in their Answer.  They first argue this defense was "adequately pled, both in its Answer and in its Amended Counterclaim."  (Defs.' Reply Mot. Leave File Am. Answer 4 n.1).  This explanation is without merit; Defendants' Answer lists *twenty-nine* defenses, none of which include fair use.  (*See* Answer & Am. Countercl. 37-39 ¶¶ 1-29).  The only assertions in the Answer and Counterclaim that could possibly be construed as pleading a fair use defense are vague statements that Maker's Mark was advertised as an ingredient on the Bourbon Cigar.  (Answer & Am. Countercl. 26 ¶ 53, 64 ¶ 57).  The contention that Defendants were under the impression these inferential statements

---

[5] Defendants maintain that Maker's Mark does not identify the specific discovery that it would need.  (Defs.' Reply Mot. Leave File Am. Answer 8 n.2).  Maker's Mark is not under an obligation to disclose what discovery it was unable to pursue, thus this argument is unpersuasive. *Desai*, 381 F. Supp. 3d at 793 ("Plaintiffs were not required to identify '*actual* discovery that [they] were unable to pursue,' . . . ." (alteration in original) (citation omitted)).

were sufficient to plead the fair use defense while twenty-nine other defenses were explicitly listed is not reasonable.

Next, Defendants argue that even if fair use was not adequately pled, they did not seek to amend in a timely manner because their understanding of applicable law would not construe it as waived.  (*See* Defs.'s Resp. Pl.'s Mot. Strike Improper Ops. 14 n.3, DN 95 ("Though based on established Sixth Circuit law Defendants do not believe an amendment of their answer is required, Defendants intend to seek leave to file an amended answer which removes any room for doubt that the defense has been asserted in this case."); Defs.' Mot. Leave File Am. Answer 3 ("[O]ut of an abundance of caution, Defendants have amended their Answer to specifically add their fair use defense under their affirmative defenses."); Defs.' Reply Mot. Leave File Am. Answer 6 ("[T]here was no reason for Defendants to believe it was necessary to formally seek to amend their Answer until Plaintiff argued for the first time . . . that the defense had been waived in the case.")). Acceptance of the fact that the defense was not pled combined with Defendants' failure to seek an amendment explicitly asserting the defense until eighteen months after the deadline, only after it was brought to their attention by Maker's Mark, is not a reasonable explanation for the delay. Plainly, Defendants' failed to "ma[ke] a good faith effort to comply with the standard procedure for raising affirmative defenses . . . ." *Henricks*, 782 F.3d at 751 (internal quotation marks omitted) (quoting *U.S. Fire Ins. Co.*, 87 F. App'x at 491).

The conclusion that Defendants have waived their fair use defense is consistent *Henricks*, where the defendants filed a motion for summary judgment arguing two affirmative defenses not raised in their answer. *Id.* at 747.  The Sixth Circuit first noted that failure to plead a defense does not automatically result in waiver but can lead to that outcome. *Id.* at 750; *contra Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) ("Generally, a failure to plead an affirmative defense

. . . results in that waiver of the defense and its exclusion from the case." (citations omitted)); *cf. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) (stating that fair use is an affirmative defense). The Court went on to affirm the district court's finding that the defendants waived a defense absent explanation for not pleading it and sought amendment after a significant amount of time had passed. *Henricks*, 782 F.3d at 750-51. The Sixth Circuit reasoned that "[a] failure, without good cause, to invoke what might otherwise appear to be an available affirmative defense might well lead the plaintiff to believe that the defendant does not plan on invoking it and to plan accordingly." *Id.* at 751 (citing *U.S. Fire Ins. Co.*, 87 F. App'x at 491). Thus, allowing the defense would prejudice the plaintiff because he could not anticipate having to rebut the defense, as the defense had merely been mentioned in a motion to dismiss and then seemingly abandoned. *Id.*

The facts here align with those in *Henricks*. Defendants similarly offer no reasonable explanation for not having pled the fair use defense timely, and waited eighteen months after the deadline for amendment. (Pl.'s Resp. Defs.' Mot. Leave File Am. Answer 1). Similar to the plaintiff in *Henricks*, Maker's Mark "could fairly conclude from [Defendants'] conduct that [they] did not intend to assert the . . . defense." *Henricks*, 782 F.3d at 751. Importantly, Maker's Mark could conclude that the Defendants were not going to assert a fair use defense because it was not listed among the twenty-nine other defenses in their Answer. (*See* Answer & Am. Countercl. 37-39, ¶¶ 1-29). Additionally, Maker's Mark sought confirmation from Defendants about the defenses they intended to assert at trial and did so by sending Defendants a list that did not include the fair use defense; Defendants' response to Maker's Mark did not mention the omission of fair use from the list, further bolstering Maker's Mark's understanding that Defendants had no intention of asserting it. (Pl.'s Resp. Defs.' Mot. Leave File Am. Answer 9; Pl.'s Reply Mot. Strike

Improper Ops. Ex. 7, at 3, DN 100-4; Pl.'s Reply Mot. Strike Improper Ops. Ex. 8, at 1, DN 100-5).   In fact, the defense was not even mentioned by the Defendants until three years into the case and only then was it proffered in response to Maker's Mark's motion to strike improper opinions. These facts reasonably communicated to Maker's Mark that Defendants did not intend to assert a fair use defense.   Consequentially, Maker's Mark could not "plan accordingly," much like the plaintiff in *Henricks*.  *Henricks*, 782 F.3d at 751.

Defendants argue that Maker's Mark was on notice of their intention to assert a fair use defense, so it was not waived, by citing a handful of isolated remarks.   First, they note the fair use defense was discussed in inter-party correspondence prior to the commencement of this action, putting Maker's Mark on notice that Defendants would assert it.   (Defs.' Resp. Pl.'s Mot. Strike Improper Ops. 17-18).   The discussions involved a disagreement regarding the applicability of the defense.   (Countercl. Ex. 30, at 1, DN 8-30; Defs.' Resp. Pl.'s Mot. Strike Improper Ops. Ex. 1, at 5-6, DN 95-2).   Mere discussion of the defense prior to this action being filed does not suggest Maker's Mark had notice Defendants intended to assert fair use in this litigation.   *See Desai*, 381 F. Supp. 3d at 791 (finding that correspondence exchanged after a complaint was filed, asserting the defendant would be able to claim a defense, was not sufficient notice to rebut the conclusion that the defense had been waived).   Rather, these e-mails bolster the argument that Maker's Mark could conclude that the defense would not be asserted, as the Defendants' subsequent failure to include the defense in their Answer communicated an abandonment of the defense.   *See id.* at 792 ("They could reasonably have assumed, when the amendment deadline came and went . . . that [defendant] did not actually intend to assert the defense." (citation omitted)); *cf. U.S. Fire Ins. Co.*, 87 F. App'x at 491 ("[T]he fact that [the defendant] presented the defense in state court but did not

do so in federal court could have led [the plaintiff] reasonably to believe that [the defendant] had made a conscious decision *not* to raise the defense in federal court.").

Defendants further insist that Maker's Mark had notice of their intention to raise the defense because of sporadic comments throughout discovery. (Defs.' Resp. Pl.'s Mot. Strike Improper Ops. 18-20). These remarks are insufficient to provide notice of Defendants' intentions. *See Desai*, 381 F. Supp. 3d at 792-93 ("The fact that some of Plaintiffs' discovery requests or deposition questions might have yielded information that could have been used to rebut the [defense] does not mean that Plaintiffs 'were preparing to rebut a[n unasserted] defense' . . . the questions identified by [the defendant] were relevant to other topics regardless of whether [the defense] was at issue.").

Defendants cite a supplemental answer to an interrogatory stating that "[t]he wording on the secondary cigar band is not designed to attract public attention and is not being used to indicate the source, sponsorship or approval of the product itself. . . . [but rather] inform consumers that the cigar has been seasoned or flavored with Maker's Mark bourbon." (Pl.'s Reply Mot. Strike Improper Ops. Ex. 4, at 2-3, DN 100-1 [hereinafter Interrog. Suppl.]). This was in response to Maker's Mark's interrogatory that sought information regarding "Defendants' belief that . . . [they] could permissibly include Maker's Mark's name on its bourbon cigars . . . ." (Interrog. Suppl. 2). This interrogatory answer cannot be construed to give notice to Maker's Mark that Defendants intended to assert a fair use defense. The response described why Defendants thought they could use the Maker's Mark name on the Bourbon Cigar, which does not equate to the conclusion that Defendants were maintaining a fair use defense in this litigation.

Other comments include deposition testimony from Spalding Group and its employees, all of whom asserted they thought the inclusion of the Maker's Mark name on the Bourbon Cigar was

proper based on the fair use doctrine.  (Defs.' Resp. Pl.'s Mot. Strike Improper Ops. Ex. 6, at 162:17-165:18, 168:6-169:8, DN 95-7 [hereinafter Spalding Dep.]; Defs.' Resp. Pl.'s Mot. Strike Improper Ops. Ex. 7, at 67:2-12, DN 95-8 [hereinafter Jackson Dep.]; Defs.' Resp. Pl.'s Mot. Strike Improper Ops. Ex. 8, at 61:16-19, DN 95-9 [hereinafter Bianconcini Dep.]; Defs.' Resp. Pl.'s Mot. Strike Improper Ops. Ex. 9, at 98:7-18, DN 95-10 [hereinafter Lindsey Dep.]).  All references to the doctrine were in response to inquiries about the rationale of the Defendants *in 2016* when the Bourbon Cigar was *developed*, not Defendants' current theory of the case. (Spalding Dep. 162:14-16; Jackson Dep. 66:7-8, 66:17-19; Bianconcini Dep. 61:13-15; Lindsey Dep. 97:24-98:3, 98:6).  These remarks cannot be construed to give notice to Maker's Mark that Defendants' intended to assert fair use when the defense was barely referenced in discovery.  The reasonable conclusion from the facts presented is that Defendants abandoned the fair use defense over time because of its questionable applicability to the facts.  (*See* Spalding Dep. 168:14-17 ("[I]n concluding from my own analysis [of the fair use doctrine] that was a legitimate use of the name 'Maker's Mark' as a seasoning ingredient. You may disagree, but that was the basis for that.")).

Cumulatively considering these instances of purported notice, does not suggest that Maker's Mark should have been aware of Defendants' intention to assert a fair use defense—particularly considering it was not among the twenty-nine pled defenses, Defendants did not identify the defense when Maker's Mark sought confirmation of the defenses that Defendants intended to assert, and the defense was not mentioned as applicable here until three years into the litigation. *See Desai*, 381 F. Supp. 3d at 792 ("Although the Sixth Circuit has occasionally excused failure to plead an affirmative defense on the ground that the plaintiff had sufficient notice, in each of those cases the defendant had asserted the defense in a court filing." (citations omitted)).

Defendants have pointed only to isolated instances throughout this protracted dispute which did not reasonably signal the assertion of a fair use defense. Therefore, Defendants have waived that defense.

### b.      Prejudicial Effect of Waiver

Defendants argue that Maker's Mark had "every opportunity to conduct the fact discovery it believed was necessary to respond to Defendants' fair uses defense[,]" so Maker's Mark could not be prejudiced. (Defs.' Reply Mot. Leave File Am. Answer 7). As previously noted, however, the fact discovery deadline in the 2020 Scheduling Order has lapsed. (2020 Scheduling Order 1). Maker's Mark did not conduct discovery to refute the defense given that Defendants' actions indicated they waived a fair use defense, and absent restarting fact discovery and further delaying pending deadlines in this years-long action, Maker's Mark cannot conduct discovery to address this unasserted, waived defense. "The fact that evidence relevant to existing claims and defenses may also have been relevant to [the defense] does not mean that Plaintiff[] had all the discovery they wanted or needed to rebut [the defense]." *Desai*, 381 F. Supp. 3d at 794. The extent to which fact discovery addressed the fair use defense is minimal, as any related information was only in response to inquiries regarding the rationale behind the creation of the Bourbon Cigar in 2016. Maker's Mark did not probe such information throughout discovery, as it was unaware it would need to rebut a fair use defense.

Defendants also argue that expert discovery has not concluded, nor has the deadline for dispositive motions passed. Thus, Maker's Mark still has time to conduct discovery regarding the defense. (Defs.' Reply Mot. Leave File Am. Answer 7). Courts, however, have held that where an amendment "would likely [require] extension of the discovery deadline for additional, costly discovery so that Plaintiffs could attempt to rebut the . . . defense, the prejudice consideration also

disfavors amendment." *Desai*, 381 F. Supp. 3d at 794 (citation omitted).  In this instance, fact discovery has long since concluded and would need to be reopened for Maker's Mark to be able to rebut the fair use defense which weighs against amendment.  (*See* Mem. Op. & Order 8, DN 112 (extending deadlines only for expert discovery and dispositive and *Daubert* motions)).

Defendants cite *United Parcel Servs., Inc. v. Air Transp. Int'l, LLC*, No. 3:12-CV-561-DJH, 2015 U.S. Dist. LEXIS 196362 (W.D. Ky. July 22, 2015) and *McLean v. Alere Inc.*, No. 3:12-CV-566-DJH, 2015 U.S. Dist. LEXIS 48092 (W.D. Ky. Apr. 13, 2015) to support their assertion that Maker's Mark will not be prejudiced despite the conclusion of fact discovery.  This matter is distinguishable from *United Parcel Services* because the court there made a determination of prejudice under the "liberal standard" of Rule 15, rather than under Rule 16 as is under consideration here.  *United Parcel Servs., Inc.*, 2015 U.S. Dist. LEXIS 196362, at *6.  *McLean* is also distinguishable because fact discovery was still ongoing in that case and would not have required the court to reopen fact discovery.  *McLean*, 2015 U.S. LEXIS 48092, at *7-8.

Defendants have not demonstrated good cause for failing to amend their Answer before the 2020 deadline, as they were not diligent in seeking leave to amend and granting such leave at this juncture would unfairly prejudice Maker's Mark.  Thus, Defendants' motion seeking leave to amend their Answer to include a fair use defense is denied.[6]

---

[6] Defendants also seek to amend their Answer to reflect Maker's Mark's name change.  (Defs.' Mot. Leave File Am. Answer 2-3).  The bases for these amendments are Defendants' concerns with the ownership of the trademarks described in the Answer.  (Defs.' Mot. Leave File Am. Answer 2-3).  As noted above, the USPTO now reflects that Maker's Mark Distillery, PBC owns the trademarks.  *See supra* Part III(A).  Therefore, Defendants' motion for leave to amend insofar as it relates to Maker's Mark's corporate name is denied as moot.

C.      **Plaintiff's Motion to Strike Improper Opinions from the Rebuttal Reports of Defendants' Experts**

Maker's Mark and Defendants have exchanged reports by their proposed expert witnesses. The scheduling order regarding expert discovery ("2021 Scheduling Order") included a deadline for affirmative expert reports by the party with the burden to prove such subject matter on December 22, 2021, and for rebuttal reports on February 21, 2022.  (Agreed Am. Scheduling Order 1, DN 87 [hereinafter 2021 Scheduling Order]).  On December 22, 2021, Maker's Mark disclosed its survey expert Ran Kivetz ("Kivetz") and his report ("Kivetz Report") and its damages expert Michael Einhorn ("Einhorn") and his report ("Einhorn Report").  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 4-5, DN 88-1).  On February 21, 2022, Defendants disclosed their rebuttal survey expert Hal Poret ("Poret") and his report ("Poret Report") and their rebuttal damages expert Denise Dauphin ("Dauphin") and her report ("Dauphin Report").  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 5-6).  Maker's Mark now seeks to strike excerpts from the Poret Report and the Dauphin Report.

It is within the trial court's discretion to admit or exclude rebuttal evidence.  *Taylor v. Brandon*, No. 3:14-CV-0588-DJH, 2018 U.S. Dist. LEXIS 237219, at *3 (W.D. Ky. Jan. 29, 2018) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 345 (6th Cir. 2002)).  Rebuttal evidence may be excluded if it is not "real" rebuttal.  *Id.* at *4.  "Real" rebuttal evidence has the function of rebutting or contradicting evidence offered by the opposing party.  *Id.* at *3-4; *United States v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990).  If a report is not a "real" rebuttal, "[t]he Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion . . . . [a]nd if the deadline for such disclosures has passed, then the report is untimely."  *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 U.S. Dist. LEXIS 139414, at *13-14 (E.D.

Ky. Oct. 6, 2016). If a disclosure is untimely, it will be excluded unless the untimeliness was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *see also Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) ("[T]he heart of Rule 37(c)(1) [is] separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." (internal quotation marks omitted) (quoting *Bentley*, 2016 U.S. Dist. LEXIS 139414, at *10)). "The potentially sanctioned party bears the burden of proving that their noncompliance with the disclosure rules was substantially justified or harmless." *Morris v. Tyson Chicken, Inc.*, No. 4:15-CV-00077-JHM, 2019 U.S. Dist. LEXIS 208057, at *5 (W.D. Ky. Dec. 3, 2019) (citing *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).

### 1.    *Poret Fame Opinions*

Maker's Mark seeks to strike excerpts from the Poret Report on the grounds that they are not proper rebuttal and thus are untimely. (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 1). It also seeks to prevent Poret from testifying about the information in the portions that it seeks to strike. (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 11). Maker's Mark claims the Poret Report contains a fame survey that does not amount to "real" rebuttal because the Kivetz Report did not bring fame into issue. (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 8-9). Maker's Mark contends that this portion of the report is not rebuttal, but rather an affirmative report containing new information, so it was untimely as it was disclosed two months after the deadline for affirmative expert reports. (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 8). Defendants assert that the fame survey is not untimely because Maker's Mark has the burden to demonstrate fame, so Defendants' disclosure of Poret's fame opinions was not due on December 22, 2021. (Defs.' Resp. Pl.'s Mot. Strike Improper Ops. 9-11).

The fame survey in the Poret Report is not untimely and will not be stricken.  The 2021 Scheduling Order states:

> No later than December 22, 2021, *the Party who has the initial burden of proof* on the subject matter shall disclose the identity of any person who may be used at trial to provide expert testimony under Fed. R. Civ. P. 26(a)(2)(A) and shall submit written reports from any expert witnesses who are retained or specifically employed as required by Fed. R. Civ. P. 26(a)(2)(B).

(2021 Scheduling Order 1) (emphasis added) (emphasis omitted).  The plain language of the 2021 Scheduling Order dictates that the reports required to be disclosed on December 22 were only those regarding subject matters for which the disclosing party has the burden to prove.  Maker's Mark does not contest that it has the burden to prove fame of its trademarks.  (Pl.'s Reply Mot. Strike Improper Ops. 3, DN 100); *see Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006).  As Defendants do not have the initial burden of proof for fame, this disclosure was not subject to the December deadline in the 2021 Scheduling Order.  Therefore, the fame survey in the Poret Report is not untimely.

Maker's Mark challenges this interpretation of the 2021 Scheduling Order by asserting that all affirmative expert opinions were due by December 22, 2021 and "the party disclosing affirmative expert opinions is typically the party with the initial burden of proof . . . ."  (Pl.'s Reply Mot. Strike Improper Ops. 3).  Though Maker's Mark may be correct that disclosure may *typically* occur in that manner, the language of the scheduling order in *this* case is unambiguous, and the typical occurrences of other cases are not persuasive to contradict the plain language here. Maker's Mark continues to argue that the fame portion of the Poret Report is not a rebuttal because it does not contradict anything in the Kivetz Report.  (Pl.'s Reply Mot. Strike Improper Ops. 3).  The fame survey of the Poret Report could be construed as an affirmative report, but such distinction is immaterial because the only affirmative reports required to be disclosed in December 2021 were

those where the disclosing party had the burden of proof.  As noted, Defendants do not have the burden to prove fame.  Thus, while the Poret Report is an affirmative report, it was not the type required to be disclosed in December 2021 as directed by the 2021 Scheduling Order.  Maker's Mark's motion to strike the fame survey from the Poret Report is therefore denied.

### 2. *Dauphin Opinion on Defendants' Damages*

Maker's Mark also seeks to strike excerpts from the Dauphin Report as they are not proper rebuttal and thus are untimely.  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 2).  Like above, it also seeks to prevent Dauphin from testifying about the information.  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 11).  Maker's Mark claims that a reference to the amount Defendants spent to rebrand after termination of the 2010 Agreement should be stricken because the Einhorn Report exclusively dealt with Maker's Mark's damages, not those arising from Defendants' counterclaims.  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 10).  Like its previous argument, Maker's Mark contends that this portion of the report was not rebuttal, but an affirmative report containing new information, so it was untimely disclosed.  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 8).

It is well-settled that a party has the burden of proving its own damages.  *Fred Lavery Co. v. Nissan N. Am., Inc.*, 99 F. App'x 585, 592 (6th Cir. 2004).  As such, the burden is on the Defendants to prove the damages for their counterclaims.  Therefore, pursuant to the 2021 Scheduling Order, Defendants were required to disclose information regarding such damages by December 22, 2021, but Dauphin's report regarding Defendants' damages was not disclosed until two months later, on February 21, 2022.  Therefore, the disclosure was untimely.

Defendants argue that the reference to the amount spent is proper rebuttal and not untimely because "[t]hat reference was only made as part of a narrative description of the factual background

of the case," and Dauphin cited to an exhibit to provide support for that reference. (Defs.' Resp. Pl.'s Mot. Strike Improper Ops. 21). They maintain that Maker's Mark is still free to depose Dauphin and can address any improper testimony through a motion in limine. (Defs.' Resp. Pl.'s Mot. Strike Improper Ops. 22). Defendants' description of the limited context of the information is accurate, and while Maker's Mark's efforts to strike such minimal references at this stage tends to be overscrupulous, it cannot be said that the references to Defendants' damages were included to rebut or to contradict the assertions in the Einhorn Report regarding the damages suffered by Maker's Mark, because Einhorn does not offer an opinion regarding Defendants' damages. Therefore, references to Defendants' damages cannot be considered a proper rebuttal.

Although untimely, the information in the Dauphin Report regarding Defendants' damages will not be stricken because Defendants' failure to disclose such information in compliance with the 2021 Scheduling Order was harmless. Fed. R. Civ. P. 37(c)(1); *see also Bisig*, 940 F.3d at 219. Dauphin did not offer an opinion as to Defendants' damages in her report, but rather added the rebranding costs as part of the factual narrative. (*See* Expert Report Denise T. Dauphin 8, DN 90 [hereinafter Dauphin Report]). Those costs were not a figure that she calculated based on her methods; instead, they were a recitation of information provided to her by Defendants. (*see* Dauphin Report Ex. D-6 (citing answers to Maker's Mark's first set of interrogatories as the basis for her calculations)). Furthermore, the exhibit that Dauphin cites to support the total of Defendants' damages does not offer an opinion either—it simply demonstrates the calculations that led to the total figure of $222,992. (Dauphin Report Ex. D-6). As such, the Dauphin Report does not offer any opinion about the reasonableness or accuracy of Defendants' alleged damages. The inclusion of Defendants' damages does not serve as an underhanded effort include improper information because it can also be presented by Defendants' employees, from whom Dauphin

received the information.  Moreover, this was information already known to Maker's Mark, and thus is not a surprise.  (Pl.'s Mot. Strike Improper Ops. Ex. 3, at 10, DN 88-5).  Therefore the excerpts of the Dauphin Report listing Defendants' damages will not be stricken.

### 3. *Poret Fair Use Opinions*

Maker's Mark next seeks to strike a singular footnote from the Poret Report that refers to the fair use defense.  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 10).  Maker's Mark contends "[i]t would be unfair to allow Defendants to use their expert witness to attempt to revive a waived defense."  (Pl.'s Mem. Supp. Mot. Strike Improper Ops. 11).  The footnote that Maker's Mark seeks to strike reads:

> There are also two other potential problems with the Kivetz Control Group, which I was not able to address in my surveys.  One involves the fact that Defendant may have a fair use right to use the term "Maker's Mark" in a descriptive manner to communicate the fact that it is seasoned with Maker's Mark.  By entirely removing any reference to "Maker's Mark" in the Control Group, the Kivetz Survey essentially assumes that Defendant has no right to use this term in any manner, and that the only "cure" for the alleged infringement is elimination of the term entirely. If Defendant does have the right to make a descriptive fair use of "Maker's Mark," a better control would have involved not eliminating "Maker's Mark" entirely but somehow clarifying that there is no affiliation or approval, such as perhaps by having a disclaimer or disclosure.

(Pl.'s Mot. Strike Improper Ops. Ex. 1, at 75 n.39, DN 88-3).

Defendants have waived the fair use defense and allowing Poret to opine on the topic would be improper.  Moreover, because Defendants waived their fair use defense, they are barred from eliciting testimony from Poret (or any other witnesses) about the defense, its elements, or its applicability to this case, as it is irrelevant.  Maker's Mark's motion to strike the portion of footnote 39 referencing the fair use defense, along with any other reference to the defense, is granted.

### D. Plaintiff's Motion for Leave to Serve a Limited Reply Report

Maker's Mark moves for leave to serve a sur-rebuttal report by Kivetz in response to the Poret Report ("Proposed Sur-rebuttal Report"). (Pl.'s Mot. Leave Serve Limited Reply Expert Report 1. *See generally* Pl.'s Mot. Leave Serve Limited Reply Expert Report Ex. 1, DN 93-3 [hereinafter Proposed Sur-rebuttal Report]). Scheduling orders detailing the discovery of expert testimony are governed by Fed. R. Civ. P. 26. Fed. R. Civ. P. 26(a)(2)(D) (requiring that disclosures regarding experts and expert reports be made "at the times and in the sequence that the court orders"). The 2021 Scheduling Order, setting affirmative and rebuttal report deadlines did not account for sur-rebuttal reports such as the one proposed. (2021 Scheduling Order 1).

The Poret Report, in relevant part, discusses the likelihood of confusion survey conducted by Kivetz. (Pl.'s Mem. Supp. Mot. Leave Serve Limited Reply Expert Report 4, DN 93-1). Poret critiqued the survey conducted by Kivetz and conducted two surveys taking into account his perceived flaws of Kivetz's survey. (Pl.'s Mem. Supp. Mot. Leave Serve Limited Reply Expert Report 4). Maker's Mark states that the Poret Report includes "new survey methodologies, results, and conclusions that were not available to Maker's Mark at the time it served Dr. Kivetz's [report]," and thus, for the sake of fairness, its expert should have the opportunity to critique the surveys conducted by Poret in the same way Defendants' expert had the ability to critique those conducted by Kivetz. (Pl.'s Mem. Supp. Mot. Leave Serve Limited Reply Expert Report 5). The proposed report would be limited to "addressing only the likelihood of confusion surveys that were raised for the first time in [the Poret Report]." (Pl.'s Mem. Supp. Mot. Leave Serve Limited Reply Expert Report 1). Maker's Mark further argues that allowing it to serve the Proposed Sur-rebuttal Report would not prejudice the Defendants because it does not assert any new expert opinions,

neither Poret nor Kivetz have been deposed, and it would not delay the case.  (Pl.'s Mem. Supp. Mot. Leave Serve Limited Reply Expert Report 5-6).

Fed. R. Civ. P. 26 governs the procedure for expert reports but does not provide guidance for granting leave to serve reports in response to another party's rebuttal.  *See* Fed. R. Civ. P. 26(a)(2).  Accordingly, "the decision of whether to allow a party to present evidence in . . . sur-rebuttal is generally committed to the trial court's discretion."  *La. Health Care Self Ins. Fund v. United States*, No. 12-766-JJB-RLB, 2014 U.S. Dist. LEXIS 101686, at \*5-6 (M.D. La. July 25, 2014).  The information in a sur-rebuttal must be new; it cannot be information that existed prior to the report which it rebuts.  *See FTC v. Innovative Designs, Inc.*, No. 2:16-cv-01669, 2018 U.S. Dist. LEXIS 125809, at \*12 (W.D. Pa. July 27, 2018).  If the nonmoving party will not be prejudiced by doing so, a court may grant leave to serve a sur-rebuttal.  *See, e.g.*, *id.* at \*6-7 (finding no prejudice because the nonmovant had the opportunity to depose the sur-rebuttal expert).

In addition to critiquing the surveys set forth in the Kivetz Report, the Poret Report details two new surveys.  (Pl.'s Mot. Leave Serve Limited Reply Expert Report Ex. 2, at 58-70, 74-82, DN 93-4); *cf. Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-00598-CRS, 2017 U.S. Dist. LEXIS 155177, at \*5 (W.D. Ky. Sept. 22, 2017) (noting that "[r]ebuttal experts can use 'new methodologies' to refute the opinions of other experts" (citation omitted)).  Permitting Maker's Mark leave to serve a reply to these two new surveys is permissible because they were not available to Kivetz at the time of his affirmative report.  Defendants argue that the surveys are not new, but rather Poret simply "replicated the Kivetz Report's likelihood of confusion studies to correct for survey methodology errors . . . ."  (Defs.' Resp. Pl.'s Mot. Leave Serve Limited Reply Expert Report 2, DN 98).  Although Poret's surveys were derivative of Kivetz's survey, they were still different surveys answered by different respondents. Poret had the opportunity to critique the

survey methods of Kivetz, but Kivetz had no such opportunity when it comes to the "corrected" methods employed by Poret. The Proposed Sur-rebuttal Report is limited to critiquing the methods utilized by Poret and offers no new conclusions. (*See generally* Proposed Sur-rebuttal Report). Further, granting Maker's Mark leave to file the Proposed Sur-rebuttal Report will not prejudice Defendants because expert discovery is still ongoing, and neither Kivetz nor Poret have been deposed. (Pl.'s Mem. Supp. Mot. Leave Serve Limited Reply Expert Report 5-6; *see* Mem. Op. & Order 8, DN 112). Therefore, Maker's Mark's motion seeking leave to serve the Proposed Sur-rebuttal Report is granted.[7]

### E.    Motions for Leave to Seal

Maker's Mark and Defendants have both filed motions for leave to seal documents used as exhibits in their filings. (Pl.'s Mot. Leave Seal; Defs.' Mot. Leave Seal). In ruling on a motion to seal, courts "must balance the litigants' privacy interests against the public's right of access . . . ." *Rudd Equip. Co., v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016). "The public has an interest in ascertaining what evidence and records the District Court . . . ha[s] relied upon in reaching our decisions." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1181 (6th Cir. 1983). There is a "strong common law presumption in favor of public access to court proceedings and records." *Id.* at 1179; *see* LR 5.6(a) ("Parties and counsel

---

[7] Defendants request that if the Court does grant leave to serve a sur-rebuttal, that they also be permitted to serve a reply report to Maker's Mark's sur-rebuttal. (Defs.' Resp. Pl.'s Mot. Leave Serve Limited Reply Report 4). "Not surprisingly, and quite understandably, each side wishes to have the last word on the issues addressed by the parties' experts." *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2010 U.S. Dist. LEXIS 31376, at *11 (E.D. Mich. Mar. 31, 2010). The exchange of expert reports, however, cannot continue in perpetuity. Allowing Defendants to exacerbate this already exhausting discovery process by permitting continuous reports is inappropriate. It is appropriate to allow Kivetz to set forth a survey to which Poret may respond and to allow Poret to set forth surveys to which Kivetz may respond. Such result is fair, prejudices no party, and is accomplished by allowing Maker's Mark to submit its sur-rebuttal and nothing further. Defendants' request is denied.

should presume that all documents filed in district court should be available for the public to access and that restricting public access can occur only in limited circumstances . . . .").

The strong presumption of public access can be overcome when certain interests are at issue, such as "certain privacy rights of participants or third parties, trade secrets and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. "The party seeking to seal records has [a] heavy burden," in overcoming the presumption and must show "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637-38 (6th Cir. 2019) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).

A motion to seal information does not overcome the presumption of public access just because it is unopposed. *Thornton v. Himmler*, No. 3:20-cv-P60-RGJ, 2021 U.S. Dist. LEXIS 108937, at *2 (W.D. Ky. June 10, 2021). "[T]he presumption that the public has the right to access judicial records does not vanish simply because all parties in the case agree that certain record should be sealed." *Kentucky v. Marathon Petrol. Co. LP*, No. 3:15-CV-354-DJH, 2018 U.S. Dist. LEXIS 106176, at *15 (W.D. Ky. June 26, 2018) (citing *Rudd Equip. Co.*, 834 F.3d at 595). Neither Maker's Mark nor Defendants have met their burden to merit sealing.

### 1.   *Dauphin Report*

Maker's Mark and Defendants both filed unopposed motions to seal the Dauphin Report (DN 88-4, DN 95-5) on the grounds that it "generally references and analyzes Defendants' financial information from 2016 through 2020 . . . ." (Pl.'s Mot. Leave Seal 1; Defs.' Mot. Leave Seal 2). The Dauphin Report has been marked as "confidential" pursuant to the protective order

agreed on and enforced by the parties (the "protective order").[8]  (Defs.' Mot. Leave Seal 3.  *See generally* Agreed Protective Order, DN 46-1).  Neither Maker's Mark nor Defendants have offered any argument as to how the interest in keeping Defendants' financial information confidential outweighs the public's interest in access to such records.  *See Kondash*, 767 F. App'x at 637.  Neither party offers any indication as to what harm will be suffered if this information is not sealed, but rather, they merely assert that it contains financial information and is considered confidential under their agreed protective order.  This is insufficient to overcome the public's interest in access to judicial records.  *See Marathon Petrol. Co. LP*, 2018 U.S. Dist. LEXIS 106176, at *15.  Further, both parties appear to request that the entire report be sealed and offer nothing to justify sealing the forty-page report, falling short of their burden to demonstrate that their "request is narrowly tailored."  *Kondash*, 767 F. App'x at 637.  Therefore, because neither party met their burden, their motions are denied.

### 2.  *Kivetz Report and Samuels E-mail*

Defendants filed an unopposed motion to seal the Kivetz Report (DN 95-3) and an e-mail to Jackson from Samuels (DN 95-6) ("Samuels E-mail") solely on the ground that Maker's Mark designated the documents as "confidential" pursuant to the agreed protective order the Court declined to enter.  (Defs.' Mot. Leave Seal 2; *see* Op. & Order 7).

Defendants have not offered any argument as to why these documents should be sealed.  *See Kondash*, 767 F. App'x at 637.  They simply state that the Kivetz Report "analyzes and discusses, among other things, the conduct and results of his likelihood of confusion survey . . . [and] was marked as 'Confidential' by Plaintiff."  (Defs.' Mot. Leave Seal 2).  Regarding the

---

[8] It should be noted that the Court declined to even enter the parties' agreed protective order because it did not comply with the "good cause" requirement of Fed. R. Civ. P. 26.  (Op. & Order 7, DN 49).  Reliance on this protective order by both parties is misplaced.

Samuels e-mail, Defendants simply state it "was produced in this case by Plaintiff . . . and was marked as 'Confidential' by Plaintiff." (Defs.' Mot. Leave Seal 2). Defendants offer no indication to what harm will be suffered if these exhibits are not sealed, but merely assert that they are considered confidential under the protective order. Again, this is insufficient to overcome the public's interest in access to judicial records. *See* Op. & Order 7; *see also* LR 5.6(c) ("Reference to a stipulation that allows a party to designate certain documents as confidential is not sufficient grounds to establish that a document, or portions thereof warrants filing under seal."); *Marathon Petrol. Co. LP*, 2018 U.S. Dist. LEXIS 106176, at * 15. Furthermore, Defendants appear to move for the entire Kivetz Report to be sealed and offer nothing to justify sealing the eighty-one-page report, falling short of their burden to demonstrate that their "request is narrowly tailored." *Kondash*, 767 F. App'x at 637. Therefore, because Defendants failed to meet their burden, their motion is denied.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Plaintiff's Motion to Strike Improper Opinions from the Rebuttal Reports of Defendants' Experts (DN 88) is **GRANTED IN PART** and **DENIED IN PART**. All discussions and opinions regarding fair use shall be **STRICKEN**. This includes the discussion of fair use in footnote 39.

2.      Plaintiff's Motion for Leave to Seal (DN 89) is **DENIED**.

3.      Plaintiff's Motion to Amend the Case Caption (DN 92) is **GRANTED**. The case caption shall be amended to replace "Maker's Mark Distillery, Inc." with "Maker's Mark Distillery, PBC" as the Plaintiff and Counter Defendant.

4.      Plaintiff's Motion for Leave to Serve a Limited Reply Expert Report (DN 93) is

**GRANTED**.

5.      Defendants' Motion for Leave to Seal (DN 94) is **DENIED**.

6.      Defendants' Motion for Leave to File an Amended Answer (DN 99) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

December 19, 2022

cc:    counsel of record