UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00014-GNS-LLK

MAKER'S MARK DISTILLERY, PBC                                    PLAINTIFF

v.

SPALDING GROUP, INC.
d/b/a ENGLISH EMPRISE;
TED'S CIGARS; and
THEODORE JACKSON, JR.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Reconsideration (DN 129), Plaintiff's Motion for Partial Summary Judgment (DN 140), Defendants' Motion for Partial Summary Judgment (DN 143), Defendants' Motions for Leave to File Excess Pages (DN 144, 150),[1] Plaintiff's Motion for Leave to File Under Seal (DN 141), and Defendants' Motion for Leave to File Under Seal (DN 145).  The motions are ripe for adjudication.

## I.        STATEMENT OF FACTS AND CLAIMS

On May 1, 1997, Plaintiff Maker's Mark Distillery, PBC ("Maker's Mark") entered into a Licensing Agreement (the "1997 Agreement") with Defendant Spalding Group d/b/a English Emprise and Ted's Cigars ("Spalding Group") and Defendant Theodore Jackson Jr. ("Jackson"), Spalding Group's owner and director, (collectively "Defendants").  (Compl. ¶ 41, DN 1).  The 1997 Agreement granted Spalding Group an exclusive license to use Maker's Mark's trademarks to create and sell cigars seasoned with Maker's Mark bourbon (the "Licensed Cigars").  (Compl.

---

[1] Defendants request five additional pages for their motion for partial summary judgment and response to Maker's Mark's motion for partial summary judgment. (Defs.' Mot. Leave File Excess Pages 1, DN 144; Defs.' Mot. Leave File Excess Pages 1, DN 150).  Because the requests are reasonable and Maker's Mark does not oppose them, the motions are granted.

¶ 41).  The licensing agreement was renewed as amended in 2003 and renewed again as amended in 2010 (the "2010 Agreement").  (Compl. ¶¶ 42-43).  On December 4, 2013, Maker's Mark notified Defendants that it was terminating the license under the terms of the 2010 Agreement, effective December 31, 2015.  (Compl. ¶ 49).  Under the 2010 Agreement, Spalding Group then had until June 28, 2016, to dispose of its remaining inventory of Licensed Cigars.  (Compl. ¶ 50).

Following the termination of the license, Spalding Group began selling a cigar also seasoned with Maker's Mark bourbon (the "Bourbon Cigar").  (Compl. ¶ 52).  Maker's Mark alleges the packaging of the Bourbon Cigar was intentionally designed to "evoke an association by customers between [t]he Bourbon Cigar on the one hand and Maker's Mark and the prior Licensed Cigars on the other."  (Compl. ¶ 52).  Maker's Mark further claims Spalding Group advertised the Bourbon Cigar in a variety of ways to associate it with Maker's Mark and the Licensed Cigars, despite Maker's Mark's demand that Spalding Group cease and desist.  (Compl. ¶¶ 55-66).  Maker's Mark brought this action against Defendants, asserting claims of trademark infringement (Count I); false designations, descriptions, and representations (Count II); and trademark dilution (Count III), all in violation of the Lanham Act.  15 U.S.C. §§ 1114, 1125(a), 1125(c); (Compl. ¶¶ 88-110).  It also brought claims for breach of contract (Count IV), trademark infringement (Count V), and false designation and unfair competition (Count VI) under Kentucky common law.  (Compl. ¶¶ 111-30).  Defendants countersued for fraudulent misrepresentation (Count I), breach of the implied duty of good faith and fair dealing and breach of contract (Count II), promissory estoppel (Count III), collateral estoppel (Count IV), and cancellation of some of Maker's Mark's trademarks (Count V).  (Answer & Am. Countercl. 75-78, DN 21).  The Court dismissed Defendants' fraudulent misrepresentation and breach of the implied duty of good faith

and fair dealing and breach of contract counterclaims, and it redesignated the collateral estoppel counterclaim as an asserted affirmative defense.  (Mem. Op. & Order 13, 18, 21, DN 56).

## II.    JURISDICTION

The Court exercises subject matter jurisdiction over this action through federal question jurisdiction and supplemental jurisdiction over the state law claims.  28 U.S.C. §§ 1331, 1367(a).

## III.    DISCUSSION

### A.    Motion for Reconsideration (DN 129)

Defendants filed an Answer and Amended Counterclaim that listed twenty-nine affirmative defenses, but did not include the defense of fair use.  (Answer & Am. Countercl. 37-39).  Maker's Mark moved to strike, *inter alia*, an expert's mention of fair use from his report because Defendants waived it by not including it in their Answer, and Defendants moved for leave to file an amended answer to, *inter alia*, add fair use to the list of affirmative defenses.  (Pl.'s Mot. Strike Improper Ops. Rebuttal Reports 10-11, DN 88; Defs.' Mot. Leave File Am. Answer 3-4, DN 99).  This Court denied the motion for leave, holding that Defendants waived the fair use defense because they failed to specifically raise it in their Answer and Amended Counterclaim, they did not provide a reasonable explanation for that failure, and Maker's Mark did not have notice of the defense.  (Mem. Op. & Order 9-16, DN 121 [hereinafter Order]).  This Court then granted in part the motion to strike, holding that because Defendants waived the defense, they are prohibited from eliciting testimony about fair use from their expert or any other witnesses.  (Order 9-15, 22).  The Court also denied Defendants' motion for leave to amend the answer because allowing them to assert a new defense after fact discovery closed and nearly eighteen months after the amendment deadline in the scheduling order would prejudice Maker's Mark.  (Order 6, 15-16).  Defendants now move for reconsideration of the Order, contending that the Court's conclusion that Defendants

waived fair use was clear error that will result in manifest injustice.  (Defs.' Mot. Recons. 1, 5, 15, DN 129).

### 1.    *Standard of Review*

While the Federal Rules of Civil Procedure do not explicitly allow motions for reconsideration, it is well established that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders . . . ." *Rodriguez v. Tenn. Labs. Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citation omitted).  Courts typically justify reconsideration when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citation omitted). "It is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.'"  *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007)).  Parties also may not use motions for reconsideration as "an opportunity to re-argue a case."  *Id.*  "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Colter v. Bowling Green-Warren Cnty. Reg'l Airport Bd.*, No. 1:17-CV-00118-JHM, 2018 WL 775366, at *1 (W.D. Ky. Feb. 7, 2018) (quoting *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009)).

### 2.    *Fair Use Was Not Expressly Raised in the Pleadings*

Defendants first argue that the Court committed clear error because the pleadings did expressly raise fair use.  (Defs.' Mot. Recons. 6,8).  Defendants already raised this point in their response to Maker's Mark's motion to strike, citing paragraph 53 of their Answer and paragraph 57 of their Amended Counterclaim, which note that Defendants correctly named Maker's Mark as

an ingredient in the Bourbon Cigars.  (See Answer & Am. Countercl. 26, 64).  The Order held that the "vague statements" in the two paragraphs were not sufficient to plead fair use when the Answer explicitly listed twenty-nine other defenses but never named fair use.  (Order 9).  Defendants again contend that the pleadings expressly raised fair use, this time citing a paragraph in Maker's Mark's Complaint and Defendants' denial of it in their Answer and Amended Counterclaim.  (Defs.' Mot. Recons. 6, 8).[2]  The Complaint states:

> Notably, even if the packaging for The Bourbon Cigars did not combine the Maker's Mark name with a wax design intended to evoke the Maker's Mark brand and products, Defendants could not claim that their use of the Maker's Mark name constitutes "fair use," as that defense is unavailable to Ted's Cigars as a former licensee.

(Compl. ¶ 67).  Defendants denied the allegations that paragraph, writing:

> With respect to the allegations contained in numerical paragraph 67, [Defendants] state that they seek a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny these allegations.  Defendants further deny that the wax design referenced therein is intended to evoke the Maker's Mark brand and products.  For example, see supra, ¶¶ 27; 30; 32; 36; see Exhs. 1, 2, 3 and 4.

(Answer & Am. Countercl. 29).

Defendants point out that courts in the Sixth Circuit have held that a defense is not waived "[w]here a plaintiff raises an affirmative defense in its own pleadings or motions . . . ."  (Defs.' Mot. Recons. 6).  The cases Defendants cite, however, do not actually hold that a plaintiff can expressly raise a defense in a complaint or motion.  In *Baker v. City of Detroit*, , 483 F. Supp. 919, 921-22 (E.D. Mich. 1979), the court held that a defense of good faith immunity was not waived

---

[2] Defendants could have but did not make this point initially.  (*See* Defs.' Resp. Pl.'s Mot. Strike 5-9, 14-20, DN 95; Defs.' Mot. Leave File Am. Answer 3-4; Defs.' Reply Mot. Leave File Am. Answer 2-8, DN 108); *Shah*, 507 F. App'x at 495 (explaining that a district court properly denied a motion for reconsideration of an order granting summary judgment because the moving party had raised evidence available to him at the summary judgment stage).  Regardless, Defendants' argument fails on the merits.

because it was "inherent to their affirmative defenses"—that their actions were consistent with and intended to comply with the law—so they had "clearly set forth legal grounds for a claim of governmental immunity." *Id.* at 921-22. The plaintiffs in *Baker* had amended their complaint to assert specific allegations to counter good faith and defendants specifically denied every allegation, but that only served to confirm the court's opinion that defendants had raised the good faith defense by pleading that their actions were intended to comply with the law. *Id.* at 922 ("If there were any doubt as to [whether defendants pleaded the defense], plaintiffs themselves have removed it."). Similarly, in *State Farm Mutual Automobile Insurance Co. v. Sharon Woods Collision Center, Inc.*, No. 1:07CV457, 2007 WL 4207158 (S.D. Ohio Nov. 26, 2007), the court held that a plaintiff raising fair use in its summary judgment motion demonstrated that plaintiff had notice of the defense; the court did not hold that plaintiff's mention of fair use expressly raised it. *Id.* at *6. Defendants have failed to show clear error with the Court's finding that they did not expressly plead fair use.

### 3.   *Maker's Mark Did Not Have Adequate Notice*

Defendants next urge that the Court committed clear error because it held that Maker's Mark did not have adequate notice of fair use, purportedly misapplying Fed. R. Civ. P. 8's liberal pleading standards. (Defs.' Mot. Recons. 2, 4-8). Defendants insist that although they did not use the words "fair use," under Rule 8, Maker's Mark had sufficient notice of the fair use defense because Defendants included facts in their Answer and Amended Counterclaim that could support it. (Defs.' Mot. Recons. 10). Defendants cite three cases where courts, considering Rule 15 motions to amend complaints, have held that plaintiffs have given defendants fair notice of claims against them when they include facts that support a cause of action. *See Fisher v. Roberts*, 125 F.3d 974, 978 (6th Cir. 1997); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *Moore v. City*

6

*of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986).   The cases do not support Defendants' overly permissive interpretation of Rule 8, and none considers how the holding would apply to a defendant's failure to expressly raise a defense.[3]   *See id.*

Defendants similarly state that Maker's Mark was on notice of the fair use defense based on prelitigation communication and discovery, which improperly attempts to re-argue the motion to strike.  (Defs.' Mot. Recons. 11-14; Defs.' Resp. Pl.'s Mot. Strike 16-20, DN 95); *Shah*, 507 F. App'x at 495.   Defendants raise the same prelitigation communication, discovery responses, and depositions that the Order analyzed and rejected, this time emphasizing Maker's Mark's statements, none of which mention fair use.  (Order 12-14; Defs.' Mot. Recons. 12-13; *see* Pl.'s Reply Mot. Strike Improper Ops. Ex. 4, at 2-3, DN 100-1; Pl.'s Reply Mot. Strike Improper Ops. Ex. 6, at 7, DN 100-3).  That is insufficient.

> The fact that some of Plaintiffs' discovery requests or deposition questions might have yielded information that could have been used to rebut the [defense] does not mean that Plaintiffs "were preparing to rebut a[n] [unasserted] [] defense"; the questions identified by [the defendant] were relevant to other topics regardless of whether [the defense] was at issue.

*Desai v. Charter Commc'ns, LLC*, 381 F. Supp. 3d 774, 792 (W.D. Ky. 2019) (internal citation omitted) (citation omitted).

Defendants also point to paragraph 67 in the Complaint and the denial in the Answer and Amended Counterclaim as proof of notice, but those do not impact the Order's reasoning.  (Defs.' Mot. Recons. 12).  The parties disputed the applicability of fair use in prelitigation communication,

---

[3] To support their argument that Maker's Mark had notice of the defense, Defendants also cite *Dybowski v. VCE Co.*, 654 F. App'x 210 (6th Cir. 2016), which concerned a contractual dispute about how to calculate a salesperson's commission.  There, the Sixth Circuit held that the defendant did not waive argument about a contractual clause that allowed them to reduce the plaintiff's commission by not including it in its answer because it was not an affirmative defense and if it was, the plaintiff was on notice in part because of discovery responses showing how defendants calculated the commission.  *Id.* at 216.  The facts here plainly do not match *Dybowski*'s.

and Maker's Mark noted that it did not apply in paragraph 67 of its Complaint. (Countercl. Ex. 30, at 1, DN 8-30[4]; Defs.' Resp. Pl.'s Mot. Strike Improper Ops. Ex. 1, at 5-6, DN 95-2). Defendants, although they denied the allegations in paragraph 67 along with nearly every other paragraph in the Complaint, *did not list fair use* among the twenty-nine other defenses they pleaded, did not raise fair use when Maker's Mark sought clarification of the defenses, and did not litigate the applicability of the defense until Maker's Mark—not Defendants—moved to strike a reference to it from an expert's report because Defendants did not raise it in their Answer. (*See* Answer & Am. Countercl.; Pl.'s Reply Mot. Strike Improper Ops. Ex. 7, at 3, DN 100-4; Pl.'s Reply Mot. Strike Improper Ops. Ex. 8, at 1, DN 100-5; Pl.'s Mem. Supp. Mot. Strike Improper Ops. 10-11, DN 88-1). "The reasonable conclusion from the facts presented is [still] that Defendants abandoned the fair use defense over time because of its questionable applicability to the facts." (Order 14). Defendants have failed to demonstrate that the finding that Marker's Mark was not on notice of the fair use defense was clear error.

### 4.     *Clarification of the Order*

Defendants request that if its motion for reconsideration is denied, the Court clarify how the waiver of the fair use defense and the order not to elicit any testimony "about the defense, its elements, or its applicability to the case" impacts the remainder of the case. (Defs.' Mot. Recons.

---

[4] Defendants contend that because they attached the prelitigation communication to their Counterclaim and Answer and Amended Counterclaim, Maker's Mark should have known to conduct discovery on the fair use defense. (Defs.' Reply Mot. Recons. 4-5, DN 134). Defendants cite *Herrera v. Churchill McGee, LLC*, 680 F.3d 539 (6th Cir. 2012), where the Sixth Circuit held that a defense was not waived because the defendant included it in the answer, the defendant had used the defense to rebut another claim in a prior motion, and the plaintiff had time to conduct additional discovery before it closed. *Id.* at 546-47. Defendants also cite *Lawrence v. Chabot*, 182 F. App'x 442 (6th Cir. 2006), in which the Sixth Circuit held that defendants sufficiently pleaded a defense that they specifically mentioned in their answer, albeit without any explanation. *Id.* at 456. Neither case applies here.

15-22; Order 22).   The following sections will discuss the impact of the waived defense as necessary for the resolution of the motions.   The remaining points on which Defendants seek clarification will be addressed at trial or may be raised via motions in limine.

### B.    Motions for Partial Summary Judgment (DN 140, 143)

Maker's Mark and Defendants have filed dueling motions for partial summary judgment. Maker's Mark seeks summary judgment on its federal trademark infringement claim (Count I), its breach of contract claim (Count IV), Defendants' promissory estoppel counterclaim (Count III), and Defendants' trademark cancellation counterclaim (Count V).   (Pl.'s Mem. Supp. Mot. Partial Summ. J. 12, 15-16, DN 140-1).   Defendants seek summary judgment on Maker's Mark's trademark infringement claims (Counts I and V), Maker's Mark's false designations claims (Counts II and VI), and Maker's Mark's trademark dilution claim (Count III).   (Defs.' Mem. Supp. Mot. Partial Summ. J. 8, 13, 21, DN 143-1).

### 1.    *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party moving for summary judgment bears the burden of demonstrating that there are no genuine issues of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the moving party meets that burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,' which requires more than "some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).   The court must consider the evidence "in a light most favorable" to the nonmoving party and give that party "the benefit of all reasonable inferences."   *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (citing *Smith Wholesale Co. v. R.J. Reynolds*

*Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007)).  There must be sufficient evidence for a jury to reasonably find for the plaintiff; "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### 2.   *Maker's Mark's Claims*

### a.       **Trademark Infringement (Counts I and V)**

Maker's Mark brings its federal trademark infringement claim under Section 1114(1)(a) of the Lanham Act.  (Compl. ¶¶ 88-95).  To prevail on that claim, Maker's Mark must prove "(1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'"  *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007)).  Maker's Mark also brings a trademark infringement claim under Kentucky common law, which involves an analysis that is "functionally the same" as the federal infringement claim, so they will be addressed together.  (Compl. ¶¶ 117-23); *Bliss Collection, LLC v. Latham Cos.*, 82 F.4th 499, 515 (6th Cir. 2023) (citations omitted).

### i.       **"Maker's Mark" Name Mark**

After Maker's Mark terminated the 2010 Agreement, Defendants rebranded the Licensed Cigars as "The Bourbon Cigar" complete with different packaging and a straight red wax seal instead of a dripping red wax seal.  (*See* Jackson Dep. 143:8-24, 162:6-24, Oct. 5, 2021, DN 143-3); *Compare* Defs.' Mot. Partial Summ. J. Ex. 10, at 4, 6-7, DN 143-11 (shown below), *with* Defs.' Mot. Partial Summ. J. Ex. 16, at 1, 3, 5, DN 143-17 (shown below)).  Maker's Mark alleges that Defendants' use of "Seasoned with Maker's Mark" on the Bourbon Cigars' secondary cigar band

infringes their trademark of the "Maker's Mark" name (the "name mark"). (Compl. ¶¶ 53, 88-95; Pl.'s Mem. Supp. Mot. Partial Summ. J. 12-15). Maker's Mark and Defendants each move for summary judgment on this claim. (Defs,' Mem. Supp. Mot. Partial Summ. J. 13-17, 21-22; Pl.'s Mem. Supp. Mot. Partial Summ. J. 13).



Licensed Cigars Three Pack



Bourbon Cigars Three Pack



Licensed Cigars Box



Bourbon Cigars Box







Licensed Cigars Individual Cigars                    Bourbon Cigars Individual Cigar

### a)      Non-Trademark Use

Defendants move for summary judgment on the trademark infringement claims based on their use of the name mark on the secondary cigar band because it was a non-trademark use. (Defs,' Mem. Supp. Mot. Partial Summ. J. 13-17).  Non-trademark use is a threshold question that asks "whether the defendants 'are using the challenged mark in a way that identifies the source of their goods.'  If they are not, then the mark is being used in a '"non trademark" way' and trademark infringement laws . . . do not even apply."  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) (internal citation omitted) (quoting *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)); *see also Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 433 (6th Cir. 2017) (dismissing trademark infringement claims under both the Lanham Act and Kentucky common law because it was a non-trademark use).  To determine whether defendants are using the mark as a source identifier, courts consider "whether a consumer is likely to notice [the plaintiff's trademark] . . . and then think that the [defendant's product] may be produced by the same company[.]"  *Oaklawn Jockey Club, Inc.*, 687 F. App'x at 432 (alterations in original) (quoting *Interactive Prods. Corp.*, 326 F.3d at 696).

As an initial matter, the procedural posture of this case does not preclude a non-trademark use analysis. First, the Order that held that Defendants waived the fair use defense does not bar them from arguing that their use of the name mark was a non-trademark use.[5] (*See* Order 9-15, 22; Defs.' Mot. Recons. 21). Although non-trademark use and fair use are nearly identical substantively, the plaintiff carries the burden of proving that the defendant used the mark in a "trademark way," while fair use is an affirmative defense for which the defendant carries the burden. *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 859 (6th Cir. 2018); *Heaven Hill Distilleries, Inc. v. Log Still Distilling, LLC*, 575 F. Supp. 3d 785, 806 n.4 (W.D. Ky. 2021). Indeed, Maker's Mark does not argue that the waiver of fair use prohibits Defendants from arguing non-trademark use. (*See* Pl.'s Resp. Defs.' Mot. Recons. 13-14; Pl.'s Resp. Defs.' Mot. Partial Summ. J. 25 n.10, DN 152). Second, the non-trademark inquiry can be addressed at summary judgment and not just in a motion to dismiss. (Pl.'s Resp. Defs.' Mot. Recons. 14-15; Defs.' Reply Mot. Recons. 12); *Interactive Prods. Corp.*, 326 F.3d at 694-95 (evaluating non-trademark use on review of a grant of summary judgment); *Volkswagen AG v. Dorling Kindersley Pub., Inc.*, 614 F. Supp. 2d 793, 809 (E.D. Mich. 2009) (evaluating non-trademark use at summary judgment); *Ford Motor Co. v. AirPro Diagnostics LLC*, 632 F. Supp. 3d 753, 767 (E.D. Mich. 2022) (same); *Sazerac Brands, LLC*, 892 F.3d at 859 (explaining the non-trademark use inquiry in review of a motion for summary judgment).

Defendants contend that their use of the name mark is non-trademark because consumers are unlikely to notice the "Seasoned with Maker's Mark" band, in part because some packaging may obscure it, Defendants' branding is more prominent, and "Seasoned with Maker's Mark" is

---

[5] It does, of course, bar them from arguing fair use. (Order 9-15, 22; *see* Defs.' Mem. Supp. Mot. Partial Summ. J. 17-20).

"encountered in the same context as the other descriptors" of the Bourbon Cigar, such as where it was made. (Defs.' Mem. Supp. Mot. Partial Summ. J. 16). Maker's Mark contends that the silver band stating "Seasoned with Maker's Mark" is attention-grabbing because of its sharp color contrast with the black band and because of its use with the red wax seal. (Pl.'s Resp. Defs.' Mot. Recons. 15-16). Maker's Mark further argues that Defendants "intended to evoke an association with Maker's Mark" and has offered evidence that the promotional materials for the Bourbon Cigars advertised them as the "original bourbon cigar" and "celebrating 20 years," purportedly to connect the Bourbon Cigars with the Licensed Cigars, which suggests that Defendants are using the name mark in a trademark way. (Knight Decl. Ex. H (PageID # 4817), DN 140-2); *see Presidio, Inc. v. People Driven Tech., Inc.*, No. 2:21-CV-05779, 2023 WL 5178345, at *27 (S.D. Ohio Aug. 11, 2023) (holding that a genuine issue of material fact existed on non-trademark use where there was "some indication that [defendant] is distinct from [plaintiff] and some that it is not."); *Volkswagen*, 614 F. Supp. 2d at 809 (holding that whether a use was non-trademark was a jury question because facts supported either finding). Accordingly, Maker's Mark has established a genuine issue of material fact as to whether a consumer likely would notice the name mark and think the Bourbon Cigars are made by Maker's Mark, which precludes summary judgment. *See Oaklawn Jockey Club, Inc.*, 687 F. App'x at 432.

Defendants similarly assert that *Prestonettes, Inc., v. Coty*, 264 U.S. 359 (1924), warrants summary judgment because it permits them to list Maker's Mark as an ingredient in the Bourbon Cigars. (Defs.' Mem. Supp. Mot. Partial Summ. J. 17-18). In *Coty*, the Supreme Court held that the defendant could purchase the plaintiff's products, change them or alter their packaging, and label them as not connected with the plaintiff's company without infringing the plaintiff's trademark. *Coty*, 264 U.S. at 367-69. It is not clear whether *Coty* is an example of the fair use

defense, which Defendants are barred from arguing, but the argument is still not well taken. *Sazerac Brands, LLC*, 892 F.3d at 857 (referencing *Coty* while discussing fair use); *Oaklawn Jockey Club, Inc.*, 687 F. App'x at 431 (referencing *Coty* in the context of non-trademark use). The *Coty* rule only applies if the mark is "used in a way that does not deceive the public," so it fails at this stage for the same reason as non-trademark use. *Coty*, 264 U.S. at 368; *see Bumble Bee Seafoods, L.L.C. v. UFS Indus., Inc.*, No. 04 CIV. 2105 (SHS), 2004 WL 1637017, at *4 (S.D.N.Y. July 20, 2004) (explaining that a defendant must "use [plaintiff's] [trademark] discreetly and collaterally, not with an emphasis likely to lead the public into the false belief that the entire new product and the ingredient are from a common source." (emphasis omitted) (quoting Rudolf Callmann, *Callmann on Unfair Competition. Trademarks and Monopolies* § 22:27 (Louis Altman ed., West Group 4th ed. 1983))). This question, ultimately, is one to be determined by the trier of fact.

### b)   Likelihood of Confusion[6]

Defendants and Maker's Mark each move for summary judgement on the name mark infringement claim based on likelihood of confusion. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 13; Defs.' Mem. Supp. Mot. Partial Summ. J. 21-22). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (citations omitted). The Sixth Circuit has adopted eight factors for courts to weigh to determine whether there is a likelihood of confusion: "1. strength of the plaintiff's mark; 2. relatedness of the goods; 3. similarity of the

---

[6] The parties do not dispute the first two trademark infringement elements. (*See* Pl.'s Mem. Supp. Mot. Partial Summ. J. 13; Defs.' Mem. Supp. Mot. Partial Summ. J. 21).

marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. defendant's intent in selecting the mark; [and] 8. likelihood of expansion of the product lines." *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (citation omitted).

Defendants contend that even if their use of the name mark was a trademark use, they are entitled to summary judgment because the *Frisch's* factors weigh against a finding of likelihood of confusion.  (*See* Defs.' Mem. Supp. Mot. Partial Summ. J. 21-22).  Maker's Mark, however, argues that the *Frisch's* factors are irrelevant to this case.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 13).  They contend that they are entitled to summary judgment because likelihood of confusion exists as a matter of law based on Defendants' purported status as holdover licensees because they continued to use the name mark after the license was terminated.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 13 (citing *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454 (6th Cir. 2022), *reh'g denied*, No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022))).  Maker's Mark does not, however, analyze the impact, if any, that Defendants' rebrand from the Licensed Cigars to the Bourbon Cigars may have on the holdover licensee rule, nor does it address whether Defendants' use was a trademark use, which is part of its burden.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 12-15; Pl.'s Reply Mot. Partial Summ. J. 1-2, DN 160); *Sazerac Brands, LLC*, 892 F.3d at 859.  In their motion for summary judgment based on the *Frisch's* factors,[7] Defendants do not sufficiently rebut Maker's Mark's argument that likelihood of confusion exists as a matter of law because they only point to Maker's Mark's failure to provide factually analogous cases; they do not cite any that

---

[7] Defendants request clarification about whether they may introduce evidence that they believed their use of the name mark was fair use to rebut the intent factor in the *Frisch's* analysis.  (Defs.' Mot. Recons. 22).  Because it is unclear at this stage whether the *Frisch's* factors will ultimately apply to the name mark infringement claim, the Court will defer addressing this issue.

are instructive on this issue.  (Defs.' Reply Mot. Partial Summ. J. 12, DN 162; Defs.' Resp. Pl.'s Mot. Partial Summ. J. 4-13, DN 149).  Accordingly, because each party has failed to establish that it is entitled to judgment as a matter of law, the motions for summary judgment are denied as to the trademark infringement claims based on the name mark.  *See Getachew v. Columbus City Schs.*, No. 2:11-CV-861, 2012 WL 748783, at *1 (S.D. Ohio Mar. 8, 2012) ("The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law."  (citing *Celotex Corp.*, 477 U.S. at 323)); *Harness v. Anderson Cnty.*, No. 3:18-CV-100, 2019 WL 5269095, at *7 (E.D. Tenn. Oct. 17, 2019) (denying summary judgment where the moving party failed to demonstrate that it was entitled to judgment as a matter of law).

### ii.      Wax Mark

Maker's Mark alleges that the straight wax caps on the Bourbon Cigars are confusingly similar to its dripping red wax trademark (the "wax mark").  (Compl. ¶¶ 3, 35, 88-95; Pls.' Resp. Defs.' Mot. Partial Summ. J. 17).  Defendants move for summary judgment on Maker's Mark's wax mark infringement claim because the *Frisch's* factors weigh against a finding of likelihood of confusion; they do not dispute the first two trademark infringement elements.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 21-30).

### a)      Likelihood of Confusion

The existence of likelihood of confusion is a mixed question of fact and law, so "[f]actual findings must be made with respect to the likelihood of confusion factors set out above[,] . . . [but] the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion."  *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991); *accord Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630-31

(6th Cir. 2002); *see also Max Rack, Inc.*, 40 F.4th at 464.  "To resist summary judgment in a case where the likelihood of confusion is the dispositive issue, a nonmoving party must establish . . . that there are genuine factual disputes concerning those of the *Frisch's* factors which may be material in the context of the specific case." *Homeowners Grp., Inc.*, 931 F.2d at 1107. In other words, Maker's Mark's objective is "to identify a disputed factor or set of factors whose resolution would necessarily be dispositive on the likelihood of confusion issue." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 646 (6th Cir. 2002) (quoting *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999), *rev'd on other grounds*, 532 U.S. 23 (2001)).  Importantly, "[a] party claiming infringement need not show all, or even most, of these factors in order to prevail." *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1242 (6th Cir. 1991) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988)).

### 1)       Strength of the Mark

"The strength of a mark is a factual determination of the mark's distinctiveness.  The more distinct a mark, the more likely is the confusion resulting from its infringement, and, therefore, the more protection it is due." *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985).  "A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source;' such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *Bliss Collection, LLC*, 82 F.4th at 509 (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280.  A mark may be "substantially weaken[ed]" by "extensive third-party uses." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc. (Maker's Mark II)*, 679 F.3d 410, 420 (6th Cir. 2012) (citations omitted).

Defendants' only argument regarding the wax mark's strength is that third parties have used wax seals and that the "pervasive use . . . belies any contention that the [wax mark] is strong."

(Defs.' Mem. Supp. Mot. Partial Summ. J. 29).  Defendants cite dozens of alcoholic beverages, including beer, wine, ale, and whiskey, that use a wax seal, some of which are dripping, as evidence of extensive third-party use.  (*See* Defs.' Mot. Partial Summ. J. Ex. 40, DN 143-41).  Maker's Mark responds that third-party use does not weaken the wax mark because only two whiskey brands include a dripping wax design and each has discontinued its use.  (Pl.'s Resp. Defs.' Mot. Partial Summ. J. 18; Pl.'s Resp. Defs.' Mot. Partial Summ. J. Ex. 7, DN 152-7; Wagner Decl. Ex. D (PageID # 7089-111), DN 152-1).  Accordingly, Maker's Mark has raised a genuine issue of material fact about whether there are third-party uses that weaken its trademark.  S*ee Daddy's Junky Music Stores, Inc.*, 109 F.3d at 281 (holding that third-party trademarks that used the phrase "Daddy's" raised a genuine issue of material fact about whether they "weaken[ed] plaintiff's mark for the specific purpose of retail sales of musical instruments"); *cf. Maker's Mark II*, 679 F.3d at 421 (affirming a district court's factual finding following a bench trial that Maker's Mark's dripping red wax seal was an "extremely strong mark" and that third-party use did not weaken the mark because it was not limited to the "relevant market").

## 2)      Relatedness of the Goods

To determine whether goods are related, a court must place them into one of three categories: direct competition, where "confusion is likely if the marks are sufficiently similar"; "somewhat related but not competitive," where "the likelihood of confusion will turn on other factors"; or "totally unrelated," where "confusion is unlikely."  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 282.  The Sixth Circuit has explained:

> Services and goods "are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company."

*Id.* at 282-83 (quoting *Homeowners Grp., Inc.*, 931 F.2d at 1109).  It is unclear from the record whether the goods are related, so for the purposes of summary judgment, this factor is neutral.[8] *See Ferrari S.P.A.*, 944 F.2d at 1242, 1248 (affirming district court's likelihood of confusion conclusion where the district court considered two factors neutral because they were unsupported by evidence).

### 3)       Similarity of the Marks

"The more similar the marks are, the more likely it is that relevant consumers will confuse their sources."  *Kibler v. Hall*, 843 F.3d 1068, 1077 (6th Cir. 2016).  Courts determine whether marks are similar by considering "whether either mark would confuse a consumer who did not have both marks before her and had only a vague impression of the other mark."  *Id.* (citing *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283).

Defendants contend that the marks are not similar because the Bourbon Cigars have prominent Ted's Cigars branding.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 23).  Defendants cite *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004), in which the Sixth Circuit held that even if marks are similar, "[t]he use of a challenged junior mark together with a house mark or house tradename can distinguish the challenged junior mark from the senior mark and make confusion less likely."  *Id.* at 796 (citation omitted).  The Sixth Circuit has noted, however, that use of a house mark is not dispositive but is "a factor to be considered in the evaluation of similarity" and is less significant in a case where the plaintiff alleges that the defendant falsely associated the brands because "when the two products are related enough [] one might associate

---

[8] Defendants' argument that the goods are unrelated because they are classified differently by the International Nice Classification system is not well taken.  *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:56 (5th ed. 2023) ("The fact that a junior user's goods fall within a different classification than the registrant's goods is not determinative of a likelihood of confusion.").

with or sponsor the other and still use their own house mark." *Maker's Mark II*, 679 F.3d at 422

(quoting *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc. (Maker's Mark I)*, 703 F. Supp. 2d

671, 692 (W.D. Ky. 2010)).  Maker's Mark maintains that although the Bourbon Cigars display

Ted's Cigars branding, the marks are still similar enough to confuse a consumer into thinking that

Maker's Mark sponsors the Bourbon Cigars, especially because "Seasoned with Maker's Mark"

appears on the secondary cigar band.  (Pl.'s Resp. Defs.' Mot. Partial Summ. J. 19-20).  Whether

they are is a question left for the trier of fact.  *Maker's Mark II*, 679 F.3d at 422 (evaluating a

court's factual findings on similarity following a bench trial); *Daddy's Junky Music Stores, Inc.*,

109 F.3d at 284 ("The degree of similarity between "Daddy's" and "Big Daddy's Family Music

Store," however, remains an issue of fact.").  Accordingly, Maker's Mark has raised a genuine

issue of material fact about whether the marks are similar.

### 4)        Evidence of Actual Confusion

Evidence of actual confusion is not required, but it is "undoubtedly the best evidence of

likelihood of confusion." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 284 (quoting *Wynn Oil

Co.*, 839 F.2d at 1188).  Defendants argue that Maker's Mark is unable to raise evidence of actual

confusion primarily because its expert, Dr. Ran Kivetz ("Kivetz"), conducted a "fundamentally

flawed" confusion survey compared to the surveys by Defendants' expert Hal Poret ("Poret"),

which did not produce evidence of "actionable levels of confusion."  (Defs.' Mem. Supp. Mot.

Partial Summ. J. 25-27).  As discussed in a separate memorandum opinion and order, however,

Dr. Kivetz's survey is not excluded, and it will be up to the factfinder to determine whether it is

accurate.  *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 778 (W.D.

Mich. 2006) ("[F]laws in survey methodology go to the evidentiary weight of the survey rather

than its admissibility."), *aff'd*, 502 F.3d 504 (6th Cir. 2007); *Frisch's Rest., Inc.*, 759 F.2d at 1267

(observing that a district court's evaluation of the accuracy of a likelihood of confusion survey was a factual inquiry).  Dr. Kivetz's survey produced a net confusion rate of 18.3%, which could tilt this factor in favor of Maker's Mark if the factfinder accepts it as credible.  (Kivetz Report ¶ 85, DN 152-5); *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 267 (6th Cir. 2021) (holding that the district court's reliance on a net confusion rate of 19% from a consumer survey was not clear error).  Accordingly, Maker's Mark has raised a genuine issue of material fact on this factor.

### 5)      Marketing Channels Used

The marketing channels factor "consists of considerations of how and to whom the respective goods or services of the parties are sold."  *Homeowners Grp., Inc.*, 931 F.2d at 1110. As the Sixth Circuit explained:

> Obviously, dissimilarities between the predominant customers of a plaintiff's and defendant's goods or services lessens the possibility of confusion, mistake, or deception.   Likewise if the services of one party are sold through different marketing media in a different marketing context than those of another seller, the likelihood that either group of buyers will be confused by similar service marks is much lower than if both parties sell their services through the same channels of trade.

*Id.*  Defendants state that their customers are almost exclusively distributors and wholesalers, but they do not explain how they market the Bourbon Cigars, or how their customers and marketing differ from Maker's Mark's.  (*See* Defs.' Mem. Supp. Mot. Partial Summ. J. 24-25).  Maker's Mark likewise fails to explain its marketing channels or customers and how they are similar to Defendants'.  (*See* Pl.'s Resp. Defs.' Mot. Partial Summ. J. 22).  Maker's Mark cites evidence that purportedly proves that its bourbon and the Bourbon Cigars "are sold through many of the same brick-and-mortar retail stores, on-premise locations, and e-commerce websites."  (*See* Pl.'s Resp. Defs.' Mot. Partial Summ. J. 22).  The exhibits, however, consist merely of social media posts, which are not clearly retailer advertisements, that show Maker's Mark bourbon and the Bourbon

22

Cigars together; two photos of a shelf with Maker's Mark bourbon and the Bourbon Cigars beside each other in an unknown store; and one liquor store's website that sells the Bourbon Cigars. (Wagner Decl. Ex. F (PageID # 7359-98); Metz Decl. Exs. A-B (PageID # 7226-41), DN 152-8). These are far too vague to "illuminate[] what actually happens in the marketplace." *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 295 F. Supp. 3d 756, 769 (W.D. Ky. 2018) (quoting *Homeowners Grp., Inc.*, 931 F.2d at 1110). Because the record is unclear about the parties' customers and marketing channels, this factor is neutral for the purposes of summary judgment. *See id.* (finding the marketing channels factor neutral at summary judgment where neither party offered "evidence on marketing budgets, frequency of advertising, or sophistication of advertising" and only cited "general facts" about their customers or marketing efforts).

### 6)      Likely Degree of Purchaser Care

When considering likely degree of purchaser care, courts usually use the "typical buyer exercising ordinary caution" standard, but "when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper[,]" and confusion is less likely. *Homeowners Grp., Inc.*, 931 F.2d at 1111. Here, Defendants argue that they sell nearly all of the Bourbon Cigars to distributors and wholesalers, who are sophisticated consumers, so confusion is less likely. (Defs.' Mem. Supp. Mot. Partial Summ. J. 24-25). Maker's Mark does not dispute that Defendants sell the Bourbon Cigars to distributors and wholesalers; they argue that the relevant purchasers are those who buy from retailers. (Pl.'s Resp. Defs.' Mot. Partial Summ. J. 23). Maker's Mark does not cite any authority for that proposition, and in-circuit authority suggests otherwise. *See Flower Mfg., LLC v. CareCo, LLC*, 466 F. Supp. 3d 797, 818 (N.D. Ohio 2020) (finding that purchaser care factor weighed in favor of defendant air freshener

seller in part because it sold its products primarily to distributors).  Accordingly, this factor could weigh in Defendants' favor, although the purchaser care determination often depends on its relationship to the other factors.  *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285; *Therma-Scan, Inc.*, 295 F.3d at 638 (explaining that even sophisticated consumers can be confused by highly similar trademarks).

### 7)      Defendants' Intent

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Grp., Inc.*, 931 F.2d at 1111.  "Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286 (citation omitted).  Circumstantial evidence can be sufficient to support a finding of intent.  *See id.*  The intent factor may only weigh in Maker's Mark's favor; if the evidence shows that Defendants did not intend to confuse consumers, the factor is neutral.  *See id.* at 287.

Defendants raise several facts that support their good faith use of the straight red wax seal, including the fact that they sold the Bourbon Cigars under Ted's Cigars branding, which they insist negates any inference of intent to confuse.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 28).  For this proposition, they cite *Capri Sun GmbH v. American Beverage Corp.*, 595 F. Supp. 3d 83, 172 (S.D.N.Y. 2022).  Sixth Circuit case law, however, suggests that slight evidence of bad faith, even with strong evidence of good faith, can raise a genuine issue of material fact as to the defendant's intent.  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 287 (citing *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir. 1996)).  Indeed, "[t]he critical question under trademark law is not whether the junior user tried to limit legal liability, . . . but

24

whether it chose its marks and marketing with the intent to cause confusion and exploit the senior owner's goodwill." *Heaven Hill Distilleries, Inc.*, 575 F. Supp. 3d at 837 (citing *Homeowners Grp., Inc.*, 931 F.2d at 1111).  Maker's Mark contends that Defendants used the red wax seal intentionally to benefit from Maker's Mark's brand recognition, and they point to Defendants' use of the name mark with the wax seal and its advertising that the cigar was the "original bourbon cigar" and "celebrating 20 years," purportedly to connect the Bourbon Cigars to the Licensed Cigars.  (Pl.'s Resp. Defs.' Mot. Partial Summ. J. 23-24; Knight Decl. Ex. H (PageID # 4817)).  At minimum, Maker's Mark has raised a genuine issue of material fact as to Defendants' intent.  *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 287.

### 8)      Likelihood of Product Line Expansion

"[A] 'strong possibility' that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing."  *Homeowners Grp., Inc.*, 931 F.2d at 1112 (citation omitted).  If neither party presents evidence that it intends to expand its products or services, this factor is neutral.  *Therma-Scan, Inc.*, 295 F.3d at 639.  Maker's Mark and Defendants do not dispute that neither intends to expand its product lines, so this factor is neutral.  (*See* Defs.' Mem. Supp. Mot. Partial Summ. J. 23; Pl.'s Resp. Defs.' Mot. Partial Summ. J. 24).

### 9)      Conclusion

Because the factors are disputed or neutral apart from one that may weigh in Defendants' favor, Maker's Mark has "identif[ied] a disputed factor or set of factors whose resolution would necessarily be dispositive on the likelihood of confusion issue."  *See Abercrombie & Fitch Stores, Inc.*, 280 F.3d at 646 (quoting *Mktg. Displays, Inc.*, 200 F.3d at 934).  Accordingly, Defendants' motion for summary judgment on the wax mark infringement claim is denied.

b.        **False Designation and Unfair Competition (Counts II and VI)**

Maker's Mark brings its federal false designations claim under Section 1125(a) of the Lanham Act and also a false designation/unfair competition claim under Kentucky common law. (Compl. ¶¶ 96-103, 124-30).  The stated claims mirror federal trademark infringement claims in that they both require a showing of likelihood of confusion and whether the use was a "trademark use" is part of the plaintiff's burden.  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 288 (noting that Lanham Act false designation and trademark infringement claims mirror each other and that the analysis for one applies to the other); *Interactive Prods. Corp.*, 326 F.3d at 696 (noting that false designation of origin laws do not apply if the use was non-trademark); *Oaklawn Jockey Club, Inc.*, 687 F. App'x at 433 (noting that the non-trademark use analysis on the federal infringement claim also applied to dismiss the common law unfair competition claim).  Defendants move for summary judgment on Maker's Mark's false designation and unfair competition claims on the same bases as its trademark infringement claims, and the above analysis applies, so Defendants' motion for summary judgment on the false designation and unfair competition claims is denied. (*See* Defs.' Mem. Supp. Mot. Partial Summ. J. 13-18, 21-30).

c.        **Trademark Dilution Claim (Count III)**

Maker's Mark brings a trademark dilution claim under Section 1125(c) of the Lanham Act. (Compl. ¶¶ 104-10).  Trademark dilution is a claim separate from trademark infringement, and likelihood of confusion is not the determinative issue.  McCarthy, *supra*, § 24:67.  Instead, trademark dilution "theorizes that a junior user's unpermitted use of a famous mark on unrelated goods or services that are not likely to cause confusion can still cause a weakening or reduction in the ability of a famous mark to distinguish only one source."  *Id.*  Section 1125(c) "entitles 'the owner of a famous mark that is distinctive' to an injunction against someone who 'commences use

26

of a mark . . . in commerce that is likely to cause dilution . . . of the famous mark' 'any time after the owner's mark has become famous.'" *Kibler*, 843 F.3d at 1083 (quoting 15 U.S.C. § 1125(c)(1)).

### i.        Non-Trademark Use

Defendants move for summary judgment on the trademark dilution claim based on the name mark, raising the same non-trademark argument it offered in support of its motion for summary judgment on the name mark infringement claim.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 13-18); *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 841 (E.D. Mich. 2015) ("[W]here a defendant has used a mark in a non-trademark way, a plaintiff cannot maintain a claim for federal trademark dilution."  (citations omitted)), *aff'd*, 672 F. App'x 575 (6th Cir. 2017).  As discussed above, Maker's Mark has raised a genuine issue of material fact about whether Defendants' use was non-trademark, so this argument fails.

### ii.        Fame

Defendants also move for summary judgment on the trademark dilution claim because Maker's Mark cannot prove that its trademarks were famous when Defendants started selling the Bourbon Cigars in 2016.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 8-13).  "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  To determine whether a mark is famous, courts may consider the following factors:

> (i)        The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii)        The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii)        The extent of actual recognition of the mark.
> (iv)        Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* A famous mark is a "household name," and "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner." *Kibler*, 843 F.3d at 1083 (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012)).

Defendants insist that *Maker's Mark I* should be determinative of the issue because there, this Court held that Maker's Mark's wax mark was not famous.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 11-12); *Maker's Mark I*, 703 F. Supp. 2d at 700, *aff'd*, 679 F.3d 410 (6th Cir. 2012). This argument is problematic for two reasons.  First, "[w]hether a mark is sufficiently famous to support an action for trademark dilution is a question of fact." *Govino, LLC v. Goverre, Inc.*, No. 8:17-CV-01237-JLS-E, 2018 WL 7348849, at *3 (C.D. Cal. Nov. 20, 2018) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008)); *see also Coach Servs., Inc.*, 668 F.3d at 1376 (noting the "fact-specific nature" of the fame inquiry).  *Maker's Mark I* was issued following a bench trial, so Defendants' discussion about which evidence *Maker's Mark I* accepted or rejected is inapposite. *Maker's Mark I*, 703 F. Supp. 2d at 680.  Indeed, on a motion for summary judgment, "[t]he court does not weigh evidence but rather 'view[s] [the evidence] in the light most favorable to the party opposing the motion.'" *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (second and third alterations in original) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

Second, *Maker's Mark I* does not control because Maker's Mark has raised additional evidence here.  *Maker's Mark I* found that Maker's Mark presented strong evidence on the first factor, the advertising and publicity of the mark, and that the fourth factor, registration, also weighed in Maker's Mark's favor.  *Maker's Mark I*, 703 F. Supp. 2d at 698.  The court's concern was that "Maker's Mark did not offer much evidence" regarding the other factors, the extent of its

28

sales and actual recognition. *Id.* Specifically, the court noted that Maker's Mark's sales were "somewhat significant" but did not "make it a behemoth in the distilled spirits world" and that Maker's Mark's evidence focused on recognition within its market rather than the general public. *Id.* at 698-99. Maker's Mark has presented evidence that its 2016 sales were nearly double its 2010 sales and that its products are sold in retailers nationwide and on e-commerce websites.[9] (Wagner Decl. ¶¶ 10-11). Maker's Mark has also raised evidence of national press coverage of the brand's popularity and numerous pop culture references, which are also proof of fame in the general public. (Wagner Decl. ¶¶ 18-22; Wagner Decl. Ex. C (PageID # 6742-7087); *see Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 912 (9th Cir. 2002).

Defendants further argue that Maker's Mark has not raised enough evidence of fame because it did not offer a fame survey and because Defendants' expert's fame survey showed only a 52.7% recognition rate for the word mark and 28% for the wax mark. (Defs.' Mem. Supp. Mot. Partial Summ. J. 12). A plaintiff need not submit a survey to prove that its mark is famous, and the factfinder must determine whether to accept Defendants' survey, the accuracy of which Maker's Mark disputes. *See adidas Am., Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1245 n.11 (D. Or. 2007); *United States v. Persaud*, 866 F.3d 371, 380–81 (6th Cir. 2017) ("But the reliability and believability of expert testimony, once that testimony has been properly admitted, is exclusively for the jury to decide. This court has long held the view that "[t]he weight and credibility of the testimony of [a party's] expert witnesses were for the jury." (footnote omitted) (citations omitted)); (Pl.'s Resp. Defs.' Mot. Partial Summ. J. 12-16).

---

[9] Defendants insist that Maker's Mark's market share demonstrates that it is not famous. (Defs.' Mem. Supp. Mot. Partial Summ. J. 11-12). To the extent that it is relevant, Maker's Mark disputes the accuracy of market share numbers. (*See* Pl.'s Resp. Defs.' Mot. Partial Summ. J. 8).

In sum, Maker's Mark has offered sufficient facts to present a triable issue on whether its marks are famous.

### d.        Breach of Contract Claim (Count IV)

Maker's Mark brings a breach of contract claim against Defendants for, *inter alia*, their use of "Maker's Mark" on the cigar band of the Bourbon Cigars.  (Compl. ¶¶ 111-16; Pl.'s Mem. Supp. Mot. Partial Summ. J. 15).  "A breach of contract claim under Kentucky law generally requires proof of three elements:  '1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract.'"  *Henderson v. Skyview Satellite Networks, Inc.*, 474 F. Supp. 3d 893, 903-04 (W.D. Ky. 2020) (quoting *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009)).

Maker's Mark moves for summary judgment on the claim, arguing that the 2010 Agreement prohibited Defendants from using "Maker's Mark" after the license was terminated and that they breached the agreement when they included it on the cigar band of the Bourbon Cigars.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 15).  Maker's Mark does not cite the language of the relevant contractual provision or explain why Defendants' use constituted a breach.  (*See* Pl.'s Mem. Supp. Mot. Partial Summ. J. 15-16; Pl.'s Reply Mot. Partial Summ. J. 6-8).  Further, Defendants' respond that it did not breach the 2010 Agreement because its use was non-trademark, but Maker's Mark ignores that argument, explaining in a footnote that Defendants have waived the fair use defense.  (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 18; Pl.'s Reply Mot. Partial Summ. J. 7 n.5).  As explained above, however, non-trademark use and fair use are distinct.  Accordingly, Maker's Mark has failed to show that it is entitled to judgment as a matter of law, and its motion for summary judgment on the breach of contract claim is denied.  *See Getachew*, 2012 WL 748783, at *1 (citing *Celotex Corp.*, 477 U.S. at 323); *Harness*, 2019 WL 5269095, at *7.

### 3.    *Defendants' Counterclaims*

#### a.    **Promissory Estoppel (Count III)**

Defendants assert a counterclaim for promissory estoppel.  (Answer & Am. Countercl. 77).
They contend that when Maker's Mark President Rob Samuels ("Samuels") notified Jackson that
the 2010 Agreement was terminated, Samuels told Jackson that Defendants could continue selling
a bourbon-infused cigar if they did not use a dripping wax seal.  (Defs.' Resp. Pl.'s Mot. Partial
Summ. J. 3, 19).   A promissory estoppel claim requires proof of "(1) a promise; (2) which the
promisor should reasonably expect to induce action or forbearance on the part of the promise[e];
(3) which does induce such action or forbearance; and (4) injustice can be avoided only by
enforcement of the promise." *Clemans v. Nat'l Staffing Sols., Inc.*, No. 5:18-CV-481-JMH-MAS,
2020 WL 1987266, at *2 (E.D. Ky. Apr. 27, 2020) (alteration in original) (quoting *Bergman v.
Baptist Healthcare Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004), *aff'd*, 167 F. App'x
441 (6th Cir. 2006)).   The reliance on the promise must have been reasonable.  *Bisig v. Time
Warner Cable, Inc.*, 940 F.3d 205, 216 (6th Cir. 2019).

Maker's Mark moves for summary judgment on the promissory estoppel counterclaim
based on the reasonable reliance and injustice elements.  (Pl.'s Mem. Supp. Mot. Partial Summ. J.
19).  It contends that Defendants did not rely on Samuels' statement because Jackson testified that
regardless of the statement, Defendants would have had to "make changes to the packaging for the
bourbon-seasoned cigars . . . ."  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 18, 20-21; Jackson Dep.
65:24-66:6, Oct. 19, 2021, DN 140-7).   True, a plaintiff cannot prove reliance if the evidence
shows they would have behaved the same regardless of the promise.  *See Bergman v. Baptist
Healthcare Sys., Inc.*, 167 F. App'x 441, 448 (6th Cir. 2006).   What Maker's Mark's argument
misses, however, is that Jackson testified that Defendants relied on Samuels' statement for how

they redesigned the Bourbon Cigars—that because of his statement, they incorporated a straight wax seal.  (Jackson Dep. 65:4-15).

Maker's Mark argues that if Defendants did rely on Samuels' statement, that reliance was unreasonable.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 19-20).  First, without citing any authority, Maker's Mark insists that because Defendants had always paid to use the name mark and the dripping wax mark on the Licensed Cigars, a reasonable jury could not find that Samuels' statement "would have reasonably led Jackson to conclude that Maker's Mark was giving Spalding Group carte blanche to continue selling the same Maker's Mark-seasoned cigar with the previously licensed Maker's Mark name *and* a confusingly similar red wax design."  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 19).  Whether a plaintiff's reliance was reasonable is generally a question of fact for the jury, and a jury could find that Defendants' new packaging that displayed Ted's Cigars branding rather than Maker's Mark's and a straight instead of dripping wax seal was reasonable based on Samuels' statement that Defendants could sell the Bourbon Cigars without dripping wax seals. *Vision Am., Inc. v. Jerrold M. Levin, M.D., Inc.*, No. C-890707, 1991 WL 21284, at *2 (Ohio Ct. App. Feb. 20, 1991) ("[W]hether the action or forbearance flowing from the promise was reasonable present[s] questions of fact that need to be resolved by the jury."  (citation omitted)); *cf. Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 47 (Ky. 2018) (observing in the context of fraudulent misrepresentation that "whether reliance is justified (or as sometimes stated, reasonable) is a question of fact in all but the rarest of instances."  (citations omitted)).  Maker's Mark similarly asserts that Defendants could not have reasonably relied on Samuels' statement because in 2008, Mitch Wagner, Maker's Mark's finance officer, told Jackson that Maker's Mark would likely oppose a generic bourbon cigar, but Wagner said that it was a guess and that "anything could happen."  (Knight Decl. Ex. K (PageID # 4863)).

Maker's Mark also contends that Defendants cannot support a promissory estoppel claim because Samuels' statement was contradicted by the 2010 Agreement.  (Pl.'s Mem. Supp. Mot.

32

Partial Summ. J. 19-20); *see Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 WL 2903231, at *5 (E.D. Ky. Sept. 27, 2007) ("[A]n oral promise made prior to the execution of a written agreement that is inconsistent with the unambiguous terms of the written agreement cannot form the basis of a promissory estoppel claim."). As this Court previously held, however, "[Samuels'] statement, or promise . . . went to the conduct of Defendants *after* the termination and effective date of 2010 Agreement. As such, it cannot be said that claims from Samuels's forward-looking statement in 2013 could be barred by the terms of the 2010 Agreement." (Mem. Op. & Order 17, DN 56).

Maker's Mark lastly argues that Defendants will not suffer injustice if Samuels' statement is enforced but that Maker's Mark will. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 21). Defendants spent over $200,000 to redesign the Bourbon Cigars to continue to sell them in a way that Samuels said Maker's Mark would not object. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 1, at 9-10, DN 149-1). Whether injustice can only be avoided by enforcement depends on the reasonableness of Defendants reliance, so at minimum, there is a genuine issue of material fact on the injustice element as well. *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 472 (6th Cir. 2011) ("[T]he reasonableness of the promisee's reliance 'warrants significant consideration in deciding whether enforcement of a promise is necessary to avoid injustice.'" (citation omitted)); *Webb v. Ky. State Univ.*, 468 F. App'x 515, 526 (6th Cir. 2012) (considering whether enforcement would avoid injustice based on the reasonableness of the plaintiff's conduct). Accordingly, Maker's Mark's motion for summary judgment on the promissory estoppel counterclaim is denied.

### b.      Trademark Cancellation (Count V)

Defendants assert a counterclaim for cancellation of Maker's Mark's dripping wax seal trademark, arguing that Maker's Mark has abandoned the wax mark by not enforcing its trademark

rights against third parties who use it, so the wax mark has lost its significance.[10] (Answer & Am. Countercl. 78).  Under Section 1064 of the Lanham Act, a "person who believes that he is or will be damaged" may file a petition to cancel a trademark registration for a variety of reasons, including relevant here—when the trademark "becomes the generic name for the goods or services . . . for which it is registered . . . or has been abandoned" 15 U.S.C. § 1064(3).  Genericide and abandonment are two separate justifications for cancelling a trademark, but the inquiry overlaps where, as here, the challenger contends that because of the trademark owner's failure to enforce its trademark rights, the trademark has become generic.[11]  *See id.* §§ 1064, 1127; *Au Sable River Trading Post, LLC v. Dovetail Sols., Inc.*, No. 16-CV-11207, 2018 WL 2166161, at *8 (E.D. Mich. Mar. 13, 2018) ("[A]lleged abandonment of a mark is relevant only insofar as the failure to police infringing uses causes the mark to lose its distinctiveness."), *aff'd*, 902 F.3d 567 (6th Cir. 2018).  The "test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used" is "[t]he primary significance of the registered mark to the relevant public."  15 U.S.C. § 1064(3).

To support their position that Maker's Mark has abandoned its mark to the extent that it has become generic, Defendants rely solely on images of a variety of other products, including spirits, wine, beer, cigars, and food products, that have wax seals, either dripping or non-dripping. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 24-27; Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 3, DN 149-3).  Maker's Mark argues that few of Defendants' images are relevant to the genericism

---

[10] Defendants' counterclaim initially listed several other of Maker's Mark's wax trademarks. (Answer & Am. Countercl. 78).  Because Maker's Mark only brings the wax mark infringement claim based on U.S. Reg. No. 1,370,465, the single-layer dripping wax seal on a bottle of whiskey, Defendants have conceded that they do not have standing to challenge the other trademarks. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 23 n.8).

[11] A trademark has also been abandoned if the trademark owner stops using it and does not intend to resume.  *See* 15 U.S.C. § 1127.

inquiry because they are unrelated to the goods and services for which the mark is registered.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 23).  Crucially, "a claim of genericide or genericness must be made with regard to a particular type of good or service." *Elliott v. Google, Inc.*, 860 F.3d 1151, 1157, 1159 (9th Cir. 2017) (affirming a district court's evaluation of the "primary significance of the word 'google' to the relevant public . . . as a generic name for internet search engines or as a mark identifying the Google search engine in particular"); *cf. U.S. Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2304 (2020) (explaining that "whether 'Booking.com' is generic turns on whether that term, taken as a whole, signifies to consumers the class of online hotel-reservation services").  Defendants do not directly respond to this argument and do not explain which of the products they cite are relevant to the genericism inquiry.  (*See* Defs.' Resp. Pl.'s Mem. Supp. Mot. Partial Summ. J. 23-27).  The wax mark is registered for whiskey and is categorized in International Class 33, which includes whiskies, spirits, and wines but excludes beers.[12]

Similarly, Maker's Mark points out that only the uses of its trademark—the dripping wax seal rather than a non-dripping wax seal—are relevant to whether it is generic.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 23).  Defendants respond that "every reference to a wax seal is relevant" because in *Diageo North American, Inc. v. W.J. Deutsch & Sons Ltd.*, 283 F. Supp. 3d 182 (S.D.N.Y. 2018), the court "considered products which incorporated individual elements or combinations of elements from plaintiff's claimed trade dress to be relevant."  (Defs.' Resp. Pl.'s Mem. Supp. Mot. Partial Summ. J. 26-27).  *Diageo*, however, was a motion to dismiss, and each

---

[12] The mark consists of a wax-like coating covering the cap of the bottle and trickling down the neck of the bottle in a freeform irregular pattern, Registration No. 1,370,465; Nice Agreement, Twelfth Edition § 33, version 2024 (NCL 12-2024), *U.S. Pat. and Trademark Off.*, https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-current-edition-version-general-remarks# (last visited Feb. 29, 2024).

design element that third parties used was one element of the plaintiff's multi-part registered trade dress, while Maker's Mark's trademark registration Defendants seek to cancel is a *dripping* wax seal, not a straight wax seal.  *See Diageo N. Am., Inc.*, 283 F. Supp. 3d at 187.

Defendants' evidence of the dripping wax trademark's purported genericness includes two companies who used dripping wax on their whiskey bottles, and each responded to Maker's Mark's enforcement communication that it no longer uses dripping wax on whiskey or any other products. (*See* Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 3; Wagner Decl. Ex. D (PageID # 7089-111)). Apart from those two companies, Defendants' list of products contains only eight non-beer alcoholic beverages with dripping wax seals, which cannot reasonably support a finding that the wax mark has been abandoned to the point of genericness.  (*See* Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 3).  "[A] trademark owner has no obligation to sue all possible infringers.  . . . It is reasonable for the trademark owner to object only to those uses which it believes would conflict with its mark while not objecting to other third-party uses."  McCarthy, *supra*, § 17:17 (footnotes omitted).  Further, the eight products do not illuminate "[t]he primary significance of the registered mark to the relevant public . . . ."  15 U.S.C. § 1064(3); (*see* Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 3).  Accordingly, summary judgment is granted in favor of Maker's Mark on Defendants' trademark cancellation claim.  *Au Sable River Trading Post, LLC*, 2018 WL 2166161, at *9 (holding at summary judgment that a mark was not generic where its challenger only offered evidence that the trademark holder did not enforce its rights against three businesses).

## C.   Motions for Leave to Seal

### 1.    Maker's Mark's Motion for Leave to Seal (DN 141)

Maker's Mark moves to file its unredacted memorandum of law in support of its motion for partial summary judgment under seal, along with exhibits D and J attached.  (Pl.'s Mot. Leave

Seal 1, DN 141).    Exhibits D and J contain Defendants' financial information, and the memorandum in support of the motion for partial summary judgment references those figures. (Pl.'s Mot. Leave Seal 1).    Defendants provided the argument to support the motion in their response.   (*See* Defs.' Resp. Pl.'s Mot. Leave Seal 1-5, DN 147).

When determining whether to seal documents, "a court must balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness." *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016).    To overcome that presumption, the proponent must demonstrate:    "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637-38 (6th Cir. 2019) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).    Further, "'[i]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault),' is typically enough to overcome the presumption of access." *Shane Grp., Inc.*, 825 F.3d at 308 (alteration in original) (citing *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 546 (7th Cir. 2002)).    "The fact that a document will reveal 'competitively-sensitive financial and negotiating information' is not an adequate justification for sealing—rather, 'the proponents of closure bear[] the burden of showing that "disclosure will work a clearly defined and serious injury."'" *Kondash*, 767 F. App'x at 639 (quoting *Shane Grp., Inc.*, 825 F.3d at 307).    Thus, the proponent must "demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal." *Shane Grp., Inc.*, 825 F.3d at 308.

Defendants cite legal authority to support the proposition that in some cases, sealing documents that contain financial information is warranted, but they provide little or no explanation about why it is necessary here, leaving the Court to speculate about what "serious injury" they might suffer if the documents are not sealed.  (*See* Defs.' Resp. Pl.'s Mot. Leave Seal 1-4); *Kondash*, 767 F. App'x at 639.  Additionally, Defendants insist that the motion should be granted despite the fact that their financial information has been in the public record since December 2022, when the Court denied its motion to seal the exhibits attached to Defendants' expert's damages calculations.  (Pl.'s Mot. Leave Seal 1; Order 25-28).  Defendants do not explain how the instant information is different from that already in the record, noting only that they "subsequently addressed the Court's concerns," which as discussed in a separate memorandum opinion and order, they did not.  (*See* Defs.' Resp. Pl.'s Mot. Leave Seal 4).  Accordingly, Maker's Mark's motion for leave to seal is denied.

### 2. Defendants' Motion for Leave to Seal (DN 145)

Defendants, pursuant to the parties' agreed protective order, move to file an unredacted version of their Memorandum in Support of their Motion for Summary Judgment (DN 143-1) and attached exhibits 27, 28, and 30 (DN 143-28, 143-29, 143-31) under seal, to protect information about Maker's Mark's market share.  (Defs.' Mot. Leave Seal 1-2, DN 145).  Maker's Mark, after reviewing the information, responds that sealing the documents is not necessary, so the motion is denied.  (Pl.'s Resp. Defs.' Mot. Leave Seal 2, DN 148).

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Defendants' Motion for Reconsideration (DN 129) is **DENIED**.

2.      Plaintiff's Motion for Partial Summary Judgment (DN 140) is **GRANTED IN PART** and **DENIED IN PART**.

3.      Plaintiff's Motion for Leave to File Under Seal (DN 141) is **DENIED**.

4.      Defendants' Motion for Partial Summary Judgment (DN 143) is **DENIED**.

5.      Defendants' Motions for Leave to File Excess Pages (DN 144, 150) are **GRANTED**.

6.      Defendants' Motion for Leave to File Under Seal (DN 145) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

March 5, 2024

cc:     counsel of record