UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00014-GNS-LLK

MAKER'S MARK DISTILLERY, PBC                                    PLAINTIFF

v.

SPALDING GROUP, INC.
d/b/a ENGLISH EMPRISE;
TED'S CIGARS; and
THEODORE JACKSON, JR.                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motions in Limine (DN 204, 205, 208, 211), Defendants' Motions in Limine (DN 215, 209, 195, 214, 201, 202, 203, 196, 212), and Defendants' Motion for Leave to Designate Alternative Witness (DN 179). The motions are ripe for adjudication.

## I.    BACKGROUND

Maker's Mark, PBC ("Plaintiff") sued Defendants Spalding Group, Inc. ("Spalding"), Ted's Cigars ("Ted's"), and Theodore Jackson, individually (collectively, "Defendants") for various trademark and breach of contract claims related to Defendants' use of a red wax design and the Maker's Mark name on cigars made and marketed by Spalding. (Compl. ¶¶ 88-130, DN 1). Defendants asserted counterclaims against Plaintiff, including promissory estoppel and cancellation of several of Plaintiff's USPTO registrations, as well as numerous affirmative defenses. (*See* Answer & Am. Countercl., DN 21). Trial is currently set for January 14, 2025. (Order ¶ 8, DN 173). Before the Court are the following pre-trial motions: (1) Defendants' Motion for Leave to Designate Alternative Expert Witness (DN 179); (2) Plaintiff's Motions in Limine

1

(DN 204, 205, 208, 211); and (3) Defendants Motions in Limine (DN 215, 209, 195, 214, 201, 202, 203, 196, 212).

## II.    JURISDICTION

The Court has subject matter jurisdiction over this matter based upon federal question jurisdiction.  *See* 28 U.S.C. § 1331.  Supplemental jurisdiction exists over the remaining state law claims, as they arise from the same case and controversy.  *See* 28 U.S.C. § 1367(a).

## III.    DISCUSSION

### A.    Defendant's Motion to Designate Alternative Expert Witness

A party's motion to designate an alternative expert witness (i.e., a witness not initially included in the party's expert witness list) after the disclosure deadline requires a modification of the scheduling order.  *See Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) ("A party must disclose his or her expert witnesses by the scheduling-order deadline.  If the party cannot meet that deadline, he or she can move to amend the scheduling order."  (internal citation omitted) (citation omitted)).  "Pursuant to Fed. R. Civ. P. 6(b) and Fed. R. Civ. P. 16(b)(4), upon a timely motion, the Court may amend the [s]cheduling [o]rder 'for good cause and with the judge's consent.'"  *GreenCity Demo, LLC v. Wood Env't & Infrastructure Sols.*, Inc., No. 3:19-CV-146-RGJ, 2022 WL 17553026, at *2 (W.D. Ky. Dec. 9, 2022) (citations omitted).  Furthermore, "[u]nder [Fed. R. Civ. P.] Rule 37(c)(1), when a party fails to provide information or identify a witness as required by Rule 26(a), the party presumptively is not allowed to use that information or witness at trial unless the failure was substantially justified or harmless."  *Id.* at *3 (citing Fed. R. Civ. P. 37(c)).

Defendants move for "leave to supplement their Expert Disclosures to identify Misty L. Decker [("Decker")] . . . as a potential testifying expert at the trial in this matter as an alternative

to [Defendants'] disclosed damages expert witness, Denise Whatley (formerly Denise Dauphin)." (Defs.' Mot. Designate Alt. Expert Witness 1).  Defendants timely disclosed Ms. Whatley as an expert witness in compliance with the Agreed Amended Scheduling Order (DN 87).  (*See* Defs.' Mot. Designate Alt. Expert Witness 3; Pl.'s Mem. Supp. Mot. Strike 1, DN 88-1).  Defendants state that Ms. Whatley "is likely to require open heart surgery in January 2025" and, therefore, "there is a strong possibility that she will be unable to testify at trial." (Defs.' Mot. Designate Alt. Expert Witness 2).  In the event that Ms. Whatley is unable to testify due to her health condition, Defendants seek to substitute her testimony with that of Decker, who "has been involved in this matter since the inception and worked on and reviewed [Ms. Whatley's] Expert Report (i.e., Denise Dauphin Export Report, DN 90).

Plaintiff states that it is "sympathetic to Ms. Whatley's health concerns, and the difficult position it would place Defendants if Ms. Whatley were unable to testify at trial." (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 1, DN 217).  Plaintiff's rebuttal makes four requests. First, Plaintiff asserts that any alternative witness should be limited to testifying about "those facts, methodologies, and conclusions that were expressly disclosed by Ms. Whatley in her reports or at her June 2023 deposition."[1] (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 3).  Defendants agree with this assertion.  (Defs.' Reply Mot. Designate Alt. Witness 2, DN 234).

Second, Plaintiff states it should have the opportunity to depose the alternative witness, and that "Defendants [should be required] to present any alternative expert witness for deposition within seven days" of this Order.  (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 5).  The scope of this deposition would be limited to:

---

[1] Plaintiff agrees that an exception to this limitation would be the alternative witness "testifying to the witness's professional background (including testifying history) and involvement in this matter." (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 3).

> (i)    the witness's qualifications, including all publications authored in the previous ten years;
> (ii)    any cases in which the witness has testified as an expert at trial or by deposition during the past four years;
> (iii)    the witness's compensation in this case; and
> (iv)    the witness's involvement in this case, including in preparing Ms. Whatley's expert reports.

(Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 5). The right to depose "any person who has been identified as an expert whose opinions may be presented at trial" is granted in Fed. R. Civ. P. 26(b)(4)(A). Fed. R. Civ. P. 26(b)(4)(A). Defendants also agree to these conditions. (Defs.' Reply Mot. Designate Alt. Witness 2).

Third, Plaintiff argues that Defendants should be required to "reimburse [Plaintiff] for all costs and attorneys' fees associated with discovery necessitated by the substitution of Defendants' expert." (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 5). In support of this argument, Plaintiff cites two Michigan district court opinions in which a party was ordered to reimburse the opposing party for discovery-related costs associated with a substituting an expert witness. *See Carlson v. Fewins*, No. 1:08-CV-991, 2016 WL 7971764, at *2 (W.D. Mich. Oct. 19, 2016); *Gaines v. Cnty. of Wayne*, No. 20-11186, 2021 WL 5997980, at *3 (E.D. Mich. Dec. 20, 2021). Defendants counterargue that "[g]enerally, in cases in which courts have awarded costs and expenses associated with the substitution of an expert, there has been some evidence of bad faith, fault, or tactical maneuvering on the part of the party making the substitution." (Defs.' Reply Mot. Designate Alt. Witness 4 (alteration in original) (quoting *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-CV-179, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014))). Instead, Defendants assert that the costs associated with deposing the alternative witness should "be the [r]esponsibility of [e]ach [r]espective [p]arty." (Defs.' Reply Mot. Designate Alt. Witness 4). Because Plaintiff has not

alleged any bad faith on behalf of Defendants, its request for costs and fees associated with new discovery regarding the alternative witness is denied.

Fourth, Plaintiff contends that instead of Defendants substituting Decker for Ms. Whatley, a more appropriate alternative expert witness is Mr. Nick Pacitti, who "substantially participate[d]" in the preparation of Ms. Whatley's report.  (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 6 (citing Fed. R. Civ. P. 26(a)(2)(B))).  Plaintiff responds that unlike Mr. Pacitti, Decker "served only as 'reviewer' for Ms. Whatley in this matter."  (Pl.'s Resp. Defs.' Mot. Designate Alt. Expert Witness 6).  Defendants rebut this argument by stating that (1) "Decker and Whatley have worked together for over 17 years, and have similar credentials and experience;" (2) "Decker provided significant work on the [Dauphin] Report[,]" including "work leading up to" and "the conclusions outlined in the Report;" and (3) "Decker also agrees with all conclusions in the Report and in the Deposition of Whatley and agrees to limit her testimony at trial, if needed, to those in the Report and Dauphin Deposition."  (Defs.' Reply Mot. Designate Alt. Witness 6).  From these facts, it is clear that Decker meets the threshold as an acceptable alternative witness under Fed. R. Civ. P. 26(a)(2)(B), as she substantially participated in the preparation of the Dauphin Report.  As such, Plaintiff's request to replace Mr. Pacitti as Defendants' proposed alternative witness is denied.

Defendants have stated adequate justification for the designation of alternative witness. The unforeseeable nature of Ms. Whatley's potential surgery constitutes good cause for Defendants to substitute an adequate alternative witness under Fed. R. Civ. P. 16(b)(4). Furthermore, because Defendants have presented an alternative witness with similar credentials to Ms. Whatley and whose testimony will be limited in scope to that which Ms. Whatley would give (i.e., the Dauphin Report), this substitution is "substantially justified or harmless" under Fed. Civ. P. 37(c).  Therefore, Defendants motion to designate Decker an alternative expert witness is

granted.  Plaintiff shall have the opportunity to depose Decker, and as proposed by Plaintiff and agreed to by Defendants, the scope of this deposition will be limited to:

> (i)      the witness's qualifications, including all publications authored in the previous ten years;
> (ii)     any cases in which the witness has testified as an expert at trial or by deposition during the past four years;
> (iii)    the witness's compensation in this case; and
> (iv)     the witness's involvement in this case, including in preparing Ms. Whatley's expert reports.

### B.    Plaintiff's First Motion in Limine

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'"  *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 (1984)). The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).  "It is often difficult to resolve evidentiary objections outside the context of trial, and Courts will exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible."  *Lotz v. Steak N Shake, Inc.*, No. 5:19-277-DCR, 2021 WL 2270353, at *1 (E.D. Ky. June 3, 2021) (citations omitted).  "Unless the evidence meets this high standard, 'rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'"  *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).  Rulings on motions in limine are preliminary and entirely based on the discretion of the district court, which can later change its rulings.  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

Plaintiff's First Motion in Limine seeks to bar Defendants from introducing any evidence at trial concerning Defendants' purported belief that their use of the "Maker's Mark" name on their cigar product ("Bourbon Cigar") constituted "fair use". (*See* Pl.'s 1st Mot. Lim. 1). Defendants have waived their right to use fair use as an affirmative defense by failing to list it in their answer. (Mem. Op. & Order 9-15, DN 121 (denying Defendants' motion to amend their answer to include a fair use defense)). Furthermore, the Court previously ordered that "all discussion and opinions regarding fair use" from Defendants' expert rebuttal reports be stricken. (Mem. Op. & Order 28, DN 121 (partially granting Plaintiff's motion (DN 88))). Defendants subsequently moved for the Court to reconsider this determination. (Defs.' Mot. Recons., DN 129). The Court denied this motion and reiterated that "because Defendants waived the defense, they are prohibited from eliciting testimony about fair use from their expert or any other witnesses." (Mem. Op. & Order 3, DN 168).

In this motion, Plaintiff seeks to bar Defendants from presenting any evidence

(i)     concerning Defendants' alleged belief that
        (a)     they could use the Maker's Mark name on the "Bourbon Cigar" because they were identifying Maker's Mark Bourbon as an "ingredient" or
        (b)     their use of the Maker's Mark name was allowed under the fair use doctrine;
(ii)    suggesting that they relied on the advice of counsel when they chose to use the Maker's Mark name on the "Bourbon Cigar"; or
(iii)   otherwise mentioning fair use.

(Pl.'s 1st Mot. Lim. 1). Each of these arguments will be addressed below.

Concerning (i)(a), Plaintiff wishes to preclude Defendants from asserting they were simply identifying Maker's Mark Bourbon as an ingredient when labeling their product as "Seasoned with Maker's Mark." (Pl.'s Mem. Supp. 1st Mot. Lim 5, DN 204-1; Defs.' Resp. Pl.'s 1st Mot. Lim. 2, DN 225). Plaintiff seems to argue that this defense would be tantamount to asserting a fair use affirmative defense. In contrast, Plaintiff's argument in (i)(b) explicitly seeks to bar Defendants

from asserting that their actions were justified under the fair use doctrine.  In addition to arguing that the fair use affirmative defense has been waived, Plaintiffs contend that the doctrine "has no relevance to either [1] whether a consumer would believe Defendants' use of the mark is in a 'non-trademark' way," or [2] the "likelihood of confusion" factors under *Frisch's Restaurants Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982).  (Pl.'s Mem. Supp. Mot. Lim. 1 6-9).

Defendants respond by stating that in order for Plaintiff to prove that Defendants "deliberately or recklessly infringed or diluted [Plaintiff's] trademark rights," it will need to present evidence as to their intent or state of mind in using the Maker's Mark name.  (Defs.' Resp. Pl.'s 1st Mot. Lim. 3).  In addition to their state of mind being relevant to establishing that their conduct constituted a "non-trademark use," Defendants argue that it is directly related to the "intent" factor in the likelihood of confusion analysis under *Frisch's*.  (Defs.' Resp. Pl.'s 1st Mot. Lim. 3).  As such, Defendants argue they should be able to present evidence as to their state of mind in using the label "Seasoned with Maker's Mark."  (Defs.' Resp. Pl.'s 1st Mot. Lim. 3).

To this aim, Defendants assert that they "used the phrase because they [1] legitimately believed the phrase was protected by the fair use doctrine and [2] believed they had the right to truthfully tell their customers that Maker's Mark bourbon was an ingredient in their Bourbon Cigars."  (Defs.' Resp. Pl.'s 1st Mot. Lim. 2).  Clearly, Defendants are barred from using this first justification at trial, as they have waived the fair use doctrine as an affirmative defense.  (*See* Mem. Op. & Order 9-15, DN 121).  Contrary to Plaintiff's argument, however, Defendant's reliance that the "Seasoned with Maker's Mark" was to inform consumers as to the product's ingredients is distinct from a fair use defense.  In a previous order, the Court stated that although Defendants are barred from asserting a fair use defense, this "does not bar them from arguing that their use of the

8

name mark was a non-trademark use." (Mem. Op. & Order 13, DN 168). Recognizing that "non-trademark use and fair use are nearly identical substantively," the different parties bear the burden of proof: "the plaintiff carries the burden of proving that the defendant used the mark in a 'trademark way,' while fair use is an affirmative defense for which the defendant carries the burden." (Mem. Op. & Order 13, DN 168 (citations omitted)).

Plaintiff's claims directly put the Defendants' intent and state of mind at issue. Plaintiff alleges that Defendants engaged in "willful, intentional, and deliberate acts in violation of the Lanham Act." (Compl. 31, DN 1). Defendants' counterargument of non-trademark use would encompass evidence that its use of Plaintiff's word mark was a descriptive identification of the ingredients in the product cigar. (Defs.' Resp. Pl.'s 1st Mot. Lim. 7 ("Given the stakes, it is critical that Ted's Cigars be able to defend against Maker's Mark's willfulness allegations.")). Furthermore, Plaintiff must prove that Defendants' actions created a likelihood of confusion for consumers— the analysis of which expressly involves presenting evidence of Defendants' intent (i.e., the "intent" factor under *Frisch's*). Plaintiff contends that Defendants misconstrue *Frisch's* intent factor, arguing it represents "not whether Defendants believed their use of the Maker's Mark name was protected by the fair use defense, but whether Defendants intentionally used the Maker's Mark name on their cigars to create confusion." (Pl.'s Mem. Supp. 1st Mot. Lim. 8 (citation omitted)). Defendants point out that "[Plaintiff] put [Defendants]' intent at issue and they will simply contend at trial that contrary to Maker's Mark's allegations, the intent factor weighs in its favor or is otherwise neutral because Ted's Cigars did not intend to create confusion or intend to mislead and deceive the public." (Defs.' Resp. Pl.'s 1st Mot. Lim. 10).

Defendants are correct that they should be allowed to present evidence of their intent at trial. To reiterate, however, Defendants shall not make mention of or solicit any testimony as it

relates to the "fair use doctrine" or the term "fair use."  Therefore, Plaintiff's motion is granted in part and denied in part.  Defendants may present evidence regarding their lack of intent to use the term "Maker's Mark" in a trade infringing way, and this includes evidence of using the term "to truthfully describe an ingredient of the Bourbon Cigar".  Defendants shall not base their intent evidence on nor make any reference to the fair use doctrine.  Regarding reliance on the advice of counsel, Defendants assert they have "not asserted advice of counsel as a defense and [do] not intend to do so at trial."  (Defs.' Resp. Pl.'s 1st Mot. Lim. 4 n.1).  Defendants do state that "representatives of the company have testified that the company relied upon Ted Jackson [("Jackson")], who is an attorney, in forming the opinions that their use of the phrase 'Seasoned with Maker's Mark' on a secondary cigar band was based on the belief that such actions were protected by the fair use doctrine." (Defs.' Resp. Pl.'s 1st Mot. Lim. 4 n.1).  As mentioned above, Defendants are permitted to present evidence as to their intent; however, this shall not include any assertion of "fair use."  To the extent that Defendants seek to present evidence of the company's reliance on the words of Jackson's belief that "such actions were protected by the fair use doctrine," they are barred from doing so.

### C.     Plaintiff's Second Motion in Limine

Plaintiff's Second Motion in Limine seeks to exclude Defendants from presenting evidence that was not timely disclosed, specifically:   "(i) excluding Defendants from presenting Kurt Owings [("Owings")] as a witness at trial and (ii) excluding Defendants' trial exhibits that have been identified as DX 241, DX285-DX289, and DX292-DX97 and Defendants' demonstrative exhibits that have been marked as DX-DEM17 and DX-DEM19a through DX-DEM19e."  (Pl.'s 2d Mot. Lim. 1, DN 205).  For the purposes of this motion, it is important to note that the Court's Initial Scheduling Order stated:  "A witness not previously disclosed under Fed. R. Civ. P.

26(a)(1)(A)(i), or an exhibit which has not been provided under Fed. R. Civ. P. 26(a)(1)(A)(ii), shall not be allowed on the final witness and exhibit list, unless the failure was substantially justified or is harmless." (Scheduling Order 1, DN 40). The Sixth Circuit provides the following five factors to determine whether a party's late disclosure is "substantially justified or harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (citations omitted). "The burden is on the potentially sanctioned party [i.e., Defendants, in this instance] to prove harmlessness." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) (citing *Vance by and through Hammons v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)).

### 1.    *Disclosure of Owings at a Fact Witness*

Defendants first identified Owings as a fact witness in their October 30, 2024, trial witness list. (*See* Ted's Cigars Witness List, DN 181). Plaintiff argues that "Defendants' failure to identify Mr. Owings as a potential trial witness in the disclosures they served in October 2019 and supplemented in April 2020 cannot be justified." (Pl.'s Mem. Supp. 2d Mot. Lim. 1, DN 205-1). Plaintiff's motion regarding the exclusion of Owings rests on five arguments, mirroring the five *Howe* factors: (1) they did not have a reason to know of Defendants' intention to use Owings as a trial witness; (2) they have no ability to cure the late disclosure, as the deadlines for deposition and additional information requests has passed; (3) allowing Plaintiff the ability to cure "would require a delay of the trial"; (4) it is unclear how Owing's testimony would be important and noncumulative to Defendants' case; and (5) Defendants cannot "provide [a] explanation for why they failed to disclose Mr. Owings as a potential trial witness . . . at any time before the close of fact discovery in July 2021." (Pl.'s Mem. Supp. 2d Mot. Lim. 8-10).

11

Defendants rebut Plaintiff's position by stating that Owings was actually timely disclosed as a potential fact witness and Owings' inclusion on Defendant's witness list does not unfairly prejudice Plaintiff.  (Defs.' Resp. Pl.'s 2d Mot. Lim. 4-8, DN 218).  Defendants point to a letter dated November 25, 2020, in which an attorney for Plaintiff acknowledged that "Owings was a 'witness who likely possess[es] knowledge' of highly relevant topics."  (Defs.' Resp. Pl.'s 2d Mot. Lim. 2 (citing Pl.'s Mot. Compel Ex. K, at 3, DN 74-13)).  Additionally, Defendants contend that because Owings was identified in several depositions as one of four employees of Ted's Cigars and a "main person at the company," his inclusion on the trial witness list should not have come as a surprise to Plaintiff.  (Defs.' Resp. Pl.'s 2d Mot. Lim. 6).  Moreover, Defendants "agree[] to submit Owings to a deposition at the parties' convenience for an in person or virtual deposition."  (Defs.' Resp. Pl.'s 2d Mot. Lim. 7).  Defendants argue that "by allowing Maker's Mark to depose Owings, any surprise can be 'cured[]' [and that] [t]he evidence would not 'disrupt the trial' as all parties have ample time to prepare."  (Defs.' Resp. Pl.'s 2d Mot. Lim. 8).

The Court agrees with Defendants that the identification of Owings as a fact witness should not have come as an undue surprise to Plaintiff.  Plaintiff's counsel's acknowledgment that Owings was "likely to have knowledge concerning Defendants' design of their products [] and the packaging, distribution, advertising, promotion, and sale of the 'Bourbon Cigar.'"  (Pl.'s Mot. Compel Ex. K, at 3).  Owings' availability for deposition can cure the lack of his disclosure. Defendants have acknowledged that the inclusion of Owings as a witness is important to their case, as he is only one of four employees of Ted's Cigars and performs integral functions within the organization.  (Defs.' Resp. Pl.'s 2d Mot. Lim. 6).  Although Defendants have not provided much clarity regarding why Owings was absent from the witness list prior to October 30, 2024, the remaining four factors from *Howe* weigh in favor of finding his late inclusion as "substantially

justified or harmless." *Howe*, 801 F.3d at 747-48.  Therefore, Plaintiff's motion to bar Defendants from presenting Owings as a fact witness at trial is denied, and Plaintiff shall have the opportunity to depose Owings prior to trial.

### 2.    *Disclosure of Exhibits*

Next, Plaintiff seeks to bar Defendants from introducing several trial and demonstrative exhibits that were first brought to Plaintiff's attention on October 30, 2024 (i.e., the deadline to file trial exhibits lists).  (*See* Defs.' Exhibit List, DN 182-1; Defs.' Demonstrative List, DN 182-2).  In these exhibits and demonstratives, Defendants present information related to the revenue figures of Ted's Cigars, delineated by individual product (DX241, DX285-289, DX292-297, DX-DEM17, and DX-DEM19a-19e).  Defendants do not dispute that these exhibits and demonstratives contain new information related to their revenue accounts, broken down by individual product.[2] Previously, Defendants represented that they did not possess revenue figures broken down by individual product; rather, that "all [Bourbon Cigar revenue figures] flow into [] the one revenue account."  (Pl.'s Mem. Supp. 2d Mot. Lim. 4 (citing Lindsey Dep. 81:4-16, Oct. 19, 2021, DN 205-8)).  In sum, Plaintiff asserts that:

> Defendants claimed for years . . . that their accounting records did not differentiate between the different varieties of the Bourbon Cigar that were sold and, instead, lumped all varieties under a single line-item reflecting the sales revenue from the Bourbon Cigars. Then, more than three years after the close of fact discovery and mere hours before the deadline for the parties to exchange trial exhibits, Defendants produced multiple documents purporting to show the sales revenue that was attributable to the different variations since 2021, including many that appear to be reports from Defendants' accounting software.

---

[2] The demonstrative exhibits (DX-DEM17 and DXDEM19a-e) appear to provide charts of "Total Bourbon Cigars Sold."  (*See* Defs.' Trial Demonstratives, DN 205-10).  Although these graphs do not contain information regarding individual product revenue, the charts indicate that the data used to produce them utilized several of the exhibits at issue here, including DX289 and DX292-297. Because of these demonstrative exhibits incorporates data from the untimely disclosed exhibits, they will be considered extensions of those exhibits.  Thus, exclusion of DX289 and DX292-297 would necessitate the exclusion of DX-DEM17 and DXDEM19a-e.

(Pl.'s Mem. Supp. 2d Mot. Lim. 11).  Plaintiff's argument for excluding the eighteen new exhibits and demonstratives again mirrors the *Howe* factors:  (1) Plaintiff could not have foreseen the disclosure of these financial records, (2) Plaintiff has no way to remedy their late production, (3) the introduction of the evidence would disrupt trial, (4) exclusion is appropriate even the evidence is important to Defendants' case, and (5) Defendants cannot offer an explanation for the last-minute disclosure.  (Pl.'s Mem. Supp. 2d Mot. Lim. 11-17).

Defendants respond that:  (1) both parties have "continued to produce documents after" the conclusion of fact discovery on July 14, 2021; (2) Plaintiff "regularly requested that [Defendants] continue to supplement [their] discovery[;]" and (3) Plaintiff knew that Defendants were "in the process of upgrading its financial and accounting software."  (Defs.' Resp. Pl.'s 2d Mot. Lim. 8-10).  None of these arguments are well-taken.  Under the *Howe* factors, even if both parties were in the process of supplementing their discovery records, Plaintiff had no reason to know that Defendants would produce new evidence contradicting a position they had long held—that they did not possess accounts of revenue delineated by individual product.  Furthermore, Plaintiffs do not have adequate opportunity to cure this lack of disclosure, as they have relied on the previous financial data since the close of discovery.  Thus, as Plaintiff claims, without "conducting [additional] discovery . . . . [Plaintiff] would be forced to go to trial without any understanding of how these records were created, the factual bases for the financial information reflected in the reports, or how Defendants intend to use them at trial."  (Pl.'s Mem. Supp. 2d Mot. Lim. 12).

For the reasons stated above, Plaintiff's motion to exclude the untimely filed exhibits and demonstratives is granted.  The following exhibits and demonstratives shall not be used at trial: DX241, DX285-289, DX292-297, DX-DEM17, and DX-DEM19a-19e.

D.    **Plaintiff's Third Motion in Limine**

Plaintiff's Third Motion in Limine seeks to exclude from trial the following defense exhibits:  DX083-DX086, DX087-DX090, DX147, DX164, DX181, DX185, and DX202.  (Pl.'s 3d Mot. Lim., DN 208).  These exhibits encompass "screenshots of images and webpages allegedly showing third-party uses of wax designs on alcohol and other products."  (Pl.'s 3d Mot. Lim. 1). Plaintiff argues the screenshots should be excluded because (1) the screenshots cannot be authenticated, as required under Fed. R. Evid. 901(a) and (2) under Fed. R. Evid. 402, as they are "not relevant to any issues in this case."  (Pl.'s 3d Mot. Lim. 1).

1.    *Relevance*

Beginning with relevance, Plaintiff asserts that "[v]ery few of Defendants' 'wax use' screenshots have any relevance to the strength of Maker's Mark's dripping wax design because the overwhelming majority of the examples Defendants have identified include either products with non-dripping wax designs or items from different product categories (such as other spirits, wine, beer, etc.)."  (Pl.'s 3d Mot. Lim. 9).  This argument hinges on the notion that the screenshots of third-party wax seals are only relevant in determine the "strength of [the Maker's Mark] mark." (Pl.'s 3d Mot. Lim. 8).  Defendant disagrees, positing that "evidence of third-party wax use is also directly relevant to (a) Ted's Cigars' good faith defense, (b) rebutting Maker's Mark's willfulness claim, and (c) supporting its good faith intent in the likelihood of confusion analysis."  (Defs.' Resp. Pl.'s 3d Mot. Lim. 13, DN 222).

Evidence is generally admissible if it is relevant.  *See* Fed. R. Evid. 402.  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  As mentioned previously with Plaintiff's First Motion in Limine, Defendants may present evidence

regarding their intent or state of mind in producing the cigars at issue. Evidence of Defendants' intent is relevant to rebut Plaintiff's contention that their conduct was willful or that they had an intent to confuse consumers. Here, Defendants seek to present evidence of "third-party wax use" in efforts to justify their own "straight wax design and [] reasoning for continuing to use the straight wax design once Maker's Mark objected to such use and/or filed the present lawsuit." Accordingly, Defendants have sufficiently shown that this evidence is relevant. The existence of extensive third-party wax use does have the tendency to support the alleged fact that Defendants did not intentionally violate Plaintiff's trademark, which is of consequence, as Defendants' intent is directly at issue. Therefore, Plaintiff's motion to exclude the screenshots as not relevant fails.

### 2.    *Authentication*

Plaintiff contends that because the photos are "screenshots" with "typed or copied [] web address[es] (i.e., URL[s])" and not "authenticated printouts of the individual webpages," they cannot be properly authenticated. (Pl.'s 3d Mot. Lim. 2). This is because (1) "there is no guarantee that the web addresses were accurately reported for each product[,]" (2) "many of the web addresses are no longer valid or point to image files found on the Internet and do not provide any information about the website where the product image originally appeared[,]" and [(3) "there are no printed time stamps on the face of these documents establishing when the images were captured from the internet." (Pl.'s 3d Mot. Lim. 2-3). Plaintiff states that "the authentication requirements of Rule 901(a) are satisfied when the proponent provides an affidavit or testimony of a witness and the Internet printout or screenshot includes 'circumstantial indicia of authenticity,' such as the webpage URL and the date on which it was printed." (Pl.'s 3d Mot. Lim. 6 (citing *Foreword Magazine, Inc. v. OverDrive, Inc.*, 1:10-cv-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011))).

Defendants indicate that they have "multiple witnesses who have knowledge of the exhibits, including specifically, knowledge as to the images of third-party products using some form of wax seals depicted within the exhibits[,] [and] [a]ny of these witnesses can present testimony at trial sufficient to authenticate the exhibits under Rule 901." (Defs.' Resp. Pl.'s 3d Mot. Lim. 2).  According to Defendants, "[e]xhibits reflecting information from commercial websites must be authenticated by one of the methods allowed by Rule 901, including testimony from a witness with personal knowledge, expert testimony, *or* reference to distinctive characteristics. (Defs.' Resp. Pl.'s 3d Mot. Lim. 9 (emphasis added) (citing *Foreword Mag.*, 2011 WL 5169384 at *3 )).  Defendants state that their witnesses "have direct personal knowledge of [1] the online searching that was performed which resulted in finding the collected images/exhibits, [2] the products that appear in the images/exhibits, and [3] whether the products were being offered for sale online." (Defs.' Resp. Pl.'s 3d Mot. Lim. 12).

Plaintiff's objection based on improper authentication is premature.  To authenticate the images, Defendants "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Defendants correctly note that "evidence may be authenticated in many ways," and this includes through a witness with personal knowledge of "distinctive characteristics of the item, taken together with all the circumstances." (Defs.' Resp. Pl.'s 3d Mot. Lim. 10); Fed. R. Evid. 901(b)(4).  The Court will not exclude these the exhibits at this time, and their admissibility will be contingent upon proper authentication at trial.  Plaintiff's motion is therefore denied.

### E.    Plaintiff's Fourth Motion in Limine

Plaintiff's Fourth Motion in Limine seeks to bar Defendants from "mischaracterizing" Plaintiff's previously-owned trademark, U.S. Registration No. 2,690,813 ("813 Registration").

(Pl.'s 4th Mot. Lim. 1, DN 211).  Plaintiff was issued the 813 Registration in February 2003, and its description was as follows:

> THE DRAWING IS LINED FOR THE COLOR RED AS APPLIED TO THE SEAL THAT EXTENDS DOWN THE NECK OF A BOTTLE.
>
> THE MARK CONSISTS OF THE COLOR RED AS APPLIED TO THE SEAL THAT EXTENDS DOWN THE NECK OF A BOTTLE. THE MATTER SHOWN IN THE DRAWING IS BROKEN LINES SERVES ONLY TO SHOW POSITIONING OF THE MARK AND NO CLAIM IS MADE TO IT.

(Def.'s Resp. Pl.'s 4th Mot. Lim. Ex. 1, at 6, DN 224-1).  Following two lawsuits between Plaintiff and the liquor company Diageo North America, Inc. ("Diageo"),[3] Diageo filed a petition to the Trademark Trial and Appeal Board ("TTAB") for the cancellation of the 813 Registration.  (*See* Countercl. Ex. 25, DN 8-25).  Plaintiff voluntarily surrendered the 813 Registration on September 5, 2014, upon which the TTAB entered judgment against Plaintiff and cancelled the registration. (Countercl. Ex. 27, at 1, DN 8-27).

Plaintiff refers to the 813 Registration as the "Color Red Trademark Registration," contending that it "applied only to the color red and did not make any claim to the positioning of the wax (whether dripping or otherwise)."  (Pl.'s 4th Mot. Lim. 2).  Defendants rebut this contention, arguing that the 813 Registration incorporates a straight wax seal.  (Defs.' Resp. Pl.'s 4th Mot. Lim. 5-6, DN 224) ("Contrary to Maker's Mark's current position, the description does not claim the color red standing alone . . . . Rather, the registration claims the color red as applied

---

[3] In the first case, *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F. Supp. 2d 671 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012) ("*Maker's Mark I*"), this Court determined that Diageo infringed on Plaintiff's registered trademark for a red dripping wax seal. *Id.* at 680 (Trademark Reg. No. 1,360,465, DN 1-3 ("465 Registration")).  While this case was pending, Plaintiff filed an additional suit against Diageo, *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, No. 3:09-cv-00718-JGH ("*Maker's Mark II*"), claiming Diageo infringed both the 465 and the 813 Registrations.  (Answer & Am. Countercl. Ex. 26, DN 21-26).  Plaintiff voluntarily dismissed its claim in *Maker's Mark II*.  (Answer & Am. Countercl. Ex. 27, DN 21-27).

to a seal extending down the neck of a bottle."). Plaintiff believes that characterizing the 813 Trademark as a registration "for a straight, non-dripping wax design would be baseless and unfairly prejudicial to [Plaintiff]." (Pl.'s 4th Mot. Lim. 3-4). This argument, however, does not comport with the explicit language of the 813 Registration. As Defendants posit, "[i]f there is no seal extending down the neck of a bottle, there is nothing to which to apply the claimed color red." (Defs.' Resp. Pl.'s 4th Mot. Lim. 6).

Defendants cite the Trademark Manual of Examining Procedure ("TEMP") to argue that Plaintiff "may not seek to register the color of the wording or design apart from the words or designs themselves if the color does not create a separate commercial impression." (Defs.' Resp. Pl.'s 4th Mot. Lim. 6 (quoting TEMP § 1202.05(c))). This point is well-taken. Unlike the 465 Registration, which specifically applies to a "wax-like coating covering the cap of the bottle and trickling down the neck of the bottle in a freeform irregular pattern," the 813 Registration expressly does not make a claim to the positioning of the mark. (Trademark Reg. No. 1,360,465). As such, the 813 Registration did arguably "cover[] any red seal extending down the neck of a bottle, including dripping and straight seals." (Defs.' Resp. Pl.'s 4th Mot. Lim. 6). As mentioned previously, Defendants may present evidence related to their state of mind and intent in designing the Bourbon Cigar. Defendants' belief that Plaintiff "relinquished rights to [a straight wax seal] trademark [is] highly relevant to the element of intent." (Defs.' Resp. Pl.'s 4th Mot. Lim. 8). Therefore, Defendants will not be barred from presenting evidence related to the 813 Registration.

Defendants also argue that the TTAB judgment against Plaintiff precludes Plaintiff from "claim[ing] that the scope of the []813 Registration did not describe rights in a straight red wax seal or that it did not relinquish such rights." (Defs.' Resp. Pl.'s 4th Mot. Lim. 6 (citing *B & B Hardware, Inc. v. Hargis Industries*, 575 U.S. 138, 160 (2015), in which the U.S. Supreme Court

19

held that TTAB decisions can have the effect of issue preclusion in subsequent judicial proceedings)).  Although Defendants correctly state the holding from *B & B Hardware*, it is not applicable in the current case.  The TTAB's judgment against Plaintiff was the result of Plaintiff's voluntary withdrawal of the 813 Registration.  (*See* Countercl. Ex. 27, at 1).  As such, no issues that Diageo claimed in its cancellation petition were actually litigated and thus were not a necessary part of the TTAB's final judgment.  *See B & B Hardware*, 575 U.S. at 160 (holding that "[s]o long as the other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply.").  In this instance, it appears that because Plaintiff withdrew its registration before a final determination was made, the ordinary elements of issue preclusion have not been met.  Thus, Plaintiff is not barred from making arguments at trial regarding the scope of the 813 Registration. For the purposes of this motion in limine, neither party is barred at this time from presenting evidence related to the 813 Registration.  Plaintiff's motion is therefore denied.

### F.    **Defendants' First Motion in Limine**

Defendants' First Motion in Limine seeks to exclude evidence "consisting of social media posts which [Plaintiff] purports to be evidence of actual confusion."  (Defs.' 1st Mot. Lim. 1, DN 215).[4]  Defendants argue that (1) the social media posts are inadmissible hearsay; (2) some of the posts do not depict the infringing product and are thus irrelevant; (3) neither the use of the "#makersmarkcigar" hashtag nor reference to the "Maker's Mark cigar" demonstrates actual

---

[4]  The evidence at issue comprises the following:  PX-159, PX-179-292, and Plaintiff's Demonstrative No. 4; these exhibits "consist of social media screenshots referencing the term '#makersmarkcigar' (or similar hashtag terms) or referencing a 'Maker's Mark cigar' in some way."  (Defs.' 1st Mot. Lim. 2).

confusion; and (4) the posts should be excluded as unfairly prejudicial under Fed. R. Evid. 403. (Defs.' 1st Mot. Lim. 2, 4-5, 14).

Regarding Defendants' hearsay argument, Plaintiff asserts that the social media posts are not hearsay because they are not being used to prove the truth of the contents within the posts. (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 12, DN 228).[5]  Rather, Plaintiff seeks to offer these exhibits "to show that the postings occurred and to evidence the then-present state of mind of the posters."  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 12).  To the extent that Plaintiff intends to use the posts for these purposes, the exhibits do not constitute hearsay.  Hearsay, in part, is a statement that "a party offers to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  Plaintiff does not intend to use the photos to demonstrate that posters actually possessed a "Maker's Mark cigar"— to the contrary, Plaintiff wishes to use the posts to argue that consumers are confused by the product they are purchasing.  *See Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 738 (6th Cir. 2012) (citing Fed. R. Evid. 803(3)) (stating that evidence of customer calls was not hearsay when presented for the purposes of establishing confusion, as it was "introduced merely to show that the conversations occurred and the state of mind of the declarants.").  Therefore, the social media posts do not constitute hearsay and Defendants' hearsay argument fails.

Second, Defendants complain that the social media posts which do not depict the Bourbon Cigar are irrelevant to establishing consumer confusion.  (Defs.' 1st Mot. Lim. 4).  As mentioned previously, "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

---

[5] In DN 228, Plaintiff responds collectively to Defendants' First, Second, and Fourth Motions in Limine, as they all address evidence of actual confusion.

Fed. R. Evid. 401.  Plaintiff posits that the social media posts "showing the prior licensed Maker's Mark Cigar . . . which all include the hashtag 'makersmarkcigar,' are relevant to confusion as showing that consumers and retailers have referred to the prior licensed Maker's Mark Cigar and the unlicensed Bourbon Cigar in the same way."  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 10). This argument satisfies the definition of relevance under Fed. R. Evid. 401.  Photos showing that consumers referred to the previously licensed cigar and the Bourbon Cigar with the same identifying hashtag would make the fact of consumer confusion more likely.  Defendants, of course, will be permitted to contest the weight of this evidence at trial.  As such, Defendants' argument that these posts are irrelevant fails as well.

Defendants also argue in the "irrelevance" section of their motion that two additional exhibits should be excluded.  One exhibit is PX-202, which "just shows a picture of a Bourbon Cigar with a bottle of Maker's Mark."  (Defs.' 1st Mot. Lim. 4).  The other exhibit, PX-292, "Exhibit PX-292 is an *undated* social media post where the poster indicates that he is 'having a cigar made by Maker's Mark.'"  (Defs.' 1st Mot. Lim. 4).  Defendants argue that because "the identity of the specific cigar being smoked cannot be identified from the picture," that the exhibit should be excluded as irrelevant.  (Defs.' 1st Mot. Lim. 4).  For PX-202, Plaintiff argues that the post demonstrates retailer confusion, and "evidence of actual confusion on the part of retailers is relevant to the actual confusion analysis."  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 9 (citing *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992))).  Plaintiff has established that this post is relevant under Fed. R. Evid. 401, and Defendants are permitted to contest the probative value of the exhibit at trial.  Regarding PX-292, Plaintiff argues that "multiple indicia of the Bourbon Cigar can be seen in the photo, including the black foil secondary band that states "SEASONED WITH MAKER'S MARK®" and the red emblem on the primary cigar band."

(Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 10). To the extent that this exhibit does include indicia sufficient to identify the cigar as The Bourbon Cigar, the exhibit is relevant. At this time, the Court will not exclude PX-202 nor PX-292 from trial on the grounds of relevance.

Third, Defendants claim that neither the use of the "#makersmarkcigar" hashtag nor reference to the "Maker's Mark cigar" demonstrates actual confusion. Defendants contend that because consumers are aware that the Bourbon Cigars are "Seasoned with Maker's Mark,", "it is reasonable to infer that the posters are not referring to a Maker's Mark cigar because they are confused, but because the cigars are truly Maker's Mark cigars – or cigars made with Maker's Mark." (Defs.' 1st Mot. Lim. 14). In essence, Defendants argue that the social media posts do not demonstrate actual confusion because they do not explicitly show that consumers are confused, or, if they are confused, the source of the confusion is unknown. (Defs.' 1st Mot. Lim. 8-9). Although it is true there may be alternative explanations for the posters' use of the "#makersmarkcigar" hashtag and reference to the "Maker's Mark cigar" other than consumer confusion, this argument goes to weight of the evidence, and not to relevance. Plaintiff states that "the sufficiency of [its] confusion evidence goes to how much weight will be given to it at trial, not whether it is admissible. (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 8 (citing *AWGI, L.L.C. v. Atlas Trucking Co.*, 17-cv-12131, 2019 WL 7288766, at *5 (E.D. Mich. Dec. 30, 2019))). Plaintiff has sufficiently demonstrated relevance, and the Court will not, at this time, exclude the social media evidence on the basis alternative explanations may explain the posters' language.

Lastly, Defendants submit that the social media posts should be excluded under Fed. R. Evid. 403 because their probative value is substantially outweighed by their prejudicial nature. (Defs.' 1st Mot. Lim. 14). Defendants argue that "[j]urors, if not given proper context, are likely to be persuaded into believing that these many social media posts do show confusion, when there

is no real evidence that the posters were confused at all." (Defs.' 1st Mot. Lim. 14). Again, Plaintiff has sufficiently demonstrated that these social media posts are relevant to actual confusion. Jurors can determine the weight of these exhibits, and Defendants have the ability to propose alternative interpretations. At this time, Defendants have not shown that danger of unfair prejudice or misleading the jury substantially outweighs the exhibits' probative value. *See* Fed. R. Evid. 403. Defendants' First Motion in Limine, therefore, is denied.

G.    **Defendants' Second Motion in Limine**

Defendants' Second Motion in Limine seeks to exclude "screenshots of retail websites or stores depicting the Bourbon Cigar next to bottles of Maker's Mark, and/or photographs of Bourbon Cigars displayed by retailers next to labels, signs, or SKU's referring to the cigar as a 'Maker's Mark cigar'." (Defs.' 2d Mot. Lim. 2, DN 209).[6] Defendants contend that (1) the evidence is "not relevant to the extent that it reflects the actions of downstream retailers[;]" (2) it "unfairly prejudice[s] [Defendants] by leading the jury to impute secondary liability based on the alleged infringing acts of third parties[;]" (3) it is inadmissible hearsay; and (4) it has not been properly authenticated. (Defs.' 2d Mot. Lim. 5, 7-9).[7, 8]

---

[6] The evidence at issue comprises the following: PX-158, PX-160-165, PX-168-178, PX-185-202, PX-205, PX-216-218, PX-243, and Plaintiff's Demonstrative No. 4; these exhibits "consist[] of photographs or social media posts from downstream retail or online retail outlets . . ." (Defs.' 2d Mot. Lim. 2).

[7] Defendants state that the following exhibits should be excluded as duplicative, as they contain the same images presented in previous exhibits: PX-185, PX-185, PX-199, PX-218, and PX-163. (Defs.' 2d Mot. Lim. 2 n.1-3). Plaintiff states that these exhibits "are not duplicates; rather, they are either different posts by the same account or posts on different social media platforms by the same account." (Pl.'s Resp. Defs.' 1st, 2d & 4th Mots. Lim. 11). To the extent that the images are not duplicates, the Court declines to exclude them from evidence at this time. Defendants may restate their objection at trial if there is still disagreement as to the exhibits' duplicative nature of the exhibits.

[8] Defendants also state that one exhibit, PX-164, "contains images of the officially licensed Maker's Mark cigar sold prior to the expiration of the license agreement" and is irrelevant. (Defs.' 2d Mot. Lim. 2 n.3). Plaintiff has indicated that it "does not seek to introduce . . . PX164 into

First, regarding the "actions of downstream retailers" being irrelevant in establishing actual confusion, Defendants argue that Plaintiff must "lay a foundation that the alleged confusion arguably relates to the defendant's use of the plaintiff's mark (or trade dress)." (Defs.' 2d Mot. Lim. 5 (citing *Innovation Ventures, LLC v. NVE, Inc.*, 90 F. Supp. 3d 703, 726 (E.D. Mich. 2015))). Defendants argue the evidence must be excluded because "none of this alleged confusion evidence actually tells the jury anything about what is causing the confusion (assuming it exists at all)." (Defs.' 2d Mot. Lim. 6). Plaintiff responds that "evidence of actual confusion on the part of retailers [is] relevant to the actual confusion analysis." (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 9-10 (citing *Americana Trading*, 966 F.2d at 1289)). Plaintiff also cites the treatise *Trademarks and Unfair Competition*, which states that "[i]f a professional, such as a commercial buyer, is confused, it is proof of the likely confusion of consumers, who are less likely to detect differences in marks." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:100 (5th ed. Nov. 2024 update). Plaintiff has sufficiently established that evidence of retailer confusion is relevant in determining actual confusion on the part of consumers.

Second, Defendants argue the downstream retailer evidence is unduly prejudicial. Defendants contend that these exhibits could lead the jury to incorrectly "impute secondary liability based on the alleged infringing acts of third parties which [Defendants] did not intentionally induce and of which [Defendants] had no knowledge." (Defs.' 2d Mot. Lim. 7). Defendants cite several cases in which contributory infringement could not be found against defendants absent evidence that the defendants intentionally induced third-party retailers to "infringe on the owner's mark." *See Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454,

---

evidence." (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 3 n.1). As such, the Court declines to rule on the exclusion of this exhibit.

466 (6th Cir. 2022); *see also Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854-55 (1982).

Defendants state that "[a]ctual confusion evidence is accorded extraordinary weight" in determining the likelihood of confusion for consumers, and these exhibits present the potential that jurors will be "more likely to find that there is a likelihood of confusion based on actions not attributed to [Defendants]." (Defs.' 2d Mot. Lim. 8 (citing *Playboy Enters. v. Netscape Commc'ns*, 354 F.3d 1020, 1026 (9th Cir. 2004))). This potential confusion, however, does not "substantially outweigh" the probative value of the exhibits towards establishing actual confusion for consumers. *See* Fed. R. Evid. 403. As mentioned previously, the exhibits are relevant, and Defendants are free to rebut the weight of exhibits at trial. The Court will not exclude the exhibits as unduly prejudicial at this time.

Regarding hearsay, Defendants' argument largely reflects their points made in Defendants' First Motion in Limine. The social media posts are not hearsay, as Plaintiff does not intend to use them to assert the truth of the matter asserted. Because the images are not hearsay when used for this purpose, the Court will not exclude them. Defendants argue that unless they can cross examine the authors of these posts, they will be "deprived of the opportunity to probe the nature of the supposed confusion, or whether these social media posts reflect confusion at all." (Defs.' 2d Mot. Lim. 8). This is not so. Defendants will have the opportunity at trial to cross examine any witness Plaintiff puts forth, including those which rely on the exhibits at issue.

Defendants next argue that several exhibits should be excluded as not properly authenticated. Defendants argue that "[f]or the identified photographs, there is no foundation laid for who took the photographs, when the photographs were taken, or where the photographs were taken." (Defs.' 2d Mot. Lim. 10). Plaintiff asserts that each exhibit has been properly authenticated, attaching declarations from five individuals with personal knowledge as to the

photos' origins.  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 14-15; Mackey Decl., DN 228-2; Wagner Decl., DN 228-3; Metz Decl., DN 228-4; King Decl., DN 228-5; Price Aff., DN 228-6). At this time, the Court will not exclude the exhibits on the basis of lack of authentication.  The exhibits will be admissible at trial, subject to proper authentication.  Defendants may re-state their objections at that time.  Therefore, Defendants' Second Motion in Limine is denied.

### H.    Defendants' Third Motion in Limine

Defendants' Third Motion in Limine seeks to "preclude Plaintiff . . . from presenting at trial witness testimony as to undocumented instances of alleged actual consumer confusion." (Defs.' 3d Mot. Lim. 1, DN 195).  Defendants state that Plaintiff's witnesses will claim "that (1) there were at least 50-100 instances of confusion between 2016 and 2020 outside of what has been documented in exhibits . . . and (2) otherwise claiming that there are likely thousands or even millions of examples of confusion that have not been documented."  (Defs.' 3d Mot. Lim. 2). Plaintiff rebuts this contention and claims that it is [b]ased on a mischaracterization of deposition testimony."  (Pl.'s Resp. Defs.' 3d Mot. Lim. 1, DN 229).

The Court declines, at this time, to exclude the evidence at issue.  Witnesses are permitted to attest to their personal knowledge, which of course does not extend to speculation.  Defendants will have the opportunity to make evidentiary objections at trial. *See* Fed. R. Evid. 602.  Therefore, Defendants' Third Motion in Limine is denied.

### I.    Defendants' Fourth Motion in Limine

Defendants' Fourth Motion in Limine seeks to exclude evidence "of alleged actual confusion presented by Plaintiff."  (Defs.' 4th Mot. Lim. 1, DN 214).   To the extent that Defendants' arguments overlap with those presented in their previous motions in limine, they will not be considered.  The pieces of evidence Defendants seek to exclude are addressed below.

### 1.    *PX-158 through PX-292*

Exhibits PX-158 through PX-292 comprise mostly photographs and social media posts which have already been discussed.  As mentioned previously, these exhibits will not be excluded on the bases of hearsay, improper authentication, irrelevance, or prejudicial effect.  In this motion, Defendants make three new arguments regarding these exhibits:  (1) "none of the alleged confusion . . . identifies the source of the alleged confusion[;]" (2) the evidence is "*di minimis*"; and (3) "to be relevant, . . . [the] evidence of confusion [must be] among wholesalers and distributors of tobacco products."  (Defs.' 4th Mot. Lim. 3, 7-8).  First, to the extent that the photographs and social media posts do not distinguish the source of confusion between the "Season with Maker's Mark" label and the red wax seal, this does not render the exhibits irrelevant.  As previously noted, Plaintiff has successfully demonstrated how the exhibits tend to make the likelihood of consumer confusion more likely.  Defendants will have the opportunity at trial to rebut this evidence.  Second, Defendants' argument that confusion evidence must be limited to wholesalers and distributors of tobacco products is not well-taken.  Defendants do not explain why the scope should be so narrow, and Plaintiff points out the Defendants also "directly sell their products . . . to retailers and individual consumers."  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 4).  Lastly, Defendants' *de minimis* argument also fails.  As Plaintiff correctly states, "the sufficiency of [Plaintiff's] confusion evidence goes to how much weight will be given to it at trial, not whether it is admissible."  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 8 (citation omitted)).  Therefore, none of the previously discussed photographs and social media posts will be excluded on these grounds either.

Some of the exhibits in PX-158 through PX-292 do encompass one category of exhibits that has not yet been addressed:  emails from consumers who purchased the Bourbon Cigar and

subsequently contacted Plaintiff regarding their purchases.  (Defs.' 4th Mot. Lim 2).[9]  The Court will also not exclude these exhibits at this time.  Like the social media posts, Plaintiff cites the Sixth Circuit's opinion *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553 (6th Cir. 2013), to argue that customer complaints "submitted to show actual confusion [are] not inadmissible hearsay" because they are offered "to show that the conversations occurred and the state of mind of the declarants."  (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 13 (citing *Lucky's Detroit*, 533 F. App'x at 559 n.1)).  To the extent that Plaintiff seeks to introduce the exhibits for this purpose and properly authenticates each exhibit, the evidence will be admissible.  Defendants may renew their evidentiary objections regarding these exhibits at trial.  Therefore, Defendant's motion to exclude these exhibits is denied.

### 2.    *Plaintiff's Demonstrative Exhibit No. 4*

Plaintiff's Demonstrative Exhibit No. 4 was previously addressed in Defendants' First and Second Motions in Limine, and Defendants do not specifically address the grounds for excluding this exhibit in this motion.  To the extent that Defendants' argument for exclusion mirrors their argument for excluding the photographs, social media posts, and customer complaints, the Court declines to exclude the demonstrative exhibit at this time.  Therefore, motion is denied for this exhibit.  Defendants may renew their evidentiary objections at trial.

### 3.    *Witness Testimony Concerning Undocumented Confusion*

Defendants seek to exclude witness testimony regarding "examples of confusion that have not been documented" and specifically point to the deposition testimony of Mitch Wagner.  It is

---

[9] Defendants' motion states the emails consist of "two consumers who had purchased a Bourbon Cigar and contacted Maker's Mark to complain about injuries suffered while opening the cigar's glass tube as well as one other customer who contacted Maker's Mark by email about buying the Bourbon Cigar."  (Defs.' 4th Mot. Lim. 2 (citing PX 166-167, 168, 169-172)).

not clear how this request differs from Defendants' Third Motion in Limine, which has already been addressed. To the extent that Defendants argue that the testimony should be excluded because it does not identify the source of confusion, is *de minimis*, or that confusion testimony should be limited to wholesalers and distributors of tobacco products, the Court will not categorically exclude the testimony at this time. (*See* Defs.' 4th Mot. Lim. 3, 7-8). Therefore, motion is denied regarding this type of testimony, and Defendants may renew their evidentiary objections at trial.

### 4.    *Expert Testimony Concerning Dr. Kivetz's Confusion Survey*

Next, Defendants seek to exclude "Survey evidence in the form of a consumer survey performed by Dr. Ran Kivetz and his testimony and opinions related to, and allegedly supporting same, including opinions on alleged actual confusion in the market." (Defs.' 4th Mot. Lim. 3); (Kivetz Report, DN 153-1). Defendants argue that "survey evidence is not evidence of actual confusion, because surveys do not measure the degree of actual confusion [or the lack thereof] by real consumers; instead, surveys provide circumstantial evidence of the likelihood of confusion." (Defs.' 4th Mot. Lim. 3 n.2 (quoting *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 262 (S.D.N.Y. 2022))). Defendants' point is well-taken, and the Court considers this type of evidence distinct from the social media posts, photographs, and customer complaints. Defendants argue that Dr. Kivetz's "survey was designed to test confusion as to the packaging of the Bourbon Cigar, but not designed to test specifically whether either the use of the term "Maker's Mark" or the use of a red wax seal, in isolation, was the cause of the confusion." (Defs.' 4th Mot. Lim. 4).

Plaintiff rebuts this assertion, positing that "Dr. Kivetz's confusion survey was designed to reflect marketplace conditions, which required showing the packaging of the actual Bourbon Cigar as it appears with both the secondary band that states "SEASONED WITH MAKER'S MARK®" and the red wax design." (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 11 (citing *Troublé v. Wet*

*Seal, Inc.*, 179 F. Supp. 2d 291, 308 (S.D.N.Y. 2001))). Although Defendants provide support that the expert survey should be given greater scrutiny as circumstantial evidence, rather than evidence of actual confusion, they have not successfully argued that the survey is irrelevant. As stated by Plaintiff, "[a]ny challenges Defendants have about how Dr. Kivetz designed his confusion survey go to the weight, not the admissibility of Dr. Kivetz's survey." (Pl.'s Resp. Defs.' 1st, 2d, & 4th Mots. Lim. 11 (citation omitted)). For this reason, the Court will not exclude Dr. Kivetz's survey at this time nor bar testimony related to the survey. The motion is therefore denied regarding the expert survey, and Defendants may renew their evidentiary objections at trial.

### 5. *Expert Testimony Concerning the Aforementioned Exhibits*

Because the Court has denied Defendant's request to exclude any of the aforementioned exhibits in this motion, the request to exclude expert testimony regarding the exhibits is also denied.

### J.    **Defendants' Fifth Motion in Limine**

Defendants' Fifth Motion in Limine seeks to exclude evidence of Plaintiff's "alleged fame after July 2016" (i.e., commencement of sales of the Bourbon Cigar). (Defs.' 5th Mot. Lim. 1-2, DN 201).[10] Defendants argue that inclusion of such evidence is irrelevant to Plaintiff's dilution claims, as "[t]he time for measuring fame for dilution purposes is the time at which the allegedly dilutive use commenced." (Defs.' 5th Mot. Lim. 5 (citing *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003))). They also argue that evidence of Plaintiff's fame post-July 2016

---

[10] Specifically, Defendants seek to exclude the following exhibits that post-date July 2016:  PX-58-61 (Plaintiff's advertisements); PX-117-123 (articles about Plaintiff); PX-124-126 ("[n]et sales and investment data"); PX-364 (Dr. Kivetz's expert report "to the extent that it relies on evidence of [post-dated] fame"); and any "demonstrative exhibits containing or displaying any of the above evidence".  (Defs.' 5th Mot. Lim. 3).

would be "unfairly prejudicial to [Defendant], confuse the issues[,] and waste time."  (Defs.' 5th Mot. Lim. 2).

To prevail on its dilution claim, Plaintiff must prove, in part, that Defendants "used [Plaintiff's] mark in commerce . . . after it became famous."  *Maker's Mark I*, 703 F. Supp. 2d at 697 (citing *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006)).  Defendants therefore argue that any evidence of Plaintiff's fame after Defendants began using the marks at issue is irrelevant. (Defs.' 5th Mot. Lim. 4-5).  Defendants state they introduced the Bourbon Cigar into commerce "no later than July 31, 2016".  (Defs.' 5th Mot. Lim. 6).  As such, Defendants argue that because evidence of post-July 2016 fame "has little to no probative value" in determining Plaintiff's dilution claim, it has no relevance and would potentially confuse the jury.  (Defs.' 5th Mot. Lim. 7 ("Even if jurors were instructed to disregard evidence of post-2016 fame, they will not be able to 'unsee' what they have seen and will not separate post-2016 evidence from pre-2016 evidence of fame)).

Plaintiff argues that even if the post-July 2016 evidence is "not relevant to whether the marks are famous," it is relevant "to the first *Frisch* likelihood of confusion factor, which looks at the commercial strength of the Maker's Mark name and dripping wax design."  (Pl.'s Resp. Defs.' 5th & 7th Mots. Lim. 2, DN 230); *Frisch's*, 670 F.2d at 648.  Therefore, "evidence concerning [Plaintiff's] advertising and marketing efforts and the unsolicited attention that Maker's Mark received from news and media organizations" is "probative to [Plaintiff's] trademark infringement and unfair competition claims."  (Pl.'s Resp. Defs.' 5th & 7th Mots. Lim. 2).  Citing *Maker's Mark I*, Plaintiff indicates that this Court has previously used marketing efforts to determine the strength of a brand's mark.  (Pl.'s Resp. Defs.' 5th & 7th Mots. Lim. 4 (citing *Maker's Mark I*, 703 F. Supp. 2d at 671)).

Thus, the evidence at issue in this motion is relevant to Plaintiff's trade infringement and unfair competition claims.  *See* Fed. R. Evid. 402.  Although Plaintiff may not use the post-July 2016 exhibits in order to prove its fame prior to July 2016, it is permitted to use the exhibits to establish the commercial strength of the Maker's Mark name and wax design for the purposes of proving likelihood of confusion.  Defendants have not demonstrated how the prejudicial nature of the exhibits would substantially outweigh their probative value under Fed. R. Evid. 403.  A limiting instruction to the jury could help ameliorate any potential confusion.  *See* Fed. R. Evid. 105.  Therefore, Defendants' Fifth Motion in Limine is denied.

### K.    **Defendants' Sixth Motion in Limine**

Defendants' Sixth Motion in Limine seeks "to exclude the contents of newspaper and magazine articles . . . on hearsay grounds, insofar as [their] contents . . . assert that the word mark MAKER'S MARK [] and/or the dripping red wax trade dress . . . (collectively, the "Asserted Marks") are famous, and to the extent that the Articles assert as true any of the elements of a dilution claim."  (Defs.' 6th Mot. Lim. 1-2, DN 202).  Defendants' motion refers to approximately one hundred exhibits (i.e., PX-24-126), which Defendants contend "[are] riddled with multiple layers of hearsay introduced to prove the matters asserted therein."  (Defs.' 6th Mot. Lim. 2).  Defendants seek to exclude "any [exhibit] whose content or title asserts or implies that the Asserted Marks are famous or otherwise well-known" as well as "any [exhibit] that directly or indirectly speaks to the truth of any of the elements of a dilution claim . . . ."  (Defs.' 6th Mot. Lim. 5).  This would include all exhibits that assert:  "(1) that either the Word Mark or the Trade Dress are famous, well-known, or distinctive; (2) the geographic extent of sales under either Asserted Mark, (3) the amount and volume of sales under either Asserted Mark[;] [] and [(4)] the degree of actual

recognition of the Asserted Marks." (Defs.' 6th Mot. Lim. 8).  Plaintiff argues that none of the newspaper and magazine articles are hearsay because:

> Maker's Mark does not seek to introduce any of these news articles or advertisements to prove the truth of any of the statements in those articles or advertisements.  Instead, [Plaintiff] seeks to introduce news and media publications and advertisements discussing Maker's Mark and its dripping wax design to evidence "[t]he duration, extent, and geographic reach of advertising and publicity" of the Maker's Mark name and dripping wax design that are at issue in this case.

(Pl.'s Resp. Defs.' 6th Mot. Lim. 3, DN 231).

Furthermore, Plaintiff argues that its financial summaries (i.e., PX-124-126) should not be excluded as hearsay because it produced the summaries "during discovery relying on an agreement with Defendants that they would accept those summaries in lieu of a larger production of [Plaintiff's] financial records."  (Pl.'s Resp. Defs.' 6th Mot. Lim. 5).  Plaintiff relies on Fed. R. Evid. 1006, which provides that "[t]he court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court."  (Pl.'s Resp. Defs.' 6th Mot. Lim. 5); Fed. R. Evid. 1006(a).  Plaintiff's point is well-taken, and to the extent that Plaintiff's use of PX-124-126 at trial satisfy the proper foundation and authentication requirements, those exhibits shall be admissible.

To the extent that Plaintiff does not use the newspaper or magazine articles to prove the truth of the content asserted in such articles, the Court will not exclude them as hearsay. Defendants have, however, addressed legitimate concerns regarding several of the articles' assertions, including "geographic markets and quantity of sales", "distinctiveness of the Asserted Marks", and assertions of "reputation that reproduces third-party comments about extent of sales, geographic markets and quantities." (Defs.' 6th Mot. Lim. 3).  Although Plaintiff may not intend to use the exhibits to prove the truth of these assertions, the existence of these assertions in the

exhibits presents potential prejudicial effects and could confuse the issues for the jury.  Therefore, for all exhibits within PX-24-123 that Plaintiff plans to introduce into evidence, Plaintiff shall redact all content asserting:  (1) Plaintiff's fame; (2) any notoriety or recognition of the Maker's Mark name and/or wax seal trade dress; (3) Plaintiff's sales figures; and (4) Plaintiff's geographic markets.  For these reasons, Defendants Sixth Motion in Limine to exclude the exhibits is denied in part, and Plaintiff shall provide the redacted exhibits to Defendants no later than December 20, 2024, or such other date as the parties may agree.

### L.  <u>Defendants' Seventh Motion in Limine</u>

Defendants' Seventh Motion in Limine seeks to bar Plaintiff from "presenting evidence, testimony, or opinions or otherwise asserting at trial that its dripping red wax trade dress . . . was famous prior to 2010."  (Defs.' 7th Mot. Lim. 1, DN 203).  In *Maker's Mark I*, this Court determined in April 2010 that Maker's Mark's red dripping wax was not famous, as defined by the Trademark Dilution Recovery Act, and thus its trademark dilution claim failed.  *Maker's Mark I*, 703 F. Supp. 2d at 699-700.  Defendants contend that the doctrine of issue preclusion bars Plaintiff from relitigating this issue in the current case, and thus any evidence going to Plaintiff's fame prior to April 2010 should be excluded.  (Defs.' 7th Mot. Lim. 2).  To successfully argue issue preclusion, Defendants must establish that:

> the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pram Nguyen ex rel. U.S. v. City of Cleveland*, 534 F. App'x 445, 449 (6th Cir. 2013) (citation omitted).

Plaintiff disagrees that issue preclusion applies in this case, as only the dripping wax design, and not the Maker's Mark name, was at issue in *Maker's Mark I*, and "documents from before 2010 showing the historical growth and evolution of Maker's Mark's advertising and unsolicited publicity are highly relevant to both the issue of fame and the strength of the marks" in the current case. (Pl.'s Resp. Defs.' 5th & 7th Mots. Lim. 6). Both of these points are correct. In *Maker's Mark I*, the trademark at issue was "Maker's Mark's red dripping wax." *Maker's Mark I*, 703 F. Supp. 2d at 680. Defendants are correct that the four elements of issue preclusion are met here, but the effect of this finding is much narrower than Defendants assert. Plaintiff is precluded from asserting that its dripping red wax was famous prior to April 2, 2010, but it is not precluded from litigating that the Maker's Mark name was famous prior to this date. Moreover, as Plaintiff argues, evidence of "[t]he duration, extent, and geographic reach of advertising and publicity of [Plaintiff's] mark[s], whether advertised or publicized by the owner or third parties[,]" are directly relevant to their current trade dilution claim. (Pl.'s Resp. Defs.' 5th & 7th Mots. Lim. 6 (citing 15 U.S.C. § 1125(c)(2)(A)(i))). Similar to the Court's analysis in Defendants' Fifth Motion in Limine, this pre-April 2010 evidence "is also relevant to establishing the strength of the marks for [Plaintiff's] infringement and unfair competition claims." (Pl.'s Resp. Defs.' 5th & 7th Mots. Lim. 6).

Therefore, the exhibits at issue in this motion will not be excluded at this time. Plaintiff is precluded from arguing that its dripping wax seal was famous prior to April 2, 2010. The pre-2010 exhibits may be used by Plaintiff to establish the "duration, extent, and geographic reach of advertising and publicity" as part of its argument establishing fame during the 2010-2016 period as well as to establish the strength of the marks pursuant to its infringement and unfair competition claims. Defendants' Seventh Motion in Limine, therefore, is denied.

M.    <u>**Defendants' Eighth Motion in Limine**</u>

Defendants' Eighth Motion in Limine seeks "to preclude at trial all reference to the Bourbon Cigar as the 'unlicensed cigar' or variations thereon." (Defs.' 8th Mot. Lim. 1, DN 196). Defendants argue that categorizing their product in this manner "would be unfairly prejudicial" under Fed. R. Evid. 403.  According to Defendants, "[i]f [Plaintiff] fails to prove that [Defendants] used the phrase 'Seasoned with Maker's Mark' as a trademark, then a license to do so was never necessary." (Defs.' 8th Mot. Lim. 3).  As such, they contend that "[r]eferring to the Bourbon Cigar as 'unlicensed' has zero probative value and poses a substantial danger of leading jurors to erroneously believe that [Defendants] required [Plaintiff's] authorization before [Plaintiff] has proven that such authorization was necessary." (Defs.' 8th Mot. Lim. 3).

Plaintiff asserts that categorization of the Bourbon Cigar as an "unlicensed cigar" is relevant to comparing the different products that Defendants sell. (Pl.'s Resp. Defs.' 8th Mot. Lim. 1-4, DN 232).  Plaintiff notes that "Defendants sell a variety of cigars, including the Bourbon Cigar, that are seasoned with different types of alcohol[;]" while "some of those cigars . . . are sold under licenses . . . [others] are not sold under a license and do not identify on the packaging the brand of alcohol that is used to season the cigars." (Pl.'s Resp. Defs.' 8th Mot. Lim. 1-2).  Plaintiff argues that "[b]ecause the Bourbon Cigar is the only unlicensed seasoned cigar that states a specific brand . . . on the product packaging[,]" this practice deviates from Defendants' "customary approach in selling unlicensed cigars[,] [which] is evidence of [Defendants'] intent to cause confusion." (Pl.'s Resp. Defs.' 8th Mot. Lim. 4).

Under Fed. R. Evid. 403, Defendants must show that the use of the term "unlicensed cigar" causes unfair prejudice that substantially outweighs its probative value.  Defendants do not argue that the term "unlicensed cigar" is incorrect, as the Bourbon Cigar is not sold under any license

agreement.  As Plaintiff states, the phrasing is relevant in distinguishing the types of products that Defendants produce, which goes to their intent in labeling the Bourbon Cigar as "Season with Maker's Mark."  (Pl.'s Resp. Defs.' 8th Mot. Lim. 4).  Defendants' Eighth Motion in Limine, therefore, is denied.

### N.    **Defendants' Tenth Motion in Limine**

Defendants' Tenth Motion in Limine seeks to "exclude any use of cease and desist correspondence between Plaintiff and [Defendant] and unrelated third parties."  (Defs.' 10th Mot. Lim. 1, DN 212).[11]  Defendants assert that the exhibits should be excluded on grounds of relevance under Fed. R. Evid. 402, hearsay under Fed. R. Evid. 802, compromise negotiations under Fed. R. Evid. 408, and unfair prejudice under Fed. R. Evid. 403.  (Defs.' 10th Mot. Lim. 3-5).

Defendants state that "disputes between [Plaintiff] and unrelated third parties in the distilled spirits industry have no relevance as to this dispute."  (Defs.' 10th Mot. Lim. 3).  Plaintiff points to caselaw finding that "evidence that the trademark owner takes actions to protect its marks through the use of cease-and-desist communications and litigation supports the strength of the mark."  (Pl.'s Resp. Defs.' 10th Mot. Lim. 2, DN 233 (citing *Variety Stores, Inc. v. Walmart Inc.*, 852 F. App'x 711, 719 (4th Cir. 2021); *Bath & Body Works Brand Mgmt., Inc. v. Summit Ent., LLC*, 7 F. Supp. 3d 385, 394 (S.D.N.Y. 2014); *Bd. of Trs. of Univ. of Ark. v. Prof'l Therapy Servs., Inc.*, 873 F. Supp. 1280, 1288 (W.D. Ark. 1995))).  Plaintiff has sufficiently demonstrated that the cease-and-desist letters are relevant to demonstrating the strength of its mark, which is directly at issue in this case.

---

[11] The specific exhibits at issue in this motion are PX-293-304 and PX-307-318, all which contain "correspondence between [Plaintiff] and unrelated third parties relating to . . . . demands that [Plaintiff] made to third parties about alleged infringement . . . of [Plaintiff's] trademarks."  (Defs.' 10th Mot. Lim. 2).

Next, Defendants argue that the exhibits constitute hearsay, as Plaintiff "would be introducing the [correspondence] for the truth of the matter asserted." (Defs.' 10th Mot. Lim. 4). Plaintiff disagrees, and states that it "seeks to introduce evidence of its enforcement actions . . . to show the type of actions that [Plaintiff] takes to protect its rights to the Maker's Mark name and dripping wax design." (Pl.'s Resp. Defs.' 10th Mot. Lim. 3). To the extent that Plaintiff does seek to introduce the exhibits of correspondence for this purpose, they are not considered hearsay.

Defendants also assert that the exhibits are inadmissible under Fed. R. Evid. 408, which prohibits introducing "statement[s] made during compromise negotiations about the claim" to prove or disprove "the validity or amount of a disputed claim or to impeach a prior inconsistent statement". Fed. R. Evid. 408(a)(2). Plaintiff correctly rebuts that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." (Pl.'s Resp. Defs.' 10th Mot. Lim. 4 (quoting *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997))). As such, Fed. R. Evid. 408 is inapplicable to the current facts.

Lastly, Defendants contend that the potential for the correspondence exhibits to be prejudicial or confusing to the jury substantially outweighs their probative value, and thus they should be excluded under Fed. R. Evid. 403. (Defs.' 10th Mot. Lim. 5). According to Defendants, admission of the exhibits will create "trials within a trial" which will be a needless distraction and have no bearing on the current case. (Defs.' 10th Mot. Lim. 5). As Plaintiff rebuts, this argument hinges on the notion that the exhibits do not have probative value to any of Plaintiff's claims. (Pl.'s Resp. Defs.' 10th Mot. Lim. 5). The exhibits are relevant to demonstrating the strength of Plaintiff's marks, which is directly at issue. Therefore, Defendants' argument that the exhibits'

probative value is substantially outweighed by undue prejudice and confusion also fails.  Thus, Defendants' 10th Motion in Limine is denied.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Plaintiff's Motions in Limine (DN 204, 205) are **GRANTED IN PART** and **DENIED IN PART**.

2.      Plaintiff's Motions in Limine (DN 208, 211) are **DENIED**.  Defendant shall make Kurt Owings available for a deposition no later than **December 20, 2024**, or such other date as the parties may agree.

3.      Defendants' Motions in Limine (DN 195, 196, 201, 203, 209, 212, 214, 215) are **DENIED**.

4.      Defendants' Motion in Limine (DN 202) is **DENIED IN PART**. Defendants shall produce the redacted exhibits to Plaintiff by no later than **December 20, 2024**, or such other date as the parties may agree.

5.      Defendants' Motion for Leave to Designate Alternative Witness (DN 179) is **GRANTED**, and Defendants shall make Misty L. Decker  available for a deposition no later than **December 20, 2024**, or such other date as the parties may agree.

Greg N. Stivers, Chief Judge

United States District Court

December 10, 2024

cc:      counsel of record